**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| WILLIAM T. MOCK, *et al.*, | |
| *Plaintiffs,* | |
| v. | Civil Action No. 4:23-cv-95-O |
| MERRICK B. GARLAND, *et al.*, | |
| *Defendants.* | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR AN INJUNCTION PENDING APPEAL**

# TABLE OF CONTENTS

INTRODUCTION.............................................................................................................1

LEGAL STANDARDS....................................................................................................1

ARGUMENT...................................................................................................................2

I.      Plaintiffs are unlikely to succeed on the merits of their appeal. .........................2

II.     Plaintiffs have failed to establish the remaining equitable factors. ....................7

CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Alcresta Therapeutics, Inc. v. Azar,*
   318 F.Supp.3d 321 (D.D.C. 2018)....................................................................................................11

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,*
   878 F.2d 806 (5th Cir. 1989)............................................................................................................2

*Am. Hosp. Ass'n v. Harris,*
   625 F.2d 1328 (7th Cir. 1980)..........................................................................................................9

*Am. Meat Inst. v. U.S. Dep't of Agric.,*
   968 F. Supp. 2d 38 (D.D.C. 2013)................................................................................................8, 9

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.,*
   897 F.3d 314 (D.C. Cir. 2018) .......................................................................................................10

*Baird v. Bonta,*
   2022 WL 17542432 (E.D. Cal. Dec. 8, 2022) .................................................................................6

*Bezet v. United States,*
   714 F. App'x 336 (5th Cir. 2017).....................................................................................................5

*Cardoni v. Prosperity Bank,*
   2015 WL 410589 (S.D. Tex. Jan. 29, 2015) ...................................................................................2

*District of Columbia v. Kroger Co.,*
   2022 WL 18910855 (D.D.C. Dec. 14, 2022)...................................................................................2

*Def. Distributed v. Bonta,*
   2022 WL 15524977 (C.D. Cal. Oct. 21) .........................................................................................6

*Eastland v. U.S. Servicemen's Fund,*
   421 U.S. 491 (1975).......................................................................................................................12

*Elrod v. Burns,*
   427 U.S. 347 (1976).......................................................................................................................10

*Fath v. Tex. Dep't of Transp.,*
   670 F. App'x 294 (5th Cir. 2016)..................................................................................................1, 2

*Flight Training Int'l, Inc. v. FAA,*
   58 F.4th 234 (5th Cir. 2023) ............................................................................................................3

*Freedom Holdings, Inc. v. Spitzer,*
   408 F.3d 112 (2d Cir. 2005).............................................................................................................9

*Gill v. Whitford,*
   138 S. Ct. 1916 (2018) ........................................................................................................12

*Hilton v. Braunskill,*
   481 U.S. 770 (1987) .............................................................................................................2

*Holland Am. Ins. Co. v. Succession of Roy,*
   777 F.2d 992 (5th Cir. 1985) ............................................................................................10

*Jacksonville Port Auth. v. Adams,*
   556 F.2d 52 (D.C. Cir. 1997) ............................................................................................12

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ...........................................................................................................12

*Maryland v. King,*
   567 U.S. 1301 (2012) .........................................................................................................12

*Metro. Sch. Dist. of Wayne Twp. v. Davila,*
   969 F.2d 485 (7th Cir. 1992) ..........................................................................................3, 4

*Mkt. Synergy Grp., Inc. v. U.S. Dep't of Lab.,*
   2016 WL 6948061 (D. Kan. Nov. 28, 2016) ...................................................................8, 9

*Monumental Task Comm., Inc. v. Chao,*
   678 F. App'x 250 (5th Cir. 2017) ......................................................................................11

*Monumental Task Comm., Inc. v. Foxx,*
   157 F. Supp. 3d 573 (E.D. La. 2016) ................................................................................11

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
   142 S. Ct. 2111 (2022) ...............................................................................................5, 6, 7

*Nat'l Council for Adoption v. Blinken,*
   4 F.4th 106 (D.C. Cir. 2021) ...............................................................................................3

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
   434 U.S. 1345 (1977) .........................................................................................................12

*Nken v. Holder,*
   556 U.S. 418 (2009) ...........................................................................................................11

*Or. Firearms Fed'n, Inc. v. Brown,*
   2022 WL 17454829 (D. Or. Dec. 6, 2022) .........................................................................5

*Perez v. Mortg. Bankers Ass'n,*
   575 U.S. 92 (2015) ...............................................................................................................3

*Postal Police Officers Ass'n v. U.S. Postal Serv.*,
   502 F.Supp.3d 411 (D.D.C. 2020)................................................................................11

*Robertson v. REP Processing, LLC*,
   2021 WL 5354713 (D. Colo. Oct. 12, 2021) ................................................................2

*Safari Club Int'l v. Jewell*,
   47 F. Supp. 3d 29 (D.D.C. 2014)................................................................................9

*Trump v. Thompson*,
   20 F.4th 10 (D.C. Cir. 2021)......................................................................................12

*United States v. Jackson*,
   2023 WL 2499856 (D. Md. Mar. 13, 2023) ...............................................................6

*United States v. Rahimi*,
   61 F.4th 443 (5th Cir. 2023) ......................................................................................6

*United States v. Saleem*,
   2023 WL 2334417 (W.D.N.C. Mar. 2, 2023) ............................................................6

*United States v. Thompson/Ctr. Arms Co.*,
   504 U.S. 505 (1992)..................................................................................................11

*V Real Estate Grp., Inc. v. U.S. Citizenship & Immigr. Servs.*,
   2014 WL 5243369 (D. Nev. Oct. 15, 2014) ..............................................................9

*VanDerStok v. Garland*,
   2022 WL 4809376 (N.D. Tex. Oct. 1, 2022) ...........................................................10

*Voile Mfg. Corp. v. Dandurand*,
   551 F. Supp. 2d 1301 (D. Utah 2008).........................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................................2

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ...................................................................................9

**RULES**

Federal Rule of Civil Procedure 62(d) ...............................................................................1

**REGULATIONS**

*Factoring Criteria for Firearms With Attached "Stabilizing Braces,"*
   88 Fed. Reg. 6,478 (Jan. 31, 2023) ............................................................................1

**OTHER AUTHORITIES**

Blake Emerson & Ronald M. Levin, *Agency Guidance Through Interpretive Rules: Research and Analysis,* (May 28, 2019) https://perma.cc/9NDR-UCNG ................................................................................. 4

*NFA Handbook* (Apr. 2009)
    https://perma.cc/P3NL-G35G ................................................................................................ 10

## INTRODUCTION

Two weeks ago, this Court denied Plaintiffs' motion to preliminarily enjoin enforcement of a rule promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule").[1] After analyzing each of Plaintiffs' claims challenging the Rule and their arguments in support of the motion, the Court determined that Plaintiffs had not demonstrated a substantial likelihood of success on the merits of any of their claims, and thus were not entitled to preliminary injunctive relief. *See* Opinion at 1, 6–16.

Having appealed that order,[2] Plaintiffs are now taking a second bite at the apple, renewing their request to enjoin enforcement of the Rule, this time for the duration of their appeal.[3] That request is governed, however, by the same standards that this Court applied in denying their motion for a preliminary injunction. But Plaintiffs' current motion simply rehashes arguments that the Court has already considered, and offers no persuasive reason why the Court should second-guess its prior conclusion that Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their claims. That alone should settle this matter. But even if it did not, Plaintiffs would still not be entitled to injunctive relief because the remaining equitable factors militate strongly against it.

The Court should thus deny Plaintiffs' motion for an injunction pending appeal.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 62(d), a district court may issue an injunction pending an interlocutory appeal. The standard for granting such relief is the same as the standard for granting a preliminary injunction. *Fath v. Tex. Dep't of Transp.*, 670 F. App'x 294, 295–96 (5th Cir. 2016) (per

---

[1] Op. & Order on Pls.' Mot. for Prelim. Inj. or, in the Alternative, for Postponement of the Effective Date of the Final Rule ("Opinion"), ECF No. 40.

[2] Notice of Appeal, ECF No. 43.

[3] Pls.' Br. in Supp. of Their Mot. for Inj. Pending Appeal ("Mot."), ECF No. 42.

curiam); *accord Cardoni v. Prosperity Bank*, 2015 WL 410589, at *1 (S.D. Tex. Jan. 29, 2015). And like a preliminary injunction, an injunction pending an appeal is an "extraordinary remedy" that intrudes "into the ordinary processes of administration and judicial review." *Dist. of Columbia v. Kroger Co.*, 2022 WL 18910855, at *1 (D.D.C. Dec. 14, 2022) (cleaned up); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Accordingly, a plaintiff requesting such relief must make a "strong showing" that (i) it has a substantial likelihood of success on the merits of the appeal; (ii) it will suffer irreparable harm without the requested injunction; (iii) the balance of equities tips in its favor; and (iv) preliminary relief serves the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Failure to demonstrate any one of these elements requires denial of the injunction. *Fath*, 670 F. App'x at 296; *accord Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

## ARGUMENT

### I.      Plaintiffs are unlikely to succeed on the merits of their appeal.

Plaintiffs acknowledge that this Court has already held that they have not shown a substantial likelihood of success on the merits of their claims in requesting a preliminary injunction, Mot. at 6, 18—a finding that alone precludes the issuance of an injunction pending appeal, *see Fath*, 670 F. App'x at 296. Still, Plaintiffs ask the Court to "reconsider" that conclusion, Mot. at 18, while providing no cogent reason why reconsideration is warranted. Indeed, Plaintiffs' current motion relies on the same unpersuasive arguments that failed to carry their burden at the preliminary-injunction stage, adding nothing more for the Court to consider. *See Robertson v. REP Processing, LLC*, 2021 WL 5354713, at *4 (D. Colo. Oct. 12, 2021) ("[A]ttempt[ing] to re-hash the same arguments" that a plaintiff made in support of a preliminary-injunction motion "does not demonstrate a likelihood of success on appeal." (cleaned up)). The Court should reject each of Plaintiffs' arguments for the same reasons it denied their first request for an injunction. *See* Opinion at 1, 6–16.

Defendants' opposition to Plaintiffs' preliminary-injunction motion adequately addresses each

of Plaintiffs' claims on the merits.[4] Defendants will nevertheless respond to the two arguments that Plaintiffs emphasize in support of their motion.

*First,* Plaintiffs repeat various reasons why they believe that the Rule is a substantive rule. *See* Mot. at 6–7. But as Defendants have already explained, *see* PI Opp. at 19–20, the Rule is a quintessential interpretive rule that simply advises the public of ATF's construction of the NFA and the GCA and imposes no new legal obligations, *see Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 240–42 (5th Cir. 2023) ("[I]nterpretive rules explain what an agency thinks a statute or regulation actually says."); *accord Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("[I]nterpretive rules [are] issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." (cleaned up)); *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 114 (D.C. Cir. 2021) ("[I]nterpretive rule[s] explain[] *pre-existing* legal obligations . . . ." (cleaned up)). Indeed, this Court held that it is unlikely that the Rule exceeds the agency's statutory authority "to interpret the statutes it has been charged with administering when there is an ambiguity," which the Court recognized suggests that the Rule is an interpretive rule, not a substantive rule. Opinion at 8–9; *see also id.* at 11 (noting that it is "the Court's assessment . . . that the Final Rule interprets—but does not rewrite—the underlying statutes").

Plaintiffs' arguments to the contrary are unpersuasive. Although the Rule could be said to speak in mandatory terms regarding the application of NFA and GCA requirements to short-barreled rifles equipped with stabilizing braces, that characteristic alone does not transform the agency's interpretation into a substantive rule. *See Flight Training Int'l*, 58 F.4th at 241 n.5; *accord Metro. Sch. Dist. of Wayne Twp. v. Davila*, 969 F.2d 485, 493 (7th Cir. 1992) ("Could an agency [seriously] announce, 'We think Congress intended this when it enacted this statute, but you don't have to do it.' . . . All rules which interpret the underlying statute must be binding … on the regulated parties in the sense that

---

[4] *See* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. or, in the Alternative, for Postponement of the Effective Date of the Final Rule ("PI Opp.") at 11–39, ECF No. 37.

3

they set . . . the legal minima of behavioral standards" in light of "what the agency believes is congressional intent."). Nor is the Rule substantive simply because ATF, as a matter of prudence and good governance, solicited public comments on the proposed rule; indeed, given the substantial benefits from the public-comment process, agencies routinely utilize notice-and-comment procedures in promulgating interpretive rules. *See* Blake Emerson & Ronald M. Levin, *Agency Guidance Through Interpretive Rules: Research and Analysis,* at 28–30 (May 28, 2019) (report to the Admin. Conf. of the U.S.), https://perma.cc/9NDR-UCNG.

In any event, Plaintiffs do not explain how their arguments on this score advance any of their claims. While Plaintiffs allege in their complaint that the Rule is not a "logical outgrowth" of ATF's proposed rule, Am. Compl. ¶¶ 105–14, ECF No. 13—an APA procedural requirement applicable only to substantive rules, Opinion at 9—this Court has already held that Plaintiffs have not shown a likelihood of success on that claim, *id.* at 9–10. The Court concluded that, assuming "for the sake of argument that the Final Rule is substantive, . . . the Final Rule likely satisfies the [APA's] logical outgrowth requirement." *Id.* Plaintiffs do not acknowledge that conclusion or the Court's reasoning, let alone grapple with it. Nor do they contend with any of Defendants' arguments as to why the Rule satisfies the APA's logical-outgrowth requirement, assuming it applies. *See* PI Opp. at 20–22.

***Second,*** Plaintiffs insist that they have demonstrated a likelihood of success on the merits of their Second Amendment challenge to the Rule, notwithstanding this Court's holding to the contrary. In particular, Plaintiffs assert that the Rule violates the Second Amendment because it subjects their brace-equipped pistols to the NFA's registration requirements (assuming the weapons are short-barreled rifles under the statute). Mot. at 10. But the Court rejected that claim. Opinion at 14. Plaintiffs nonetheless contend that the Court erroneously shifted the burden to Plaintiffs to show that the NFA's registration requirement lacks support in the historical record, rather than requiring the Government to show that a historical tradition of firearms regulation supports it. Mot. at 7–9. Not so.

4

As the Court explained, although the Rule clarifies that individuals and entities possessing short-barreled rifles configured with stabilizing braces must "comply with the NFA's statutory requirements," including "registering the weapons," "the Second Amendment [does not] bar the imposition of traditional registration and licensing requirements commonly associated with firearm ownership." Opinion at 14 (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *Bezet v. United States*, 714 F. App'x 336, 340 (5th Cir. 2017)). In reaching that conclusion, the Court relied in part on Justice Kavanaugh's concurring opinion in *Bruen*, Opinion at 14, which emphasized that the vast majority of states have a concealed-carry licensing regime that impose similar "licensing requirements" that do not offend the Second Amendment, *Bruen*, 142 S. Ct. at 2162 (Kavanaugh J., concurring, joined by Roberts, C.J.). And the Court further relied on the majority opinion in *Bruen*, Opinion at 14, which similarly explained that certain basic licensing requirements do not "prevent 'law-abiding, responsible citizens' from exercising" their Second Amendment rights, 142 S. Ct. at 2138 n.9. Therefore, the Court rightly rejected Plaintiffs' claim that the NFA's registration requirements violate the Second Amendment, not because of any lack of historical evidence in the record, but because Plaintiffs failed to carry their burden to show that these requirements implicate their constitutional right to bear arms in the first place. *See* PI Opp. at 24–25; *see also Bruen*, 142 S. Ct. at 2138 n.9; *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *Bezet*, 714 F. App'x at 340; *Or. Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829, at *15 (D. Or. Dec. 6, 2022) (relying on *Bruen* in holding that a Second Amendment challenge to a state's firearms permit requirement was unlikely to succeed on the merits).[5]

---

[5] As Defendants have explained, *see* PI Opp. at 23–27, neither the Rule nor the NFA implicate Plaintiffs' constitutional right to bear arms for two other reasons: (i) stabilizing braces are not themselves bearable arms protected under the Second Amendment; and (ii) short-barreled rifles—whether configured with stabilizing braces or not—are not protected under the Second Amendment because they are dangerous and unusual weapons. For those reasons as well, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their Second Amendment claims.

Plaintiffs' failure to make this predicate showing ends the constitutional analysis under *Bruen*. Only where an individual's conduct is protected under the Second Amendment's plain text must the Government justify a challenged regulation based on a "historical tradition of firearm regulation." 142 S. Ct. at 2129–30; *accord United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023).[6] As much as Plaintiffs urge this Court to move on to the history-and-tradition inquiry, they have not satisfied the first step in *Bruen*'s analysis, and thus the Court needs to go no further. *See United States v. Saleem*, 2023 WL 2334417, at *11 (W.D.N.C. Mar. 2, 2023) (holding that, where the "Second Amendment's plain text does not protect Defendant's conduct," "the Court need not reach the historical inquiry"); *accord United States v. Jackson*, 2023 WL 2499856, at *4 (D. Md. Mar. 13, 2023).

But be that as it may, Defendants' opposition to Plaintiffs' preliminary-injunction motion contains a considerable list of historical precedents evincing a longstanding tradition of firearm regulations that are comparable to and consistent with the NFA's registration requirements. *See* PI Opp. at 27–31; *see also Bruen*, 142 S. Ct. at 2130 ("The government must" justify a regulation implicating a Second Amendment right "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."). Therefore, assuming for argument's sake that the NFA's registration requirements implicate rights protected under the Second Amendment, Defendants have already satisfied their burden—at least at this early stage of litigation—to show that they are constitutional under *Bruen*'s two-step analysis.[7]

---

[6] Plaintiffs do not assert their Second Amendment argument pertaining to "gunsmithing" in support of their motion for an injunction pending appeal.

[7] While there is no need for this Court to conduct a history-and-tradition analysis to resolve Plaintiffs' request for an injunction pending appeal (for reasons just explained), it is eminently reasonable to defer completing that analysis until the merits phase of the litigation. *See, e.g., Def. Distributed v. Bonta*, 2022 WL 15524977, at *5 & n.9 (C.D. Cal. Oct. 21) (denying motion for a preliminary injunction, and noting that if a historical inquiry had been required, there was "no possibility" that the State could "present the type of historical analysis conducted in *Bruen* on 31 days' notice (or even 54 days' notice)"), *adopted*, 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022); *Baird v. Bonta*, 2022 WL 17542432, at *8 (E.D. Cal. Dec. 8, 2022) (holding that plaintiffs had not shown that it is

*       *       *

In sum, Plaintiffs' motion for an injunction pending appeal provides no additional arguments or evidence that should convince this Court to rethink its determination that Plaintiffs have failed to show a likelihood of success on the merits of any of their claims, or to persuade it that the Fifth Circuit will reach a contrary conclusion. For that reason alone, this Court should deny Plaintiffs' motion.

## II.      Plaintiffs have failed to establish the remaining equitable factors.

Setting the merits aside, Plaintiffs have again failed to demonstrate that they will suffer imminent, irreparable harm unless this Court enjoins ATF's "enforcement" of the Rule. And on the other side of the ledger, an injunction pending appeal would undermine numerous public interests that the Rule advances.

*Irreparable harm.* In their motion for an injunction pending appeal, Plaintiffs rely most heavily on Maxim Defense's claim that it will either "go out of business" or have "to file for bankruptcy" unless ATF is prohibited from enforcing the Rule. Mot. at 15; *see also id.* at 1–2 (asking the Court to "press pause" to "[p]revent Maxim Defense from going out of business"). That's so, Maxim contends, because there is no longer a "viable market" for its stabilizing braces after the Rule's promulgation, because consumers no longer view brace-equipped pistols as a valuable alternative to weapons marketed explicitly as a short-barreled rifle, given that both are subject to the NFA. *Id.* at 15.[8]

It's worth pausing here to acknowledge that Maxim's argument concedes a principal rationale for the Rule—*i.e.*, that the firearms industry has manufactured and marketed, and individual possessors have purchased and used, weapons equipped with "stabilizing braces" to skirt NFA controls applicable

---

better to upend the status quo while the court conducts "the type of searching historical surveys that the Supreme Court's approach" required in that case (quoting *Bruen*, 142 S. Ct. at 2179)).

[8] Maxim repeatedly claims that the Rule prohibits it from selling pistols equipped with stabilizing braces "as it has for years." Mot. at 15–16; *see also id.* at 1. But the Rule does not ban the sale of any products, as this Court has recognized. *See* Opinion at 14–15. Maxim simply must comply with the NFA's requirements when selling brace-equipped weapons that are short-barreled rifles, as clarified by the Rule.

to short-barreled rifles. *See* PI Opp. at 4–7. Indeed, Maxim appears to concede that brace-equipped pistols have little, if any, marketable value now that the Rule has clarified that these weapons are generally subject to the same requirements as similar weapons marketed explicitly as short-barreled rifles. But if (as Plaintiffs have repeatedly suggested) there were truly a market for heavy pistols equipped with rearward devices that provide forearm support to assist with single-handed firing, there is no reason to expect that the market for these weapons would suddenly vanish simply because they need to be registered and are subject to a $200 tax, or that the market is unable to adapt its offerings to satisfy this demand.

But putting that aside, Maxim's claim that it will "go out of business" because of diminishing consumer demand for its products, Mot. at 15, does not establish that the Rule causes it imminent, irreparable injury. First of all, Maxim's assertion that there is no longer a "viable market" for stabilizing braces is based entirely on speculation about how potential consumers of these devices will respond to the Rule. *Id.* But "speculation about how third parties will react to" a challenged rule, and about how that possible reaction will affect the market value of a product, "is insufficient to demonstrate irreparable harm." *Mkt. Synergy Grp., Inc. v. U.S. Dep't of Lab.*, 2016 WL 6948061, at *30 (D. Kan. Nov. 28, 2016); *accord Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008) ("[A] probable loss in market share . . . does not amount to irreparable harm."); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d 38, 78–79 (D.D.C. 2013) (rejecting claim of irreparable harm based on assertions about what plaintiffs "truly 'expect' [will] happen in the marketplace; what their customers are 'likely' to demand; and what 'could' happen to their businesses").

And even if Maxim could substantiate its allegations, any potential harms to its business would result from the independent choices of potential consumers, not from the Rule. Courts routinely reject claims of irreparable harm (like Maxim's) that depend on an indirect theory of causation about how a challenged action will impact a plaintiff's economic interests. *See, e.g.*, *Mkt. Synergy Grp.*, 2016 WL

6948061, at *30; *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 36–37 (D.D.C. 2014) (holding that the plaintiff could not establish irreparable harm to economic interests because any revenue losses resulted from third parties' independent decisions, and not directly from the challenged rule); *Am. Meat Inst.*, 968 F. Supp. 2d at 80–81 ("[Alleged harms] based on independent market variables such as how the supplier's customers and/or retail consumers might react" to the challenged rule and concerns that plaintiffs "will ultimately lose future business because others may respond to the new . . . rules and react in a manner that may ultimately affect their companies negatively" are "indirect harm[s]" that are "neither certain nor immediate."); *V Real Estate Grp., Inc. v. U.S. Citizenship & Immigr. Servs.*, 2014 WL 5243369, at *3 (D. Nev. Oct. 15, 2014) (explaining that harms resulting from "independent decision of . . . third-parties to withhold their investments . . . do[] not constitute irreparable injury for the purposes of a preliminary injunction").

Separately, Plaintiffs appear to complain about having to comply with the NFA's requirements for any brace-equipped weapons that are short-barreled rifles under the Rule's analysis. Mot. at 15 ("Maxim Defense can no longer sell braced pistols as it has for years" without complying with "the NFA's requirements."); *id.* at 16 ("Mock and Lewis" will now be subject "to the NFA's heightened requirements against their wishes."). But as Defendants have already explained, *see* PI Opp. at 41, Plaintiffs' obligations to comply with the NFA is attributable not to the Rule but to Congress. And insofar as they complain about the costs of compliance, those costs also flow from requirements imposed by Congress. *See Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (explaining that a plaintiff "must show that the alleged harm will directly result from the action which [he] seeks to enjoin"). At any rate, compliance costs are typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005); *accord Am. Hosp. Ass'n v. Harris*, 625

F.2d 1328, 1331 (7th Cir. 1980).[9]

Plaintiffs also continue to maintain that they will suffer irreparable injury because the Rule and the NFA impinge on their Second Amendment rights. Mot. at 15. But as Defendants have explained, *see* PI Opp. at 22–31, neither the Rule nor the NFA implicates those rights, let alone imminently threatens them. Indeed, this Court has already determined that Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their Second Amendment claims, removing any doubt that Plaintiffs have established that they will likely suffer irreparable harm based on the deprivation of a constitutional right. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 374 (1976); *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that, to show irreparable harm based on loss of constitutional rights, a movant must show likely success on the merits).

Mock and Lewis, for their part, claim that they have established a "credible threat" that they will be criminally prosecuted for possessing their brace-equipped weapons because the Rule "is so unclear" that they cannot figure out "how to comply." Mot. at 16 (citations omitted). Again, as explained, the Rule imposes no criminal sanctions; any penalties for possessing an unregistered short-barreled rifle are imposed under the NFA. Regardless, Mock and Lewis's alleged confusion as to the proper application of the Rule does not establish a "credible threat" of criminal sanction. Neither identifies a weapon that he possesses or intends to possess that he believes is on the margins of being a short-barreled rifle under the Rule's analysis. And even if they did identify such a weapon, they can easily request a classification from ATF to clear up any confusion they may have. *See NFA Handbook* § 7.2.4 (Apr. 2009), https://perma.cc/P3NL-G35G. Mock and Lewis's alleged fear of criminal sanction is thus hardly credible. *See, e.g., Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("[T]here must be more than an unfounded fear on the part of the applicant" to show

---

[9] While Plaintiffs claim that they should not have to comply "with an unlawful agency rule," Mot. at 15 (quoting *VanDerStok v. Garland*, 2022 WL 4809376, at *9 (N.D. Tex. Oct. 1, 2022)), they have not demonstrated that the Rule is likely unlawful, *see* Opinion at 1, 6–16.

irreparable harm.); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 584 (E.D. La. 2016) ("[I]njunctions will not be granted merely to allay fears and apprehensions, or to soothe anxieties."), *aff'd sub nom., Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017).[10]

Finally, Plaintiffs' reliance on alleged harms to "Maxim Defenses' customers" and other third parties, Mot. at 2, 16, is misplaced. "[I]njuries to third parties are not a basis to find irreparable harm." *Alcresta Therapeutics, Inc. v. Azar*, 318 F.Supp.3d 321, 326 (D.D.C. 2018). A plaintiff's "burden is to show irreparable harm to *itself*," *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F.Supp.3d 411, 426 (D.D.C. 2020) (emphasis added), which Plaintiffs have failed to do.

<u>*Balance of the equities.*</u> In contrast to Plaintiffs' speculative claims of harm, Defendants have identified real, concrete ways in which an injunction will undermine public interests. *Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the third and fourth requirements for issuance of preliminary injunctive relief—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party"). As Defendants explained, *see* PI Opp. at 43, the public is better served by the Rule than by its absence, as it provides regulated parties with greater clarity as to the uniform framework ATF applies when classifying weapons equipped with stabilizing braces and other similar rearward devices. Moreover, the Rule benefits public safety by clarifying and supporting the enforcement of NFA controls designed to address the safety risks posed by the proliferation of short-barreled rifles, uniquely dangerous and concealable weapons specifically targeted by Congress for their criminal utility. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality op.).

Finally, an injunction against the Rule would impinge on ATF's ability to effectuate, pursuant to its statutorily delegated duty, regulations on short-barreled rifles that Congress imposed through

---

[10] The Firearms Policy Coalition offers no claim of irreparable injury to its members that is independent of those asserted by Mock, Lewis, and Maxim Defense. *See* Mot. at 16.

the enactment of the NFA and the GCA. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) ("Any time [the Government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration adopted) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). And as Plaintiffs acknowledge, "there is, of course, 'an overriding public interest in the general importance of an agency's faithful adherence to its statutory mandate.'" *See* Mot. at 17 (alteration adopted) (quoting *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 58–59 (D.C. Cir. 1997)); *cf. Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) ("[C]ourts must take care not to unnecessarily halt the functions of a coordinate branch." (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975))).[11]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for an injunction pending their interlocutory appeal of this Court's order denying Plaintiffs' motion for a preliminary injunction.

Dated: April 12, 2023                Respectfully submitted,

                                     BRIAN M. BOYNTON
                                     Principal Deputy Assistant Attorney General

                                     BRIGHAM J. BOWEN
                                     Assistant Branch Director

                                     */s/ Jody D. Lowenstein*
                                     JODY D. LOWENSTEIN (MT Bar No. 55816869)
                                     MICHAEL DREZNER (VA Bar No. 83836)
                                     TAYLOR PITZ (CA Bar No. 332080)
                                     Trial Attorneys
                                     U.S. Department of Justice
                                     Civil Division, Federal Programs Branch
                                     1100 L Street NW

---

[11] In all events, while an injunction pending appeal is unwarranted here, at a minimum, any such relief should be no broader than necessary to redress Plaintiffs' alleged, cognizable injuries. *See, e.g., Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *see also* PI Opp. at 43–44.

Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

13

## CERTIFICATE OF SERVICE

On April 12, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice