**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| WILLIAM T. MOCK; CHRISTOPHER LEWIS; MAXIM DEFENSE INDUSTRIES, LLC, a limited liability company; and FIREARMS POLICY COALITION, INC., a nonprofit corporation, | |
| *Plaintiffs*, | |
| v. | |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States; the UNITED STATES DEPARTMENT OF JUSTICE; STEVE DETTELBACH, in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | Civil Action No. 4:23-cv-00095-O |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR INJUNCTION PENDING APPEAL**

Rather than meaningfully responding to Plaintiffs' showing that this Court improperly applied the burdens of proof articulated in *New York State Rifle & Pistol Ass'n v. Bruen*, the Agencies accuse Plaintiffs of seeking "a second bite at the apple." *See* Defs' Opp. to Pls' Motion for Injunction Pending Appeal ("Feds' Opp."), ECF No. 49, at 1. But when the burden is properly placed on the Agencies, as *Bruen* requires, Plaintiffs are likely to succeed on the merits of their Second Amendment claims. As to vagueness, Plaintiffs ask this Court to look not only to whether there is *no standard* articulated in the Final Rule, but also to whether the Final Rule provides them fair notice. And Plaintiffs draw attention the impact and role of the rule of lenity in this matter. Both of which further demonstrate that Plaintiffs are likely to succeed on the merits of their claims.

Moreover, Plaintiffs' livelihoods are at stake and they risk being forced to take irreversible actions. While this Motion has been briefed, Plaintiff Maxim Defense Industries, LLC ("Maxim Defense") has been forced to terminate 7 additional employees and has lowered the salary of every remaining employee on its payroll. And Plaintiffs Mock and Lewis are faced with the irreparable choice of either permanently registering their constitutionally protected Arms, destroying them, or surrendering them. Plaintiffs request an injunction now because without one, Maxim Defense will likely not survive the pendency of this case and the other Plaintiffs will be forced to make decisions with respect to their constitutionally protected Arms that later relief cannot fix. An injunction is needed now to ensure that any eventual victory on the merits is meaningful, not pyrrhic.[1]

## I.    PLAINTIFFS ARE *LIKELY* TO SUCCEED ON THE MERITS OF THEIR CLAIMS

Based on the misapplication of the *Bruen* standard, the vague nature of the Final Rule, and the impact of the rule of lenity, Plaintiffs are likely to succeed on the merits of their claims.

---

[1] Alternatively, this Court could, in its discretion, reconsider its Order denying Plaintiffs' Motion for Preliminary Relief, ECF No. 40.

A.    **When the *Bruen* Test is Properly Applied, Plaintiffs are Likely to Succeed on the Merits of their Second Amendment Claims**

The Agencies' Opposition only confirms that, when the burden of proving the Final Rule's constitutionality is correctly placed on the Agencies, they fail to carry it.

The Agencies fail to rebut Plaintiffs' showing that the Agencies' regulation of pistols with stabilizing braces ("braced pistols") and/or short-barreled rifles ("SBRs") implicates the individual, constitutionally protected right to keep Arms. *See, e.g.*, Amended Petition, ECF No. 13, at 10–12, 61–72; Pls' Brief in support of their Motion for Preliminary Relief ("Pls' MPI Brief"), ECF No. 36, at 11–12; Pls' Brief in support of their Motion for Injunction Pending Appeal, ECF No. 42, at 7–9. The Final Rule does not just impact stabilizing braces, it also impacts *firearms* with those braces attached and *firearms* capable of accepting those braces (or any item that *could* convert a pistol into a rifle under the Agencies' new regulation). And the Agencies offer no serious argument that an impact on the ability to possess a firearm for lawful purposes does not *implicate* the plain text of the Second Amendment's protections. *See District of Columbia v. Heller*, 554 U.S. 570, 582 (2008) ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."); *accord Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (per curiam).

Instead, the Agencies put the cart before the horse, arguing that because—to their view— firearm registration requirements are constitutional, the right to bear arms is not even implicated. But the Agencies misstate the *Bruen* test and incorrectly blend two independent inquiries. Plaintiffs are not required to show that the challenged regulation or law is outside of our Nation's historical tradition of regulation to show that their conduct is presumptively protected by the text of the Second Amendment. Rather, once Plaintiffs demonstrate that a regulation implicates "Arms" within the meaning of the Second Amendment, the burden then shifts to the Agencies to

demonstrate their law or regulation comports with history. *See New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 20129–30 (2022). This is the precise error that this Court now has the opportunity to correct.

Given Plaintiffs have met their initial requirement, *the Agencies* must prove that the NFA's onerous requirements comport with the universe of allowable historical regulation on the right to keep Arms. *See Bruen*, 142 S. Ct. at 2126. But once more, the Agencies fail to provide an in-depth historical analysis justifying their law or regulation, relying on the same lack of evidence they presented earlier. *See* Feds' Opp. at 6 (seeking to incorporate by reference ECF No. 37, at 27–31). But this Court already characterized that evidence as providing only "minimal historical analysis" and simply drew the wrong conclusion from that dearth of historical analysis. Opinion & Order, ECF No. 40, at 15. Under *Bruen*, such lack of "historical analysis" means that the Agencies failed to carry their burden by rebutting the presumptive protections of the Second Amendment.[2]

Further, the Agencies' request that this Court rely on nonbinding district court decisions from the Ninth Circuit to relieve them of their burden under *Bruen* should be declined. *See* Feds' Opp. at 6 n.7. Those cases conflict with both *Bruen* and *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023). And the Agencies cite no cases to show that the standard applied at the preliminary injunction phase can ever be different than the ultimate merits standard—a point that the Fifth Circuit squarely rejects. *See Deerfield Med. Ctr.*, 661 F.2d at 335 ("The application of an improper legal standing in determining the likelihood of success on the merits is never within the district court's discretion.") (quotation omitted).

---

[2] In any event, the few statutes the Agencies cite to are either distinguishable based on their subject matter, come too late in time to fit within the Second Amendment's allowable historical regulations, and represent minor outliers. *See* Pls' Reply in support of their Motion for Preliminary Relief ("Pls' MPI Reply"), ECF No. 38, at 3, 6–7.

Nor is it relevant that the Final Rule and the NFA do not operate as a complete ban on possession. *Bruen* itself addressed and struck down a licensing system—not a complete ban—that implicated the Second Amendment protected right to bear Arms in public because the government failed to prove that the licensing system at issue was sufficiently analogous to any contemporaneous historical regulation on the individual right to bear arms. *Bruen*, 142 S. Ct. at 2156. And although the Agencies repeatedly cite *Bruen*'s footnote 9 for the apparent (and incorrect) suggestion that registration regimes are categorically constitutional, the Supreme Court there expressly left open the possibility that even "shall-issue regimes" with "lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry" could violate the Second Amendment. *Id.* at 2138 n.9.[3] Plaintiffs here have shown that NFA registration imposes those very burdens. Pls' MPI Brief at 35 ("[T]he Agencies commonly impose delays of many months to over one year with respect to acquiring the government's permission to take possession of the firearms at issue.").

The Agencies' inability to identify suitable historical support to justify their regulation of braced pistols and/or SBRs demonstrates Plaintiffs are likely to win on the merits of their claims.

**B.     The Unconstitutionally Vague Nature of the Final Rule and the Rule of Lenity Further Demonstrate that Plaintiffs are Likely to Succeed on the Merits of Several of their Claims**

The Agencies also completely ignore Plaintiffs' Motion's showing that the Final Rule is unconstitutionally vague because it is so arbitrary that neither regulated parties nor ordinary individuals can understand how it will be enforced. That failure constitutes a concession. *Kellam*

---

[3] The Agencies also cite Justice Kavanaugh's concurring opinion for this point, Feds' Opp. at 5–6, but they provide no explanation for their bizarre *Marks* analysis that allows a concurring opinion to override the plain requirements of the majority opinion joined by the concurring Justices.

*v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014).

Even if it is not a concession, the Final Rule is irreconcilably vague. A law is unconstitutionally vague if it is "so standardless that it invites arbitrary enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017). But it is also void for vagueness if it "fails to give ordinary people fair notice of the conduct it punishes." *Id.*; *see Shamloo v. Miss. State Bd. of Trustees of Insts. of Higher Learning*, 620 F.2d 516, 523 (5th Cir. 1980) ("A law is unconstitutionally vague if people of common intelligence must guess at its meaning and differ as to its application."). This Court did not consider the latter. *See* Opinion & Order at 12–13 (addressing only the "no standard" standard of vagueness). Moreover, the Constitution requires regulations to be even clearer when dealing with criminal laws than when dealing with civil laws. *Vill of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982).

Given this Court already concluded that the "six criteria by which ATF will make a weapons classification are non-dispositive, and therefore imprecise," Opinion & Order at 13, it should have also found that the criteria fail to give the "fair notice" required by due process. That non-dispositive, imprecise criteria analysis does not give ordinary people "fair notice of the conduct it punishes," nor can people of "common intelligence" truly know its meaning.

Additionally, the vague nature of the Final Rule chills the exercise of Plaintiffs' Second Amendment protected rights. Even if the restriction of braced pistols and/or SBRs were permissible in principle, the vague standards used to distinguish between lawful and unlawful arms chills the constitutionally protected possession of lawful arms and cannot survive constitutional scrutiny. In fact, given the Agencies' position on constructive possession, and the fact that an unknown universe of items could be capable of converting a pistol to a rifle under the Final Rule,

5

merely owning a pistol is itself fraught with legal peril. *See* ATF, *Can I possess a pistol and unattached "stabilizing brace"?* (last reviewed Mar. 23, 2023), https://tinyurl.com/5adbp2k7 ("An NFA firearm need not be assembled to be regulated as such.").[4]

Lastly, should this Court determine that the statute at issue is in any way ambiguous, this Circuit's precedent is clear—that ambiguity *must* be resolved in favor of Plaintiffs and the least restrictive reading. First, the Agencies have, at no point, invoked a need for deference here, which constitutes a waiver in this Circuit. *Cargill v. Garland*, 57 F.4th 447, 465 (5th Cir. 2023).

Second, even if this Court *sua sponte* evaluates the propriety of deference here *and* the Agencies are correct that the Final Rule at issue is an interpretive rule, the Fifth Circuit also concluded that *Chevron* does not apply when the government adopts an interpretive position inconsistent with its prior position. *Id.* at 468–69. Here, just as in *Cargill*, the Agencies' new position is inconsistent with its prior position of the past decade, thus foreclosing deference.

Third, *Cargill* concluded that even if the federal defendants did not waive *Chevron* and if the statutory definition was somewhat ambiguous, the rule of lenity would resolve any such ambiguity against the federal defendants and for the plaintiff. *See id.* at 469–71. The Fifth Circuit reasoned that it has applied the rule of lenity "many times to construe ambiguous statutes against imposing criminal liability." *Id.* at 470 (citations omitted). "Therefore, assuming *arguendo* that the statute is ambiguous, we conclude that the rule of lenity demands that we resolve that ambiguity in favor of" the regulated party. *Id.* at 471; *see United States v. Universal C.I.T. Credit Corp.*, 344

---

[4] This also shows why it was incorrect to conclude that Individual Plaintiffs "may still purchase [stabilizing braces] without being affected by the Final Rule." Opinion & Order at 15. Since Mock and Lewis both already own a pistol with a barrel of less than 16 inches *capable* of having a stabilizing brace attached, purchasing a new stabilizing brace would subject them to criminal liability for constructive possession of an unregistered SBR—true for millions of other similarly situated gun owners across the country. *See* Declaration of William T. Mock ("Mock Decl."), ECF No. 36-4, ¶ 6; Declaration of Christopher Lewis ("Lewis Decl."), ECF No. 36-3, ¶ 5.

U.S. 218, 221–22 (1952) ("[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."). Here, just as in *Cargill*, even if the statute is ambiguous, lenity dictates that such ambiguity be resolved in favor of Plaintiffs and the least restrictive reading of the statute. And once any statutory ambiguity is read narrowly, the Final Rule itself does not and cannot comport with such a narrowed reading.

## II.    THE AGENCIES' ATTEMPTS TO DISTINGUISH PLAINTIFFS' IRREPARABLE INJURIES ARE UNAVAILING

The Agencies' also fail to meaningfully respond to Plaintiffs' showing as to the other preliminary injunction factors.[5]

The Agencies assume the sweeping harm to the stabilizing brace market is only because those braces are used circumvent the NFA. But the Agencies ignore the many valid uses for stabilizing braces that do not even remotely suggest circumvention of SBR restrictions but are nonetheless prevented because the Final Rule is so broad and so vague that millions of individuals across the United States fear criminal prosecution for being in simultaneous possession of *any* functioning stabilizing brace and a firearm that it *may* be able to be attached to. In reality, the Final Rule has devastated the market because individuals must now live in fear of the potential of criminal liability for constructively violating the NFA—the same fear that Plaintiffs Mock and Lewis suffer. But most importantly, it does not matter at this stage *why* the market has been destroyed, simply that is *has* been destroyed because of the Final Rule's amendment of federal regulation and its change in the Agencies' administration and enforcement of the NFA.

---

[5] Plaintiffs' arguments as to harm are not an omission that stabilizing braces seek to "skirt NFA controls applicable to short-barreled rifles." *See* Feds' Opp. at 7. Plaintiffs' actions, and the braced pistol market, were based not just on the plain text of the NFA and GCA, but also on *the Agencies own published guidance documents*. *See, e.g.*, Amended Petition ¶¶ 37–44.

The Agencies' argument that the NFA and thus Congress is responsible for the harm here, and not the Agencies or the Final Rule, is equally unavailing. *See* Feds' Opp. at 9.[6] First, Plaintiffs do not dispute that their injuries ultimately stem from the NFA's requirements and federal law—something true of every agency action. Every agency action of this type, unless ultra vires (something Plaintiffs also allege), is nothing more than an action dictating how an agency will implement and enforce federal law. If the Agencies can avoid review in this case because no injury is attributable to their action, then they could avoid review in every APA case of this kind.

 Second, the need for Plaintiffs to comply with the NFA is directly attributable to the Final Rule. The Final Rule amended federal regulation in such a way that the Agencies are changing how they enforce the NFA. Before the Final Rule, the Agencies did not enforce the NFA against braced pistols. Now they do. The Final Rule is the agency action that amended federal regulation, and it is the Final Rule that constitutes the shift in agency enforcement that injures Plaintiffs.

Turning to the actual harmed being suffered, there is no "speculation about how potential consumers of these devices will respond to the Rule." Feds' Opp. at 8. Maxim has repeatedly demonstrated to this Court the brutal effect the Final Rule has had on their business. As of March 17, 2023, Maxim Defense had already lost millions of dollars and was forced to lay off 5 employees due to the Final Rule. Supplemental Declaration of David Dahl ("Dahl Supp. Decl."), ECF No. 38-1, ¶¶ 5, 7. Specifically, Maxim Defense lost total sales of over $900,000 in February 2023, compared to February 2022. Dahl Supp. Decl. ¶ 5. Since Plaintiffs filed their Motion for an Injunction Pending Appeal, Maxim Defense was forced to lay off an additional 7 employees and was forced to cut the salaries of all remaining staff. Third Declaration of David Dahl ("3rd Dahl

---

[6] This point is irrelevant for Plaintiffs' alternative claim for relief, which directly challenges a portion of the NFA as a federal question with the federal officials and agencies charged with enforcing federal law as named defendants. *See* Amended Petition ¶¶ 206–33.

Decl.") ¶ 4 (filed concurrently herewith). More, Maxim Defense lost total sales of over $1.2 million for March 2023, and of over $730,000 from April 1st through 15th, 2023, compared to the same periods in 2022. 3rd Dahl Decl. ¶ 6. Importantly, not only is a "substantial financial injury" sufficient to show irreparable injury, but "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir 2016). Unrecoverable injuries such as Maxim Defense's are irreparable. *See Deerfield Med. Ctr.*, 661 F.2d at 338 ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.") (citations omitted).

As to Plaintiffs Mock and Lewis, the Agencies have either ignored Plaintiffs briefing or blatantly misrepresent it. *See* Feds' Opp. at 10 ("Neither [Mock or Lewis] identifies a weapon that he possesses or intends to possess that he believes is on the margins of being a short-barreled rifle under the Rule's analysis."). Both Mock and Lewis have identified arms that are impacted by the Final Rule's changes to federal regulation and agency enforcement, both of which are directly implicated by the Agencies' guidance documents. Mock Decl. ¶ 6; Lewis Decl. ¶ 5; Pls' MPI Reply at 8 (comparing Mock and Lewis's affected Arms and the Agencies' guidance documents that implicate those Arms under the Final Rule). And both Mock and Lewis have alleged that they have concrete plans to purchase braced pistols in the future, *but for* the Final Rule's implications. Mock Decl. ¶ 7; Lewis Decl. ¶ 6; Pls' MPI Reply at 8. The Agencies' failure to see the credible threat alleged by Mock and Lewis is nothing more than the Agencies' failure to review Plaintiffs' allegations, not Plaintiffs' failure to make them. And, like Maxim Defense's injuries, the loss of and chilling effect on Mock and Lewis's constitutionally protected rights cannot be undone by monetary relief. *See Deerfield Med. Ctr.*, 661 F.2d at 338 (constitutionally protected rights "must

be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief") (citations omitted).

Lastly, Plaintiffs' do not represent the injuries of unknown third parties, but rather Maxim Defense represents the injuries suffered by its customers and Plaintiff Firearms Policy Coalition represents those of its members. *See, e.g.,* Amended Petition ¶¶ 8, 9; *Craig v. Boren*, 429 U.S. 190, 192–97 (1976); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343–44 (1977).

## III.   THE AGENCIES' CURSORY TREATMENT OF THE BALANCE OF HARMS DEMONSTRATES THE BALANCE WEIGHS IN PLAINTIFFS' FAVOR

The Agencies claim the Final Rule "benefits public safety by clarifying and supporting the enforcement of the NFA," but the Agencies have already admitted that the Final Rule is so incomprehensible that "ATF is . . . drafting classification letters that it will send directly to manufacturers to notify them of how ATF has formally classified their weapons[.]" Feds' MPI Opp., ECF No. 37, at 35. The Agencies fail to reconcile why they need to draft such letters if the Final Rule actually "provides regulated parties with greater clarity[.]" Feds' Opp. at 11.

But most telling, the Agencies say that the "public is better served by the Rule than by its absence," but never address Plaintiffs' contention that the Agencies will not suffer any significant harm by maintenance of a decade-long status quo while this Court considers the merits of the Final Rule. More, if Plaintiffs are indeed likely to succeed, there is no public benefit in allowing the Agencies to enforce a likely unlawful and unconstitutional Final Rule. *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009); *accord Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 58–59 (D.C. Cir. 1997).

## CONCLUSION

Plaintiffs respectfully request this Court grant Plaintiffs' Motion, ECF No. 41.

DATED this the 18th day of April, 2023.

Respectfully submitted,

R. Brent Cooper
TX Bar No. 04783250
brent.cooper@cooperscully.com
Benjamin D. Passey
TX Bar No. 24125681
Ben.passey@cooperscully.com

COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

*/s/ Cody J. Wisniewski*
Cody J. Wisniewski*
CO Bar No. 50415
cwi@fpchq.org

FIREARMS POLICY COALITION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 378-5785
Telecopy: (916) 476-2392

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 18, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/ *Cody J. Wisniewski*
Cody J. Wisniewski
FIREARMS POLICY COALITION