## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| WILLIAM T. MOCK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 4:23-cv-00095-O |
| MERRICK B. GARLAND, *et al.*, | |
| Defendants. | |

## BRIEF FOR *AMICI CURIAE* PALMETTO STATE ARMORY, LLC, FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., AND NST GLOBAL, LLC (D/B/A SB TACTICAL) IN SUPPORT OF PLAINTIFFS

John Leslie (TX Bar. No. 12231400)
**JOHN LESLIE PLLC**
1805 West Park Row Drive, Suite C
Arlington, TX 76013-3584
Tel: 817.405.7700
Fax: 817.505.1292
arlingtonlaw@aol.com

*Local Counsel*

Stephen J. Obermeier* (DC Bar No. 979667)
Michael D. Faucette* (DC Bar No. 1046222)
Jeremy J. Broggi* (DC Bar No. 1029427)
Boyd Garriott* (DC Bar No. 1617468)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

*Counsel for Palmetto State Armory, Firearms
Regulatory Accountability Coalition, and SB
Tactical*

August 18, 2023

* *Pro hac vice pending*

**TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................ii

INTEREST OF *AMICI CURIAE* .........................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 2

ARGUMENT ........................................................................................................................... 5

      I.     Plaintiffs Are Entitled To A Preliminary Injunction................................................. 5

          A.     Plaintiffs Will Incur Irreparable Harm Absent An Injunction. .................. 5

          B.     The Public-Interest Factors Strongly Favor An Injunction........................ 8

      II.    The Court's Preliminary Injunction Should Extend Nationwide........................... 10

          A.     Nationwide Relief Is Appropriate When Necessary To Provide Complete Relief............................................................................................................ 10

          B.     The Plaintiffs Require A Nationwide Injunction To Obtain Complete Relief. ............................................................................................................ 12

CONCLUSION...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barr v. American Association of Political Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ...........................................................................................17

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) (*en banc*) ................................................................11

*Clarke v. CFTC*,
  No. 22-51124, 2023 WL 4677542 (5th Cir. July 21, 2023) ...........................5, 8, 10

*D.C. v. U.S. Department of Agriculture*,
  444 F. Supp. 3d 1 (D.D.C. 2020) .....................................................................12, 17

*Data Marketing Partnership, LP v. United States Department of Labor*,
  45 F.4th 846 (5th Cir. 2022) ..................................................................................12

*In re Deepwater Horizon*,
  934 F.3d 434 (5th Cir. 2019) ....................................................................................6

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ..................................................................................................9

*Feds for Medical Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) (*en banc*) ...............................................10, 11, 15, 17

*Health Freedom Defense Fund v. President of United States*,
  71 F.4th 888 (11th Cir. 2023) .................................................................................11

*Health Freedom Defense Fund, Inc. v. Biden*,
  599 F. Supp. 3d 1144 (M.D. Fla. 2022) ....................................................11, 14, 15

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ...................................................................................8

*Make the Road New York v. Pompeo*,
  475 F. Supp. 3d 232 (S.D.N.Y. 2020) .....................................................................15

*Mock v. Garland*,
  No. 23-10319, 2023 WL 4882763 (5th Cir. Aug. 1, 2023) ............................ *passim*

*National Mining Association v. U.S. Army Corps of Engineers.*,
  145 F.3d 1399 (D.C. Cir. 1998) ........................................................................12, 16

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................................16

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    139 S. Ct. 2051 (2019) (Kavanaugh, J., concurring) ...........................................17

*Restaurant Law Center v. United States Department of Labor*,
    66 F.4th 593 (5th Cir. 2023) ................................................................................7, 8

*Samsung Electronics America, Inc. v. Yang Kun Chung*,
    2020 WL 730522 (N.D. Tex. Feb. 13, 2020) .........................................................6

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) .............................................................................8, 9

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ...............................................................................14

*Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen*,
    681 F.2d 378 (5th Cir. 1982) .................................................................................9

*VanDerStok v. BlackHawk Manufacturing Group Inc.*,
    No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Nov. 3, 2022) .................13

*Wages & White Lion Investments, L.L.C. v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ...................................................................5, 8, 9, 10

*Washington v. Trump*,
    487 F. Supp. 3d 976 (E.D. Wash. 2020) ..............................................................14

**Statutes**

18 U.S.C. § 924 .........................................................................................................17

18 U.S.C. § 3559 .......................................................................................................17

18 U.S.C. § 3571 .......................................................................................................17

26 U.S.C. § 5861 .........................................................................................................4

26 U.S.C. § 5871 .......................................................................................................17

**Executive Materials**

Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg.
    6,478 (Jan. 31, 2023)......................................................................................2, 12, 15

iii

Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis, (Jan. 2023) https://tinyurl.com/3t3d3ewy.........................................................................3, 7, 10, 14

President's Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298 (Apr. 8, 2021) ....................................................................................................2

## INTEREST OF *AMICI CURIAE*[1]

**Palmetto State Armory, LLC** ("PSA") designs and manufacturers guns, parts, and accessories—including pistol stabilizing braces—for use by civilians and law enforcement.  PSA has an interest in the outcome of this litigation because the validity of the rule—and the scope of this Court's relief—may determine whether PSA can continue to sell stabilizing braces and related products in this jurisdiction and elsewhere.

**NST Global, LLC (d/b/a SB Tactical)** ("SB Tactical") invented the original pistol stabilizing brace with the goal of helping disabled combat veterans safely and accurately fire weapons.  SB Tactical designs and manufactures stabilizing braces and has sold millions of braces—both directly to consumers and through its extensive network of retailers and other businesses.  SB Tactical has an interest in the outcome of this litigation because the validity of the rule—and the scope of this Court's relief—may determine whether SB Tactical can continue to sell stabilizing braces in this jurisdiction and elsewhere.

The **Firearms Regulatory Accountability Coalition, Inc.** ("FRAC") is the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States.  An important part of FRAC's mission is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.

In addition to filing this *amicus* brief, FRAC is leading a coalition of twenty-five states, companies, and individuals who are challenging in another jurisdiction the same rule at issue in this case.  *See FRAC v. Garland*, No. 1:23-cv-0024-DLH-CRH (D. N.D. Feb. 9, 2023).  FRAC has

---

[1]  Counsel for *amici curiae* state that no party's counsel authored this brief in whole or in part, and that no person other than *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.  No parties oppose the filing of this brief.

an interest in the outcome of this case because the relief ordered here may determine whether FRAC's members—including PSA and SB Tactical—can continue to sell stabilizing braces and brace-equipped guns in this jurisdiction and elsewhere.

## INTRODUCTION AND SUMMARY OF ARGUMENT

For more than a decade, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") authorized the public to use pistol stabilizing braces, a popular firearms accessory, without federal regulation. During that time, ATF repeatedly issued letter rulings assuring manufacturers and the public that attaching a stabilizing brace would not alter the classification of a pistol or other firearm. As a result, millions of Americans have for years lawfully purchased stabilizing braces and pistols equipped with stabilizing braces from authorized, legitimate manufacturers with ATF's full knowledge and express approval.

Then everything changed. Frustrated with congressional inaction, the President of the United States ordered ATF to abandon a decade of practice under an established statutory framework and "to treat pistols modified with stabilizing braces" as "subject to the National Firearms Act." President's Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298, at 3 (Apr. 8, 2021). This "change," the President said, would require an owner of a pistol equipped with a stabilizing brace to "pay a $200 fee and submit their name and other identifying information to the Justice Department" or face criminal penalties. *Ibid.*

On January 31, 2023, ATF responded with the Rule at issue here. The Rule purports to provide "factoring criteria" to "clarify" how ATF will determine whether any particular gun is subject to heightened regulation. Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule"). In actuality, it vests ATF with unbounded discretion. And ATF has made clear exactly how it intends to exercise that discretion, estimating that, under the Rule, 99% of pistols equipped with stabilizing braces will be deemed subject to

2

National Firearms Act ("NFA") controls.  Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis, at 21 (Jan. 2023) ("Regulatory Impact Analysis") https://tinyurl.com/3t3d3ewy.  Meanwhile, the Rule fails to provide even a *single* example of a brace-affixed pistol that will not be covered under the NFA.  The Rule thus represents an abrupt reversal of ATF's longstanding position that these items are not subject to NFA controls.  And it will require millions of Americans to choose between the loss of their lawful (and lawfully acquired) firearms, the loss of their privacy, and the risk of criminal penalties.

The Rule is plainly unlawful.  As the Fifth Circuit recently explained, "the Final Rule bears almost no resemblance in manner or kind to the Proposed Rule," and thus "Final Rule fails the logical-outgrowth test and violates the" Administrative Procedure Act ("APA").  *Mock v. Garland*, No. 23-10319, 2023 WL 4882763, at *11 (5th Cir. Aug. 1, 2023).  The agency's departures from the proposed rule also revealed "[o]ther serious infirmities in the Final Rule."  *Id.* at *18.  For example, the Rule's "six-part test provides no meaningful clarity about what constitutes an impermissible stabilizing brace," making it "nigh impossible for a regular citizen to determine what constitutes a braced pistol."  *Id.* at *17–*18.  The Rule's test would also use "third parties' actions"—such as "information demonstrating the likely use of the weapon in the general community"—to "hold citizens criminally liable for the actions of others, who are likely unknown, unaffiliated, and uncontrollable by the person being regulated."  *Id.* at *18 (internal quotations omitted).

Thus, the only question before this Court is the appropriate preliminary remedy for ATF's unlawful behavior.  At the outset, there should be no question that *some* remedy is warranted.  The Fifth Circuit has already found that "Plaintiffs are likely to succeed on the merits," thereby satisfying "the most important of the preliminary injunction factors."  *Id.* at *19 & n.60.  And

Plaintiffs have convincingly satisfied the remaining factors.  In particular, they have shown crushing and unrecoverable economic harm—a showing that the Fifth Circuit has squarely held is sufficient to establish irreparable injury.  And on the equities, there is plainly no interest in the continued enforcement of an illegal rule that makes it "nigh impossible for a regular citizen" to comply with the law.  *Id.* at *17.  Thus, Plaintiffs are entitled to a preliminary injunction.

Moreover, that preliminary injunction should be nationwide.  As the Fifth Circuit explained, "in certain circumstances, nationwide relief is appropriate and may be necessary for the benefit of all parties."  *Id.* at *20.  This case presents such circumstances.  As a threshold matter, party-specific relief would offer no remedy at all to Plaintiff Maxim Defense Industries ("Maxim Defense") and Plaintiff Firearms Policy Coalition's ("FPC") commercial members.  Each of these businesses is merely one link in a supply chain extending from manufacturers and logistics companies to the gun-owning public.  In this context, enjoining the Rule as to a single company would still force the company's business partners and customers to comply with the Rule.  Absent an injunction, these critical links in the business activities of the commercial Plaintiffs must risk felony criminal liability if they receive, possess, transfer, sell, or deliver Plaintiffs' products.  26 U.S.C. § 5861.  Plainly, cutting the business Plaintiffs off from their supply chain and customer base would not remedy their dire economic situation.  Indeed, *amici*—as fellow businesses in the industry—are acutely aware of this issue.

A party-specific remedy would also be impossible to administer.  A limited injunction would require the Government to administer two different criminal-law standards for stabilizing braces and brace-equipped guns:  (1) the pre-Rule status quo *ante* for the Plaintiffs, including FPC's hundreds of thousands of members spread across the country, and (2) the Rule's amorphous six-factor test for everyone else.  In reality, because ATF agents would have no way of knowing

whether any given individual or business is covered by the injunction, this approach would offer no remedy at all. Indeed, ATF has put forward no plan to enact this convoluted scheme. Further, this dual-track criminal justice scheme would undermine the Government's own goal of consistency and would invite a flood of duplicative litigation, wasting both public and private resources. And, at bottom, the Government's request for a limited remedy is really a request to enforce a Rule that has been declared unlawful by the Fifth Circuit—potentially imprisoning Americans as a result. This Court should reject the Government's unworkable remedy and instead impose a nationwide injunction.

## ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION.

Preliminary injunctive relief is warranted where Plaintiffs show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that granting the injunction is in the public interest." *Clarke v. CFTC*, No. 22-51124, 2023 WL 4677542, at *7 (5th Cir. July 21, 2023). Here, the Fifth Circuit has already held that Plaintiffs have satisfied "the most important of the preliminary injunction factors" because they "are likely to succeed on the merits." *Mock*, 2023 WL 4882763, at *19 & n.60. Plaintiffs easily satisfy the remaining factors.

### A.    Plaintiffs Will Incur Irreparable Harm Absent An Injunction.

In the Fifth Circuit, a showing of either "substantial financial injury" or "nonrecoverable compliance costs" demonstrates "irreparable harm." *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) (quoting *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016)). Here, Plaintiff Maxim Defense and Plaintiff FPC's commercial members will suffer both forms of

irreparable economic harm if an injunction does not issue.[2]

First, as Maxim Defense explains, "the demand for [stabilizing braces] has been almost completely destroyed by the Final Rule[.]"  Supp. Decl. of David Dahl ¶ 3, ECF No. 38-1 ("Supp. Dahl Decl.").  As a result, Maxim Defense "lost total sales of over $900,000 in February 2023, compared to February 2022, and of almost $1.2 million from March 1st through 14th, 2023, compared to the same period in 2022."  *Id.* ¶ 5.  Maxim Defense has laid off employees as a result of these losses and is actively working "to avoid imminent bankruptcy."  *Id.* ¶¶ 6–9.  FPC likewise explained that its "commercial members . . . have had their business practices upended, will suffer extreme losses and lost profits, and several may be put out of business entirely."  Decl. of Brandon Combs ¶ 10, ECF No. 36-1 ("Combs Decl.").

The experience of *amici* is similar.  *Amicus* FRAC's members "have suffered significant adverse financial consequences" as a "direct result of ATF's actions."  Decl. of Travis White ¶¶ 13–16 ("White Decl."), attached as Ex. A.  As *amicus* SB Tactical explained to another court, it "sold an average of 44,000 braces per month in 2022 (before the Rule went into effect) and 92,000 braces per month in 2020 (before ATF issued its notice proposing to regulate braces)."  Supp. Decl. of Jeff Creamer ¶ 5, *FRAC v. Garland*, No. 1:23-cv-0024-DLH-CRH (D. N.D. Mar. 13, 2023), ECF No. 66-1 ("Supp. Creamer Decl."), attached as Ex. B.[3]  Then, in February 2023—the first month after the Rule took effect—"SB Tactical sold only 2,095 braces," leading to "a

---

[2] *Amici* agree that the individual Plaintiffs and FPC's individual members also face irreparable harm, but focus on the commercial Plaintiffs because they reflect *amici*'s own experience.

[3] The Court may "take judicial notice" of declarations filed in federal court because they are "matters of public record."  *In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019) (taking "judicial notice of the docket and complaint" in "prior court proceedings"); *see also Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 2020 WL 730522, at *2 (N.D. Tex. Feb. 13, 2020) (Lindsay, J.) ("Courts routinely take judicial notice of public records, including court documents") (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

devastating net loss of $327,106 in just one month." *Id.* ¶¶ 5–6.  Like Maxim Defense, SB Tactical was forced to lay off several employees, and it "faces a near-certain risk that it will go out of business" absent an injunction.  *Id.* ¶ 8.

The same is true for FRAC member B&T USA, LLC.  After the Rule was issued, B&T USA saw its sales plummet from "200 specialized [brace-equipped] pistols per week" to ***zero***, forcing the company to "expend thousands of dollars in materials, manufacturing time, and labor in order to convert . . . affected stabilizing brace-related products into items not affected by this Rule."  Decl. of Irving Luce ¶¶ 15–16, *FRAC v. Garland*, No. 1:23-cv-0024-DLH-CRH (D. N.D. Feb. 9, 2023), ECF No. 1-11 ("Luce Decl."), attached as Ex. C.

ATF's own economic analysis confirms the irreparable nature of Plaintiffs' harms.  According to ATF, the Rule will cause the destruction or forfeiture of over 750,000 firearms and cost the private sector somewhere between two and five billion dollars.  Regulatory Impact Analysis at 56, 62–67.  ATF predicts that four of the five largest brace manufacturers—a category that includes SB Tactical and Maxim Defense—"would go out of business."  *Id.* at 76; *see* Decl. of David Dahl ¶ 15, ECF No. 36-2 ("Dahl Decl."); Supp. Creamer Decl. ¶ 8.  ATF likewise found that "17,091" federal firearms licensees would be adversely affected.  *Ibid.*  Thus, any contention by ATF that the Rule will not result in crushing economic injury to Maxim Defense and FPC's commercial members is contradicted by the agency's own administrative record.  *See Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597–600 (5th Cir. 2023) (reversing district court for failing to acknowledge agency's concession in administrative record "that some businesses will incur ongoing costs").

Indeed, Plaintiffs have shown that they suffered the precise types of harms that the Fifth Circuit has held sufficient to establish irreparable injury in APA challenges.  Maxim Defense "was

forced to part ways with 5 of its staff members as a direct result of the[] losses caused by the Final Rule." Supp. Dahl Decl. ¶ 7. The Fifth Circuit has squarely held that "[t]he loss of an employee [due to government action] and the associated costs – monetary and otherwise – are nonrecoverable costs." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). Further, FPC's members "may be put out of business entirely"—an assertion corroborated by the experience of *amici* and Maxim's representation that it is losing millions dollars and staving off bankruptcy. *See* Combs Decl. ¶ 10; Supp. Dahl Decl. ¶ 8; Supp. Creamer Decl. ¶ 8. And the Fifth Circuit has held that "financial injury" that "threatens the very existence of [a] business" is "irreparable injury." *Wages & White Lion Invs.*, 16 F.4th at 1142 (quoting *Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016)).

These losses are "substantial" by any measure. *See id.* at 1142. Furthermore, they are necessarily unrecoverable "because federal agencies generally enjoy sovereign immunity for any monetary damages." *Ibid.* For this reason, the Fifth Circuit has repeatedly held that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Louisiana*, 55 F.4th at 1034 (quotations omitted) (emphasis in original); *see also Clarke*, 2023 WL 4677542, at *10 (same); *Rest. L. Ctr..*, 66 F.4th at 597 (same); *Wages & White Lion Invs.*, 16 F.4th at 1142 (same); *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (same). Therefore, because Plaintiffs' losses are both substantial and unrecoverable, they are irreparable.

## B.    The Public-Interest Factors Strongly Favor An Injunction.

The last two preliminary injunction factors "merge when the Government is the opposing party." *Clarke*, 2023 WL 4677542, at *10 (internal quotations omitted). In this case, these final preliminary-injunction factors favor an injunction for three independent reasons.

*First*, there is "no public interest in the perpetuation of unlawful agency action." *Wages & White Lion Invs.*, 16 F.4th at 1143 (internal quotations omitted). Rather, the "public interest is in having governmental agencies abide by the federal laws that govern their existence and

operations." *Ibid.* (internal quotations omitted).  In this litigation, the Fifth Circuit has already held that the Rule "violates the APA." *Mock*, 2023 WL 4882763, at *11.  Thus, the public interest favors enjoining enforcement of ATF's unlawful action and ensuring that it abides by the APA.

*Second*, the Fifth Circuit's ruling identified "[o]ther serious infirmities" affecting individual rights that confirm enforcement of the Rule is not in the public interest.  *Id.* at *18. "Under the Final Rule," the Fifth Circuit explained, "it is nigh impossible for a regular citizen to determine what constitutes a braced pistol." *Id.* at *17.  That is because the Rule "vests the ATF with complete discretion to use a subjective balancing test to weigh six opaque factors on an invisible scale." *Ibid.*; *cf. FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (invalidating agency action that "fail[ed] to provide a person of ordinary intelligence fair notice of what is prohibited" (citation omitted)); *accord* White Decl. ¶ 16.  In addition, the Rule's "requirements involving analysis of third parties' actions" would unfairly "hold citizens criminally liable for the actions of others, who are likely unknown, unaffiliated, and uncontrollable by the person being regulated." *Mock*, 2023 WL 4882763, at *18; *accord Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of Louisiana v. Treen*, 681 F.2d 378, 384–85 (5th Cir. 1982) (explaining "criminal intent" of a manufacturer may constitutionally be inferred only from the acts "of the manufacturer, not the intent of the retailer or customer" (citation omitted)).  The public interest favors enjoining ATF from enforcing with criminal sanctions a Rule that suffers from these additional glaring problems.  *See Texas*, 829 F.3d at 434–35 (considering adverse effects of government's policy in assessing public interest).

*Third*, the judicial interest in "preserv[ing] the *status quo ante*" pending full merits review also favors a preliminary injunction.  *See Wages & White Lion Invs.*, 16 F.4th at 1143.  For years, "ATF's letter rulings approving [pistol stabilizing] braces helped create a thriving market." *Mock*,

9

2023 WL 4882763, at *6.  ATF estimates that there are "3 million" stabilizing braces in circulation based on sales from 2013 to 2020, Regulatory Impact Analysis at 18, and the true number is likely much higher, *see* Decl. of Jeff Creamer ¶ 15, *FRAC v. Garland*, No. 1:23-cv-0024-DLH-CRH (D. N.D. Mar. 13, 2023), ECF No. 1-10 ("Creamer Decl."), attached as Ex. D (explaining that SB Tactical alone sold more than 2.3 million braces since 2020).  In remanding to this Court, the Fifth Circuit maintained its preliminary injunction to "ensure relative stability."  *Mock*, 2023 WL 4677542, at *20.  Thus, "the maintenance of the status quo is an important consideration" favoring an injunction here.  *Wages & White Lion Invs.*, 16 F.4th at 1143 (internal quotations omitted).

## II.    THE COURT'S PRELIMINARY INJUNCTION SHOULD EXTEND NATIONWIDE.

### A.    Nationwide Relief Is Appropriate When Necessary To Provide Complete Relief.

At a minimum, an injunction "should be crafted to 'provide complete relief to the plaintiffs.'"  *Mock*, 2023 WL 4882763, at *20 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  Furthermore, in some cases—particularly cases involving nationwide rules promulgated under the APA—"nationwide relief is appropriate and may be necessary for the benefit of all parties."  *Ibid.*

The Fifth Circuit's en banc decision in *Feds for Medical Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023), provides an instructive example showing the necessity of nationwide relief.  There, the Fifth Circuit affirmed a district court's entry of a nationwide, preliminary injunction blocking enforcement of a federal policy that "required all federal employees to be vaccinated."  *Id.* at 369. The Fifth Circuit agreed with the lower court that because the organizational plaintiff in that case "ha[d] over 6,000 members spread across every State in the Nation," a party-specific remedy "would prove unwieldy and would only cause more confusion."  *Id.* at 388 (internal quotations omitted).  In addition, because the Government had called for a "consistent" vaccination policy for

all its employees "across the Nation," the Fifth Circuit doubted the sincerity of the Government's litigating position calling for a "piecemeal" remedy. *Ibid.* Finally, because the injunction was "*preliminary*," ordering nationwide relief matching the Government's nationwide action would most effectively serve to "maintain the status quo until the parties have the chance to adjudicate the merits." *Id.* at 389 (emphasis in original).

Another federal court reached the same result in *Health Freedom Defense Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144 (M.D. Fla. 2022).[4]  There, after holding unlawful a federal "mask mandate" applicable to interstate travelers, the court turned to the scope of the remedy.  *Id.* at 1176.  Although that court expressed some "skepticism about" "nationwide injunctive relief" in general, it found that nationwide relief was "necessary to grant complete relief to Plaintiffs" in that case.  *Id.* at 1176–77.  The Court explained that "[t]he difficulty of distinguishing the named Plaintiffs from millions of other travelers . . . almost ensure[d] that a limited remedy would be no remedy at all."  *Ibid.*  After all, how was "the ride-sharing driver, flight attendant, or bus driver" tasked with enforcing the mask mandate supposed "to know someone is a Plaintiff to th[e] lawsuit with permission to enter mask-free?"  *Ibid.*  And this "identification problem [wa]s compounded further for the geographically dispersed members of" the Plaintiff organization.  *Id.* at 1177–78.  Thus, the Court found that nationwide relief was "necessary to remedy Plaintiffs' injury."  *Id.* at 1178.

The results in these cases are fully consistent with "the default rule" in APA litigation.  *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (*en banc*).   "[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—

---

[4]  This decision was vacated as moot after the Government allowed the policy at issue in that case to expire while the case was on appeal.  *See Health Freedom Def. Fund v. President of United States*, 71 F.4th 888 (11th Cir. 2023).

not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs.*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *accord Data Mktg. P'ship., LP v. United States Dept. of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The default rule is that vacatur is the appropriate remedy."). In a case like this one—where the Fifth Circuit has held that Plaintiffs are likely to succeed on the merits and has strongly indicated that a partial remedy would pose enforcement difficulties, *see Mock*, 2023 WL 4882763, at *20—preliminary relief should match the scope of the typical APA remedy. *See D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 49 (D.D.C. 2020) ("Nationwide preliminary injunctive relief guarantees that a rule shown likely to be proven unlawful does not become effective, providing complete relief to the plaintiffs while the rule's legality is finally adjudicated.").

### B. The Plaintiffs Require A Nationwide Injunction To Obtain Complete Relief.

In this case, a nationwide injunction is necessary to provide adequate relief for the Plaintiffs and to maintain the status quo pending a full determination on the merits. This is because Plaintiff Maxim Defense and Plaintiff FPC's commercial members are only one link in a complex supply chain consisting of suppliers, designers, importers and exporters, transportation and logistics companies, retailers, and, ultimately, the gun-owning public. *See* White Decl. ¶ 23; Dahl Decl. ¶¶ 9–10 (discussing business relationships with "OEM firearm manufacturers" and "various dealers, distributors, and retailers across the United States"); *see also* Luce Decl. ¶ 12 (discussing "downstream effects of the Rule" on company's "business partners"). In this context, a party-specific remedy cannot work because others in the chain would still be subject to unlawful regulation, rendering relief incomplete. White Decl. ¶¶ 22, 24–26.

Consider first these companies' business partners. ATF claims that it will impose "criminal penalties" on individuals that violate the Rule, including "individuals who possess or transfer unregistered short-barreled rifles," as the agency now defines that term. Rule, 88 Fed. Reg. at

6,556.  Accordingly, if the business plaintiffs successfully obtain relief from the Rule, they will nevertheless struggle to keep their businesses running, absent nationwide relief.  For example, the business plaintiffs will undoubtedly have trouble finding transportation or logistics contractors if those companies may be criminally liable for the unregistered transfer of short-barreled rifles.  *See* White Decl. ¶ 24.  The same is true for intermediate sellers, retailers, or exporters, which will understandably be hesitant to risk incurring criminal liability for selling unregistered short-barreled rifles.  *See id.*; *see also* Supp. Dahl Decl. ¶ 4 ("Three of Maxim Defense's major OEM customers discontinued their stabilizing brace orders due to the impact of the Final Rule."); Dahl Decl. ¶ 10 ("[W]hat may be recorded as a single 'transaction' originating with Maxim Defense, also necessarily involves multiple third parties."); Luce Decl. ¶ 12 ("One of B&T's distributors recently returned a shipment of firearms and brace accessories in anticipation of the Rule taking full effect.").

The effect on customers is similar.  Customers who are not specifically named by the injunction are unlikely to purchase a company's products if it means risking felony prosecution for unlicensed possession.  *See* White Decl. ¶ 25.

A remedy that leaves a company without business partners or customers is plainly no remedy at all.  *See* Supp. Dahl Decl. ¶¶ 4–6 (explaining that harm to company is due to lost sales); *see also* Creamer Decl. ¶ 48 (noting that enjoining Rule would provide relief to company by allowing "customers to continue using stabilizing braces without triggering burdensome regulations").  Rather, "[a]s this Court has previously found, [a company's] injuries cannot be remedied if its only source of revenue—customer willingness to transact business—has been severely curtailed."  *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915, at *5 (N.D. Tex. Nov. 3, 2022) (O'Connor, J.) (explaining why remedy must at least

13

extend to customers); *see also Washington v. Trump*, 487 F. Supp. 3d 976, 984 (E.D. Wash. 2020) (finding "nationwide injunction [wa]s appropriate" to "give Plaintiffs the relief to which they are entitled").

Furthermore, in this case, a remedy that covers individual companies and even their customers would not provide complete relief to the Plaintiffs.  For one thing, this limited remedy would be impossible to administer effectively here—a conclusion the Fifth Circuit has already endorsed in this litigation.  *See Mock*, 2023 WL 4882763, at *20 ("There is a need for consistent application of the law[.]"  "It is already uncertain how many persons are now subject to these injunctions or how the ATF would enforce the Final Rule against non-enjoined parties.").  Indeed, ATF says the Rule regulates millions of individual gun owners and more than 17,000 federal firearms licensees spread across the entire country.  Regulatory Impact Analysis at 18, 76.  But the agency has no plan to "distinguish the named Plaintiffs from millions of other" brace owners and sellers.  *Health Freedom Def. Fund*, 599 F. Supp. at 1177.  This virtually ensures that the customers of covered companies (not to mention the many individual members of FPC) would be subject unlawful enforcement actions.  *See* White Decl. ¶¶ 27–28.  After all, how is an ATF agent "to know someone is a Plaintiff to this lawsuit with permission to" possess or transfer a braced gun without being subject to extensive federal regulation?  *Health Freedom Def. Fund*, 599 F. Supp. at 1177; *see also Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) (upholding nationwide preliminary injunction where more limited remedy "would be ineffective").

The problem is magnified because the business plaintiffs have customers and commercial relationships across the country.  *See, e.g.*, Dahl Decl. ¶¶ 9–10.  The same problem is present for organizational plaintiff FPC, which has "hundreds of thousands of members across the country." Combs Decl. ¶ 7.  Under these circumstances, "a limited remedy would be no remedy at all."

*Health Freedom Def. Fund*, 599 F. Supp. at 1177.  Indeed, as the Fifth Circuit explained in *Feds for Medical Freedom*, a limited remedy "would prove unwieldy and would only cause more confusion" when applied to thousands of geographically dispersed parties.  *Feds for Medical Freedom*, 63 F.4th at 388.

The Government's "position on the scope of the injunction also sits awkwardly with its position on the merits."  *Id.* at 388.  In the preamble to the Rule, ATF stated that the "intent of th[e] rule is to . . . ensure consistent application" of federal firearms statutes.  Rule, 88 Fed. Reg. at 6,502.  And in this litigation, the Government represented to the Court that the Rule was intended "to provide a consistent, predictable framework."  Def. Opp. To Pls.' Mot. For Prelim. Injunction at 14, 35, ECF No. 37; *see also id.* at 43 ("the Rule serves the public interest by providing regulated parties with greater clarity.").  Now, after the Fifth Circuit has held that Plaintiffs are likely to succeed on the merits and indicated that "[t]here is a need for consistent application of the law," *Mock*, 2023 WL 4882763, at *20, the Government argues for inconsistent application.  Just like in *Feds for Medical Freedom*, the Government's newfound enthusiasm for "piecemeal enforcement"—"where thousands of plaintiffs' members across the Nation are subject to the district court's injunction" and "the remainder are subject to the" Rule—"undermines rather than supports the Government's purported interest in consistency."  *Feds for Medical Freedom*, 63 F.4th at 388; *accord Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 270 (S.D.N.Y. 2020) (imposing nationwide preliminary injunction because of "strong federal interest in uniformity").

The Government's inconsistency is underscored by its litigation behavior.  Elsewhere in this District, ATF opposed intervention by a manufacturer on the grounds that it would presumptively be covered by any remedy setting aside the Rule.  Def.'s Opp. To CMMG Inc.'s Mot. To Intervene 6–8, *Britto v. ATF*, 2:23-cv-00019-Z (N.D. Tex. Mar. 10, 2023), ECF No. 41;

*see also* Defs.' Opp'n Blackhawk Manufacturing Group's Mot. Intervene 9–13, *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2022 WL 16680915 (N.D. Tex. Oct. 7, 2022) (opposing intervention on similar grounds), ECF No. 96.   As a consequence, that manufacturer was not permitted to intervene.   *See* Order, *Britto v. ATF*, 2:23-cv-00019-Z (N.D. Tex. Apr. 14, 2023), ECF No. 50.   Now, the Government tries to have its cake and eat it too—opposing nationwide relief in this Court, after having told another court that allowing intervention was unnecessary because relief would presumptively be ordered nationwide.   ATF's gamesmanship undermines its own case for a limited injunction.   *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (internal quotations omitted) (alteration omitted)).

A limited remedy would also place a significant strain on judicial and agency resources. Despite millions of gun owners and tens of thousands of impacted businesses, the Government does not explain how it will administer two opposing standards—one for parties to the litigation and one for non-parties—each punishable by felony criminal penalties.   *See Mock*, 2023 WL 4882763, at *20 ("It is already uncertain . . . how the ATF would enforce the Final Rule against non-enjoined parties.").   Nor does the Government explain why the nation's courts should be burdened with the inevitable "flood of duplicative litigation" from entities seeking preliminary relief from a rule that the Fifth Circuit has already held is unlawful.   *Nat'l Min. Ass'n*, 145 F.3d at 1409.

A nationwide preliminary injunction will likewise protect limited private resources.   As Justice Kavanaugh explained in a similar context, it "would be wholly impractical—and a huge

waste of resources—to expect and require every potentially affected party to bring pre-enforcement [APA] challenges against every agency order that might possibly affect them." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2061 (2019) (Kavanaugh, J., concurring). The better course is to issue a nationwide preliminary injunction sufficient "to maintain the status quo." *Feds for Medical Freedom*, 63 F.4th at 389.

Finally, a nationwide preliminary injunction will avoid fundamental unfairness. Consider the crux of the Government's position. Violators of the Rule face up to ten years imprisonment under federal firearms law. *See* 26 U.S.C. § 5871; 18 U.S.C. §§ 924(a)(1)(B), (D); 3571(c)(3); 3559(a)(4). But the Fifth Circuit has squarely held that the Rule "violates the APA." *Mock*, 2023 WL 4882763, at *11. Thus, at bottom, the Government's request for a party-specific remedy is really a request to continue enforcing its unlawful Rule and potentially even imprison Americans. These Americans' only real crime would be not having signed on to Plaintiffs' APA complaint. That absurd outcome is why, "[u]nder the [Supreme] Court's approach," "a provision [of law]" "cannot be lawfully enforced" "against the plaintiff" or "against others" when it "is "declared invalid." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2351 n.8 (2020); *see also D.C.*, 444 F. Supp. at 51 (assessing effect on "similarly situated" parties in granting nationwide preliminary injunction). This Court should not condone the Government's proposed injustice.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that the Court grant Plaintiffs a nationwide preliminary injunction.

Dated: August 18, 2023                     Respectfully submitted,

                                          /s/ Stephen J. Obermeier
                                          Stephen J. Obermeier* (DC Bar No. 979667)
                                          Michael D. Faucette* (DC Bar No. 1046222)
                                          Jeremy J. Broggi* (DC Bar No. 1029427)
                                          Boyd Garriott* (DC Bar No. 1617468)
                                          **WILEY REIN LLP**
                                          2050 M Street NW
                                          Washington, DC 20036
                                          Tel: 202.719.7000
                                          Fax: 202.719.7049
                                          SObermeier@wiley.law
                                          MFaucette@wiley.law
                                          JBroggi@wiley.law
                                          BGarriott@wiley.law

                                          *Counsel for Palmetto State Armory, Firearms
                                          Regulatory Accountability Coalition, and SB
                                          Tactical*

                                          *\* Pro hac vice pending*

                                          John Leslie (TX Bar. No. 12231400)
                                          **JOHN LESLIE PLLC**
                                          1805 West Park Row Drive, Suite C
                                          Arlington, TX 76013-3584
                                          Tel: 817.405.7700
                                          Fax: 817.505.1292
                                          arlingtonlaw@aol.com

                                          *Local Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2023, I electronically submitted the foregoing document to the clerk of court of the U.S. District Court, Northern District of Texas, using the electronic case filing ("ECF") system of the Court. I hereby certify that I have served the counsel of record for Plaintiffs and Defendants electronically through the Court's ECF system.


Dated: August 18, 2023                    Respectfully submitted,

                                          /s/ Stephen J. Obermeier
                                          Stephen J. Obermeier