# EXHIBIT A

## DECLARATION OF TRAVIS WHITE

I, Travis R. White, hereby declare as follows under the penalty of perjury.

1. I am Travis R. White, President & Chief Executive Officer of the Firearms Regulatory Accountability Coalition, Inc. ("FRAC"). Unless otherwise stated, this declaration is based on my personal knowledge and belief, my review of business records of FRAC, and conversations between myself and the leadership of FRAC's member companies. If called as a witness, I could and would testify competently to the contents of this declaration.

2. I am over 18 years of age, a citizen of the United States and North Dakota, and of sound mind.

3. Unless otherwise indicated, all references herein to a given year or years is based on a traditional January through December calendar year.

4. All references herein to the feelings, understandings, concerns, and any other representations of, or by, FRAC member companies ("members") are made upon information and belief. Unless specifically stated otherwise, the basis for such information and belief includes my communications with senior persons within FRAC member companies and my general knowledge of the industry.

5. FRAC is a non-profit association working and advocating to improve business conditions for the firearm industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies. FRAC serves as the premiere national trade association representing U.S. firearms, ammunition, and accessories manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States.

6. Some of FRAC's member companies maintain business relationships with the commercial Plaintiffs in this case.

7. FRAC has an interest in the outcome of this case because the relief ordered here may

determine whether FRAC's members can continue to sell stabilizing braces and brace-equipped guns in this jurisdiction and elsewhere.

### ATF's Stabilizing Brace Rule

8. Since at least 2012, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") has repeatedly ruled that pistols and other firearms with attached stabilizing braces are not "firearms" within the meaning of the National Firearms Act ("NFA") and are not "short-barreled rifles" within the meaning of the Gun Control Act ("GCA"). The agency took similar positions in criminal prosecutions in multiple federal courts.

9. Upon information and belief, several of FRAC's members, including NST Global, LLC d/b/a SB Tactical ("SB Tactical"), B&T USA, LLC ("B&T"), and Palmetto State Armory ("PSA") relied on ATF's classification decisions and judicial filings regarding stabilizing braces when making sales decisions, developing marketing strategies, and allocating priorities for manufacturing. The basis for my information and belief includes my communications with senior persons within FRAC member companies and my general knowledge of the industry.

10. On January 31, 2023, ATF issued a Rule titled "Factoring Criteria for Firearms with Attached 'Stabilizing Braces.'" Around the same time, ATF published documents on its website identifying "[c]ommercially available firearms equipped with a 'stabilizing brace'" and "[c]ommon weapon platforms with attached 'stabilizing brace' designs" that "are short-barreled rifles" under the Rule ("the Adjudications"). (These documents are available at https://www.atf.gov/rules-and-regulations/factoring-criteria-firearms-attached-stabilizing-braces).

### Industry Impact Of The Rule

11. Through its actions, ATF has identified firearms and accessories the agency had previously determined to be unregulated by the NFA but which ATF now deems NFA "firearms"

and GCA "short-barreled rifles."

12. These include firearms and accessories manufactured and sold by FRAC members.

13. As a direct result of ATF's actions, FRAC's members—including SB Tactical, B&T, and PSA—have suffered significant adverse financial consequences.

14. In particular, items that are subject to heightened NFA and GCA regulations are considered less desirable in the firearms community and, as a consequence, are more difficult to sell.

15. ATF's decision to subject nearly all pistols and other firearms equipped with stabilizing braces to burdensome federal regulations have substantially diminished the sales and other revenues of FRAC members.

16. The Rule has injected mass uncertainty into the industry. FRAC members are using ambiguous criteria to cautiously evaluate which pistols in their inventory are subject to the rule. The stakes are high for member businesses since any misapprehension of the Rule's application will likely lead to the revocation of a business's federal firearms license or criminal penalties.

17. FRAC is leading a coalition of twenty-five states, companies, and individuals who are challenging in another jurisdiction the same rule at issue in this case. *See FRAC v. Garland*, No. 1:23-cv-0024-DLH-CRH (D. N.D. filed Feb. 9, 2023).

**Industry Impact Of The Limited Injunctions In This Circuit**

18. On or about May 23, 2023, the Fifth Circuit enjoined the Rule as to the Plaintiffs in this case.

19. On or about May 26, 2023, the Fifth Circuit clarified that the injunction included the customers and members of Plaintiff Maxim Defense and Plaintiff Firearms Policy Coalition. The Fifth Circuit likewise clarified that the injunction extended to the individual plaintiffs' resident family members.

20. On or about August 1, 2023, the Fifth Circuit remanded the decision to this Court and maintained its preliminary injunction for 60 days.

21. In the meantime, district courts across this Circuit have entered their own limited injunctions.

22. Many FRAC member companies do not know if their operations are covered by this patchwork of limited injunctions—even where they do business with parties covered by an existing injunction, including the commercial plaintiffs in this case.

23. For instance, many of FRAC's members are confused about the scope of the existing injunctions. Stabilizing braces and guns affixed with stabilizing braces are brought to market through a complex supply chain consisting of suppliers, designers, importers and exporters, transportation and logistics companies, retailers, and, ultimately, the gun-owning public. As a result, FRAC members' businesses necessarily depend on the participation of numerous third parties to operate and remain viable.

24. Many FRAC members do not know which links in the supply chain are covered by the patchwork of existing injunctions. For example, many FRAC members are unsure if the injunctions protect from criminal liability transportation and logistics companies that transfer products regulated by the Rule. Many FRAC members are also unsure if the injunction's protections for "customers" extends to intermediate sellers, retailers, and exporters.

25. Many FRAC members also report that their customers are unsure of whether they are covered by the injunction.

26. For these reasons, many FRAC members are also concerned that a limited injunction going forward may leave out crucial links in the supply chain, as well as customers.

27. Many FRAC members are also concerned that a limited injunction may subject them

to arbitrary and unlawful enforcement. For example, some FRAC members are concerned that even if an injunction extends to customers of the Plaintiffs in this case—to include other companies—a law enforcement officer may not know that any particular company or individual is a customer covered by the injunction. Further, some FRAC members do not know how law enforcement officers would verify their status as a protected business or customer under a limited injunction.

28. Many FRAC members are particularly concerned that even inadvertent good-faith mistakes by law enforcement as to the scope of a limited injunction could expose their businesses to criminal liability.

29. For these reasons, FRAC's members—representing a broad swath of companies across the firearms industry—do not believe a limited injunction would be a workable solution. FRAC's members believe that any remedy shy of a universal nationwide injunction will lead to the irrevocable dissolution of the stabilizing brace market.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 17, 2023

_____
Travis R. White
President & CEO, Firearms Regulatory
Accountability Coalition, Inc.