IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| WILLIAM T. MOCK; *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; *et al.*,<br><br>*Defendants*. | Civil Action No. 4:23-cv-00095-O |

## DECLARATION OF BERT IRSLINGER

I, Bert Irslinger, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

1. I am over 18 years of age, competent to testify, and have personal knowledge of the matters stated herein.

2. I am the Managing Partner of Second Amendment Sports, which operates a firearms dealership, indoor shooting range, and firearms education center in McHenry, Illinois

3. Over the past several years, Second Amendment Sports has sold stabilizing braces and braced pistols as two of its more popular product categories. Included among those products are stabilizing braces and braced pistols manufactured by Maxim Industries, along with similar products from the other major manufacturers.

4. Since the ATF published the Final Rule establishing Factoring Criteria for Firearms With Attached "Stabilizing Braces," Second Amendment Sports stopped selling all

braced pistols, and the market for stabilizing braces and the style of heavy pistols that were customarily braced essentially evaporated.

5. In 2022, Second Amendment Sports sold approximately $365,000 in braced pistols and $7,000 in stabilizing braces. Sales is both product categories are down more than 85% in 2023.

6. One of the largest challenges the business faced initially was that our existing inventory of braced pistols locked into place—there were no customers to sell to, and no clear guidance on how to sell the products. We removed the braces to make the pistols sellable but, even then, Second Amendment Sports has had difficulty selling the products. There is almost no demand for these sorts of unbraced pistols; the business has cut back orders in the product class by at least 90 percent compared to previous years. Before, Second Amendment Sports would have placed orders for 20 or even 50 units at a time; now we are ordering only a few at a time—and the stabilizing braces and unbraced pistols we have kept in stock are taking longer to sell.

7. The Final Rule has had significant impacts on Second Amendment Sports' customers, who have struggled to understand the regulation. Their confusion over the ambiguity in the Final Rule has made our customers hesitant because they are scared of becoming felons.

8. With an injunction that unambiguously affirms the Final Rule does not apply to our purchase and sales of stabilizing braces and braced pistols, Second Amendment Sports would be happy to resume selling braced pistols and stabilizing braces and work to build consumer demand. From my perspective, however, the only way to restore consumer confidence and increase demand to levels near where they were before the Final Rule is for a clear statement from a court that the Final Rule does not apply to anybody anywhere. This would require clear guidance so that Second Amendment Sports (and other businesses like us) and our customers

understand what activity is protected. At a minimum, Second Amendment Sports and other businesses like us need some clarity from the Court that we are protected under an injunction that applies to Maxim Defense's customers and intermediaries to ensure that we are not in violation of federal law and are not at risk of losing our license or our business.

August 18, 2023.

Bert Irslinger
Managing Partner
Second Amendment Sports