**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| WILLIAM T. MOCK, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 4:23-cv-95-O |
| MERRICK B. GARLAND, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     Plaintiffs will suffer no irreparable injury that their requested preliminary injunction
       would otherwise prevent. .....................................................................................2

II.    A preliminary injunction would disserve public interests advanced by the Rule. .....................8

III.   Any preliminary relief should be tailored to redress only plaintiffs' irreparable
       injuries. ................................................................................................................10

CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Alcresta Therapeutics, Inc. v. Azar,*
  318 F. Supp. 3d 321 (D.D.C. 2018) ...........................................................................6

*Am. Hosp. Ass'n v. Harris,*
  625 F.2d 1328 (7th Cir. 1980) ...................................................................................6

*Am. Meat Inst. v. U.S. Dep't of Agric.,*
  968 F. Supp. 2d 38 (D.D.C. 2013).........................................................................4, 5

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.,*
  897 F.3d 314 (D.C. Cir. 2018)...................................................................................7

*Arizona v. Biden,*
  40 F.4th 375 (6th Cir. 2022) ............................................................................. 10, 13

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) .................................................................................................10

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
  --- F. Supp. 3d ---, 2023 WL 4291992 (W.D. Tex. June 30, 2023) ......................2, 7

*Chacon v. Granata,*
  515 F.2d 922 (5th Cir. 1975) .....................................................................................2

*City of Austin v. Kinder Morgan Tex. Pipeline, LLC,*
  447 F. Supp. 3d 558 (W.D. Tex. 2020)......................................................................3

*Cy Wakeman, Inc. v. Nicole Price Consulting, LLC,*
  284 F. Supp. 3d 985 (D. Neb. 2018) ..........................................................................5

*DHS v. New York,*
  140 S. Ct. 599 (2020) ...............................................................................................10

*Eastland v. U.S. Servicemen's Fund,*
  421 U.S. 491 (1975) .................................................................................................10

*Elrod v. Burns,*
  427 U.S. 347 (1976) ...................................................................................................7

*Freedom Holdings, Inc. v. Spitzer,*
  408 F.3d 112 (2d Cir. 2005).......................................................................................6

*Georgia v. President of the U.S.,*
  46 F.4th 1283 (11th Cir. 2022).......................................................................... 11, 13

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ................................................................................................10

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.,*
  527 U.S. 308 (1999) ....................................................................................................10

*Jacksonville Port Auth. v. Adams,*
  556 F.2d 52 (D.C. Cir. 1977) ........................................................................................9

*John Doe Co. v. CFPB,*
  849 F.3d 1129 (D.C. Cir. 2017).....................................................................................2

*League of Women Voters of the U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ...........................................................................................2

*Louisiana v. Becerra,*
  20 F.4th 260 (5th Cir. 2021) .........................................................................................11

*Madsen v. Women's Health Ctr., Inc.,*
  512 U.S. 753 (1994) ....................................................................................................10

*Maryland v. King,*
  567 U.S. 1301 (2012) ....................................................................................................9

*Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.,*
  447 F. Supp. 3d 522 (N.D. Tex. 2020) ...........................................................................3

*Memphis A. Philip Randolph Inst. v. Hargett,*
  978 F.3d 378 (6th Cir. 2020) .........................................................................................2

*Mkt. Synergy Grp., Inc. v. U.S. Dep't of Lab.,*
  2016 WL 6948061 (D. Kan. Nov. 28, 2016) ..............................................................4, 5

*Mock v. Garland,*
  75 F.4th 563 (5th Cir. 2023) .....................................................................................1, 12

*Morehouse Enters., LLC v. ATF,*
  --- F.4th ---, 2023 WL 5356626 (8th Cir. Aug. 22, 2023) ............................................7

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) ....................................................................................................9

*Nken v. Holder,*
  556 U.S. 418 (2009) ......................................................................................................8

*Oakley v. Devos,*
  2020 WL 3268661 (N.D. Cal. June 17, 2020) ................................................................5

*Postal Police Officers Ass'n v. U.S. Postal Serv.*,
   502 F. Supp. 3d 411 (D.D.C. 2020) ...........................................................................6

*Pursuing Am.'s Greatness v. FEC*,
   831 F.3d 500 (D.C. Cir. 2016)..................................................................................8

*Religious Sisters of Mercy v. Becerra*,
   55 F.4th 583 (8th Cir. 2022) .................................................................................13

*Ry. Lab. Execs.' Ass'n v. Soo line R.R.*,
   1987 WL 17163 (N.D. Ill. Sept. 10, 1987)...............................................................5

*Safari Club Int'l v. Jewell*,
   47 F. Supp. 3d 29 (D.D.C. 2014)............................................................................5

*Sierra Club v. Trump*,
   379 F. Supp. 3d 883 (N.D. Cal. 2019) ....................................................................5

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................3

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
   989 F.3d 368 (5th Cir. 2021) ................................................................................12

*Texas v. United States*,
   50 F.4th 498 (5th Cir. 2022) .................................................................................12

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) .........................................................................................10

*Trump v. Thompson*,
   20 F.4th 10 (D.C. Cir. 2021).............................................................................9-10

*United States v. St. Bernard Par.*,
   756 F.2d 1116 (5th Cir. 1985) ...............................................................................4

*United States v. Texas*,
   566 F. Supp. 3d 605 (W.D. Tex. 2021) ..................................................................8

*United States v. Thompson/Ctr. Arms Co.*,
   504 U.S. 505 (1992) ............................................................................................8-9

*V Real Est. Grp., Inc. v. U.S. Citizenship & Immigr. Servs.*,
   2014 WL 5243369 (D. Nev. Oct. 15, 2014).............................................................6

*VanDerStok v. Garland*,
   633 F. Supp. 3d 847 (N.D. Tex. 2022) ...................................................................7

*Voile Mfg. Corp. v. Dandurand,*
  551 F. Supp. 2d 1301 (D. Utah 2008) ................................................................................... 4

*White v. Carlucci,*
  862 F.2d 1209 (5th Cir. 1989) ............................................................................................... 2

*Wis. Gas Co. v. FERC,*
  758 F.2d 669 (D.C. Cir. 1985) ........................................................................................... 2, 6

**Statutes**

5 U.S.C. § 705 ........................................................................................................................ 12

5 U.S.C. § 706 ........................................................................................................................ 12

**Regulations**

*Factoring Criteria for Firearms With Attached "Stabilizing Braces,"*
  88 Fed. Reg. 6,478 (Jan. 31, 2023) ................................................................................... 1, 9

## INTRODUCTION

Earlier this year, this Court denied plaintiffs' motion to preliminarily enjoin enforcement of a rule promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")[1] after determining that plaintiffs had not shown a likelihood of success on the merits of their claims.[2] On appeal, a divided panel of the Fifth Circuit disagreed with that conclusion in part, finding it likely that plaintiffs would succeed on their claim that the Rule violated the Administrative Procedure Act's ("APA") requirement that a legislative rule be a "logical outgrowth" of an agency's proposed rule. *Mock v. Garland*, 75 F.4th 563, 578–86 (5th Cir. 2023).

The panel concluded, however, that plaintiffs had carried only "part of their burden," and had yet to demonstrate the remaining prerequisites to a preliminary injunction—*i.e.*, that they will suffer irreparable harm without the requested injunction, the balance of equities tips in their favor, and preliminary relief would serve the public interest. *Id.* at 586. So, the panel remanded the matter to this Court with instructions to determine, in the first instance, whether plaintiffs had carried their burden as to each remaining equitable factor, *id.* at 586–88, cautioning that these factors should not be given "short shrift," *id.* at 587 n.60.

But despite having another opportunity to do so, plaintiffs have again failed to show that they are entitled to their requested preliminary injunction, as each remaining equitable factor still militates strongly against it. Plaintiffs have identified no irreparable injury that could justify preliminarily enjoining the Rule's enforcement, an injunction that would, in any event, disserve critical public interests that the Rule advances—namely, public safety and regulatory clarity. The Court should therefore deny plaintiffs' motion for a preliminary injunction.

---

[1] *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule").

[2] Op. & Order on Pls.' Mot. for Prelim. Inj. or, in the Alternative, for Postponement of the Effective Date of the Final Rule ("Opinion"), ECF No. 40.

**ARGUMENT**

### I.    Plaintiffs will suffer no irreparable injury that their requested preliminary injunction would otherwise prevent.

Once again, plaintiffs have failed to show that they will suffer any imminent, irreparable harm unless this Court grants them preliminary relief—an "'indispensable' requirement for a preliminary injunction." *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (citation omitted). To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical, *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2023 WL 4291992, at *6 (W.D. Tex. June 30, 2023), and must be "so imminent that there is a clear and present need for equitable relief to prevent" it, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (cleaned up); *accord Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). A plaintiff cannot make this showing with "unsubstantiated and conclusory assertions," *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017), but must substantiate any claim of irreparable injury with "independent proof, or no injunction may issue," *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). A plaintiff also "must show that the alleged harm will directly result from the action" he seeks to enjoin. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

*Maxim Defense.* In their supplemental brief, plaintiffs rely most heavily on Maxim Defense's claim that the Rule has upended its business of manufacturing and selling stabilizing braces and pistols equipped with them. *See* Pls.' Suppl. Br. in Supp. of Mot. for Prelim. Inj. ("Pls.' Br.") at 5–10, ECF No. 75. That is so, Maxim contends, because there is no longer a "viable market" for those products after the Rule's promulgation. *Id.* at 9. And that is because consumers no longer see brace-equipped pistols as a valuable alternative to weapons marketed explicitly as short-barreled rifles, now that ATF has made clear that both are generally subject to the NFA. *Id.* at 6.

Notably, Maxim's argument concedes a principal rationale underlying the Rule—*i.e.*, that the firearms industry has manufactured and marketed, and individual possessors have purchased and used,

weapons equipped with stabilizing braces to skirt NFA controls applicable to short-barreled rifles. *See* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. or, in the Alternative, for Postponement of the Effective Date of the Final Rule ("PI Opp.") at 4–7, ECF No. 37. Indeed, Maxim appears to concede that brace-equipped pistols have little, if any, marketable value now that the Rule has clarified that ATF considers these weapons to be generally subject to the same requirements as similar weapons marketed explicitly as short-barreled rifles. But if (as plaintiffs have repeatedly suggested) there were truly a market for heavy pistols equipped with rearward devices that provide forearm support to assist with single-handed firing, there is no reason to expect that the market for these weapons would suddenly vanish simply because they need to be registered and are subject to a $200 tax, or that the market is unable to adapt its offerings to satisfy this demand.

But putting that aside, Maxim's theory of irreparable harm cannot justify a preliminary injunction. As an initial matter, the bulk of Maxim's allegations concern how potential customers have already supposedly responded to the Rule—namely, by eliminating demand for stabilizing braces because of lost "confidence in the legality" of unregistered brace-equipped pistols—and how that market response allegedly impacted Maxim's business in the past. Pls.' Br. at 6–10. But it's axiomatic that past harms cannot support prospective injunctive relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009); *see also, e.g.*, *City of Austin v. Kinder Morgan Tex. Pipeline, LLC*, 447 F. Supp. 3d 558, 569 (W.D. Tex. 2020) ("[Because] past harms cannot be prevented by a preliminary injunction, they cannot form the basis of preliminary injunctive relief."); *Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.*, 447 F. Supp. 3d 522, 534 (N.D. Tex. 2020) ("Plaintiff's reference to *past* injuries . . . do not constitute the type of ongoing or probable future injuries requiring [a] preliminary injunction.").

And although Maxim claims that its business will continue to suffer under current market conditions unless the Rule is enjoined, that argument is unpersuasive for several reasons. First of all, it rests entirely on Maxim's speculations about changing consumer demand for its products during the

3

pendency of this litigation. But "[s]peculation about how third parties" will behave, and about how that behavior will affect the market value of a product, "is insufficient to demonstrate irreparable harm." *Mkt. Synergy Grp., Inc. v. U.S. Dep't of Lab.*, 2016 WL 6948061, at *30 (D. Kan. Nov. 28, 2016); *accord Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008) ("[A] probable loss in market share . . . does not amount to irreparable harm."); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d 38, 78–79 (D.D.C. 2013) (rejecting claim of irreparable harm based on assertions about what plaintiffs "truly 'expect' [will] happen in the marketplace; what their customers are 'likely' to demand; and what 'could' happen to their businesses").

Moreover, it is unreasonable to think that the preliminary injunction that Maxim requests would have any impact on consumer demand for Maxim's products, such that it would prevent the economic harms that Maxim alleges. *See United States v. St. Bernard Par.*, 756 F.2d 1116, 1123 (5th Cir. 1985) ("It is black letter law that an injunction will not issue when it would be ineffectual."). Maxim's argument rests on the assumption that consumers who have left the stabilizing-brace market because of lost "confidence in the legality" of unregistered brace-equipped pistols will flood back into that market if this Court preliminarily enjoins the Rule's enforcement. Pls.' Br. at 3, 6–7. But there's no reason to think that would occur. If this Court were to enter Maxim's requested preliminary injunction, it would not call into question ATF's interpretation of the NFA as applied to brace-equipped pistols—especially given that the injunction would be premised on plaintiffs' logical-outgrowth claim, which says nothing about the cogency of ATF's statutory interpretation. So whether a preliminary injunction issues or not, consumers still have reason to doubt that unregistered brace-equipped pistols are a legally viable alternative to weapons explicitly marketed as short-barreled rifles. A preliminary injunction would thus have no apparent effect on the economic harms that Maxim alleges during this

4

lawsuit's pendency. [3] *See, e.g.*, *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925 (N.D. Cal. 2019) ("Plaintiffs must demonstrate that preliminary injunctive relief will prevent some irreparable injury that is likely to occur before the Court has time to decide the case on the merits."), *judgment vacated on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (Mem.); *Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*, 284 F. Supp. 3d 985, 994 (D. Neb. 2018) ("[A]n injunction should not issue where the allegedly irreparable injury would occur despite the injunction."); *Oakley v. Devos*, 2020 WL 3268661, at *16 (N.D. Cal. June 17, 2020) ("Plaintiffs also must show that the threatened harm would not occur if an injunction is granted."); *Ry. Lab. Execs.' Ass'n v. Soo line R.R.*, 1987 WL 17163, at *1 (N.D. Ill. Sept. 10, 1987) ("[P]laintiff must" prove "that an injunction will prevent the suffering of the irreparable harm.").

And even if Maxim could substantiate its speculations (which it has not), any potential harm to its business would result from the independent choices of consumers, not from the Rule. Courts routinely reject claims of irreparable harm (like Maxim's) that depend on an indirect theory of causation about how a challenged action will impact a plaintiff's economic interests. *See, e.g.*, *Mkt. Synergy Grp., Inc.*, 2016 WL 6948061, at *30; *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 36–37 (D.D.C. 2014) (holding that the plaintiff could not establish irreparable harm to economic interests because any revenue losses resulted from third parties' independent decisions, and not directly from the challenged rule); *Am. Meat Inst.*, 968 F. Supp. 2d at 80–81 ("[Alleged harms] based on independent market variables such as how the supplier's customers and/or retail consumers might react" to the challenged rule and concerns that plaintiffs "will ultimately lose future business because others may

---

[3] Underscoring this point is Maxim's suggestion that consumer demand for its stabilizing-brace products is still completely lacking, despite the fact that its customers have been protected from the Rule's enforcement under the Fifth Circuit's injunction pending appeal for over three months. *See Mock v. Garland*, No. 23-10319 (5th Cir. May 26, 2023), ECF No. 78-2. If Maxim were correct that a preliminary injunction from this Court would prevent further harm to its business by rejuvenating consumer demand for its products, one would expect to have seen the market respond to the Fifth Circuit's existing injunction. But Maxim offers no evidence of this, and appears to argue that there was no market reaction.

respond to the new . . . rules and react in a manner that may ultimately affect their companies negatively" are "indirect harm[s]" that are "neither certain nor immediate."); *V Real Est. Grp., Inc. v. U.S. Citizenship & Immigr. Servs.*, 2014 WL 5243369, at *3 (D. Nev. Oct. 15, 2014) (explaining that harms resulting from "independent decision of . . . third-parties to withhold their investments . . . do[] not constitute irreparable injury for the purposes of a preliminary injunction").[4]

_Mock and Lewis._ Mock and Lewis, for their part, complain about having to comply with the NFA's requirements for their brace-equipped pistols that appear to be short-barreled rifles under federal law. Pls.' Br. at 10–12. But as defendants have already explained, *see* PI Opp. at 41, Mock's and Lewis's obligation to comply with the NFA is attributable not to the Rule but to Congress. So even if this Court were to preliminarily enjoin ATF from enforcing the Rule, that would not change plaintiffs' statutory obligations. *See Wis. Gas Co.*, 758 F.2d at 674 ("[A plaintiff] must show that the alleged harm will directly result from the action which [he] seeks to enjoin."). Bottom line, if Mock or Lewis possess a weapon that meets the statutory definition of a short-barreled rifle, he is obligated to comply with all applicable NFA controls, regardless of whether the Rule's enforcement is preliminarily enjoined.

Insofar as plaintiffs complain about the costs of compliance, Pls.' Br. at 10, those also flow from requirements imposed by Congress. And at any rate, compliance costs are typically insufficient to constitute irreparable harm. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005); *accord Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980). Where, as here, a plaintiff "provide[s] no meaningful information about the specific nature or extent of" compliance costs, "nor any concrete indication that they impose more than a de minimis burden," such costs do not amount to irreparable harm, as the "scale of the projected harm must be 'more than de minimis.'" *Career Colls. & Schs. of*

---

[4] Plaintiffs' reliance on alleged harms to Maxim's customers and other third parties, Pls.' Br. at 3, is misplaced. "[I]njuries to third parties are not a basis to find irreparable harm." *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018). A plaintiff's "burden is to show irreparable harm to *itself*," *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 426 (D.D.C. 2020) (emphasis added), which plaintiffs have failed to do.

*Tex.*, 2023 WL 4291992, at *8–10 (citation omitted); *see also Morehouse Enters., LLC v. ATF*, --- F.4th ---, 2023 WL 5356626, at *4 (8th Cir. Aug. 22, 2023) (declining to find irreparable harm based on compliance costs where "plaintiffs [did] not explain the economic harm in definite enough terms to show the extent of any harm is 'actual and not theoretical.'" (citation omitted)); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 855–56 (N.D. Tex. 2022) (agreeing that plaintiffs' "alleged financial injury is not sufficient for a showing of irreparable harm" even if "nonrecoverable" and "nonspeculative" because such "injury must be more than merely de minimis").

Mock and Lewis also continue to maintain that they are suffering ongoing harm to their Second Amendment rights. Pls.' Br. at 4 n.3. But as defendants have explained, *see* PI Opp. at 22–31, neither the Rule nor the NFA implicates those rights, let alone imminently threatens them. Indeed, this Court has already determined that plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their Second Amendment claims—a determination that the Fifth Circuit left undisturbed. That removes any doubt that plaintiffs have established an ongoing or imminent deprivation of a constitutional right. *See Elrod v. Burns*, 427 U.S. 347, 374 (1976); *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that, to show irreparable harm based on loss of constitutional rights, a movant must show likely success on the merits).

Finally, Mock and Lewis seem to suggest that they are under threat of potential "criminal sanction" because of the Rule. Pls.' Br. at 12, 21. Again, the Rule imposes no criminal sanctions; any penalties for possessing an unregistered short-barreled rifle are imposed by the NFA. Regardless, Mock and Lewis do not dispute that any threat of criminal penalties can be easily avoided; indeed, there are other ways of complying with the NFA (*e.g.*, reconfiguration) that do not require them to register, "destroy or divest themselves" of their brace-equipped pistols. *Id.* at 11. And if plaintiffs are unsure about whether a particular weapon is an NFA "firearm," they can request a classification from

ATF to clear up any confusion. *NFA Handbook* § 7.2.4 (Apr. 2009), https://perma.cc/P3NL-G35G.[5]

## II.     A preliminary injunction would disserve public interests advanced by the Rule.

When the government is the opposing party, the third and fourth equitable factors—the balance of harms and the public interest—"merge," *Nken v. Holder*, 556 U.S. 418, 435 (2009), in recognition that "the government's interest *is* the public interest," *United States v. Texas*, 566 F. Supp. 3d 605, 690 (W.D. Tex. 2021) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)). And here, defendants have identified real, concrete ways in which a preliminary injunction against the Rule will undermine critical public interests.

*First*, as defendants explained, *see* PI Opp. at 43, the Rule serves the public interest by providing regulated parties and the general public with greater regulatory clarity and consistency. ATF initiated the rulemaking process in part because its prior system of individualized classification determinations resulted in inconsistent (and occasionally incorrect) guidance on how a brace might affect a weapon's classification under federal law. The Rule makes clear, however, that a weapon equipped with a stabilizing brace is, under certain circumstances, a "rifle" under the NFA and the GCA, and thus subject to certain federal controls if equipped with a barrel less than sixteen inches in length. Moreover, the Rule provides regulated parties with clarity as to the framework ATF applies when classifying brace-equipped weapons, a framework that also ensures a consistent application of federal law. A preliminary injunction against the Rule would thus require ATF to return to its prior classification system, risking potentially inconsistent classifications and, in turn, confusion among regulated parties.

*Second*, the Rule benefits public safety by supporting the enforcement of NFA controls that Congress designed to address the safety risks posed by the proliferation of short-barreled rifles, uniquely dangerous and concealable weapons specifically targeted for their criminal utility. *See United*

---

[5] The Firearms Policy Coalition offers no claim of irreparable injury to its members that is independent of those asserted by Mock, Lewis, and Maxim Defense. *See* Pls.' Br. at 12–13.

*States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality op.). These safety risks are not hypothetical: in March 2021, a 21-year-old individual armed with an AR-type pistol equipped with a stabilizing brace gunned down ten people at a supermarket in Boulder, Colorado. That shooting came on the heels of another mass shooting in Dayton, Ohio, in which a 24-year-old individual similarly armed with a brace-equipped AR-type pistol killed nine people and injured at least fourteen others— firing at least 41 rounds in about 30 seconds.[6] In both instances, the shooters reportedly used the braces attached to their pistols as shoulder stocks. 88 Fed. Reg. at 6,495. These tragedies, and others,[7] underscore Congress's interest in ensuring that these uniquely dangerous weapons are subject to proper regulatory controls.

*And finally*, a preliminary injunction against the Rule would impinge on ATF's ability to effectuate, pursuant to its statutorily delegated duty, regulations on short-barreled rifles that Congress imposed through the enactment of the NFA and the GCA. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time [the Government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration adopted) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)) (Rehnquist, J., in chambers)). There is, however, "an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *See Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 58–59 (D.C. Cir. 1977); *cf. Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir.

---

[6] CNN, *10 killed in Colorado grocery store shooting*, https://perma.cc/HG5S-3NAF; USA Today, *Dayton shooter used a modified gun that may have exploited a legal loophole*, https://perma.cc/89XK-SNVR.

[7] Recent history confirms that Boulder and Dayton are not anomalies: braced weapons were also used in a mass shooting in Nashville, Tennessee—where six people, including three nine-year-olds, were killed—and in Colorado Springs, where five people were killed. *See* Washington Post, *Transcript: Protecting Public Safety with Steven Dettelbach* (Apr. 3, 2023), https://perma.cc/5H4K-DKQH; Bloomberg Government, *House Judiciary Comm. Hrg. Oversight of the Bureau of Alcohol, Tobacco, Firearms and Explosives Final Transcript* at 17 (Apr. 26, 2023) (ATF Director Steven Dettelbach acknowledging that the weapons involved in Club Q shooting in Colorado Springs and the Nashville shooting both were equipped with stabilizing braces).

2021) ("[C]ourts must take care not to unnecessarily 'halt the functions of a coordinate branch.'" (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975))).

### III.    Any preliminary relief should be tailored to redress only plaintiffs' irreparable injuries.

Because this Court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018). Traditional principles of equity reinforce those constitutional limitations, *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-319 (1999) (explaining that a court's authority to award relief is generally confined to relief "traditionally accorded by courts of equity" in 1789), instructing that injunctive relief "be no more burdensome" to a defendant "than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted); *accord Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Trump v. Hawaii*, 138 S. Ct. 2392, 2427 (2018) (Thomas, J., concurring) (explaining that English and early American "courts of equity" typically "did not provide relief beyond the parties to the case").

Plaintiffs ask this Court to set aside these principles and to preliminarily enjoin the Rule's enforcement nationwide, against plaintiffs and non-parties alike. Pls.' Br. at 15–23. But the Court should reject that invitation. Nationwide injunctions "have little basis in traditional equitable practice," *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring), as they "take the judicial power beyond its traditionally understood uses, permitting district courts to order the government to act or refrain from acting toward nonparties in the case," *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring). And as a practical matter, nationwide injunctions "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring); *see also DHS*, 140 S. Ct. at 599–601

(Gorsuch, J., concurring) (lamenting the "asymmetric" effects of nationwide injunctions on "the government's hope of implementing any new policy"); *Georgia v. President of the U.S.*, 46 F.4th 1283, 1305 (11th Cir. 2022) ("[N]ationwide injunctions" "cut[] off parallel lawsuits," "encourage gamesmanship, motivating plaintiffs to seek out the friendliest forum and rush to litigate important legal questions in a preliminary posture," and "disturb comity by hindering other courts from evaluating legal issues for themselves.").

But limiting equitable relief "to the parties at hand" allows "multiple judges and multiple circuits to weigh in" on the legality of a challenged policy "only after careful deliberation." *Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021) (citation omitted). And that consideration is particularly relevant here, given that the Rule is currently subject to litigation in at least nine other cases in six different federal districts,[8] one of which denied a preliminary injunction against the Rule and has a pending interlocutory appeal in a different Circuit[9]—underscoring why this Court should not attempt to decide the Rule's legality for all parties nationwide, particularly on a motion brought by only a few parties. *See Louisiana*, 20 F.4th at 263. Indeed, every court that has issued a preliminary injunction pertaining to the Rule has limited the scope of relief to those whom the court considered "plaintiffs" in the action.[10] As the Fifth Circuit explained recently, where "[o]ther courts are considering [the] same issues" at the same time, "[p]rinciples of judicial restraint control" and counsel against granting relief to non-parties. *Id.*; *see also Georgia*, 46 F.4th at 1307 ("[W]hen a regulatory challenge involves important and difficult questions of law, it is especially vital that various courts be allowed to weigh in so that

---

[8] *See Britto v. ATF*, No. 2:23-cv-19 (N.D. Tex.); *Colon v. ATF*, No. 8:23-cv-223 (M.D. Fla.); *Firearms Regul. Accountability Coal., Inc. v. Garland*, No. 1:23-cv-24 (D.N.D.); *Miller v. Garland*, No. 1:23-cv-195 (E.D. Va.); *Nat'l Rifle Ass'n of Am. v. ATF*, No. 3:23-cv-1471 (N.D. Tex.); *Second Amend. Found. v. ATF*, No. 3:21-cv-116 (N.D. Tex.); *Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex.); *Tex. Gun Rts., Inc. v. ATF*, No. 4:23-cv-578 (N.D. Tex.); *Watterson v. ATF*, No. 4:23-cv-80 (E.D. Tex.).

[9] *See Miller v. Garland*, No. 23-1604 (4th Cir.).

[10] *See Britto v. ATF*, No. 2:23-cv-19 (N.D. Tex.), ECF No. 59; *Second Amend. Found. v. ATF*, No. 3:21-cv-116 (N.D. Tex.), ECF No. 62; *Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex.), ECF No. 51; *Watterson v. ATF*, No. 4:23-cv-80 (E.D. Tex.), ECF No. 37.

the issues can percolate among the courts." (citation omitted)).

Plaintiffs' arguments to the contrary are unpersuasive. *First*, plaintiffs conflate this Court's equitable authority to issue a preliminary injunction with the authority granted under 5 U.S.C. § 706 to "set aside agency action." Pls.' Br. at 16–19. Plaintiffs cite no case for the proposition that the scope of authority under § 706 alters traditional equitable limitations on a district court's remedial authority. And in fact, contrary to what plaintiffs argue, Pls.' Br. at 16–19, the appropriate final remedy for an APA violation in this instance would be remand without vacatur. *See Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389–90 (5th Cir. 2021) ("Remand, not vacatur, is generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so."). Indeed, vacatur would be especially inappropriate here, as it would return the regulated community to a regime without generally applicable guidelines, the absence of which would risk creating confusion among regulated parties. *Texas v. United States*, 50 F.4th 498, 530 (5th Cir. 2022) (explaining that courts must consider the "disruptive consequences" of vacatur). So because vacatur would not be the appropriate remedy in this case, plaintiffs' request for a preliminary injunction should be denied in any event.

Relatedly, plaintiffs' repeated invocations of the authority under 5 U.S.C. § 705 "to preserve status or rights pending conclusion of the review proceedings," Pls.' Br. at 15–19, are beside the point, because they did not seek such relief in their preliminary-injunction motion, *see* Pls.' Mot. for Prelim. Inj. or, in the Alternative, for Postponement of the Effective Date of the Final Rule, ECF No. 33 (requesting a preliminary injunction or, alternatively, an order postponing the Rule's effective date). And in any event, the Fifth Circuit remanded this matter to the Court to determine whether plaintiffs were entitled to a preliminary injunction, not statutory relief under § 705. *Mock*, 75 F.4th at 586–88.

*And second*, plaintiffs suggest that a nationwide preliminary injunction is necessary to protect Maxim from alleged economic injuries stemming from current market demand for stabilizing braces

and brace-equipped pistols. Pls.' Br. at 20–21. As explained, *see supra* pp. 4–5, there is no indication that a preliminary injunction of any scope would prevent the alleged harms to Maxim's business. Regardless, plaintiffs offer no persuasive reason why this Court should grant relief to non-parties that will never purchase a product from or engage in business with Maxim. Courts are well equipped to draw reasonably detailed preliminary-injunction orders that protect a plaintiff from irreparable harm without having to issue an unnecessary and ill-fitting injunction that exceeds its constitutional and equitable authority. *See, e.g., Georgia*, 46 F.4th at 1304–08 (reversing the issuance of a nationwide preliminary injunction, and holding that a court "must" consider whether it "can offer complete relief" to a plaintiff in a "federal regulatory challenge[] without issuing a nationwide injunction").

As a final matter, plaintiffs ask the Court to preliminary enjoin the Rule's enforcement against all "active members" of the Firearms Policy Coalition. Pls.' Br. at 3, 15. But any preliminary relief should be limited to members identified in district court and who have agreed to be bound by the judgment. Such a restriction would promote the longstanding equitable principle that a party has one opportunity for relief and that the effect of any judgment should be bidirectional. *Cf. Arizona*, 40 F.4th at 395–98 (Sutton, C.J., concurring) (explaining the equitable and historical problems with "asymmetric" suits). And this principle is particularly relevant where, as here, the only identified members of an associational plaintiff are themselves plaintiffs in the same lawsuit. *Cf. Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) (holding that an associational plaintiff "lacks associational standing to sue on behalf of unnamed members" when it fails to identify any members with standing "[o]ther than" fellow "named plaintiffs").

## CONCLUSION

For these reasons, the Court should deny plaintiffs' motion for a preliminary injunction.

Dated: September 1, 2023                  Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN (MT Bar No. 55816869)
MICHAEL DREZNER (VA Bar No. 83836)
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On September 1, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice