**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| WILLIAM T. MOCK, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*,<br><br>*Defendants*. | Civil Action No. 4:23-cv-00095-O |

**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 2

1. Plaintiffs Have Suffered Significant, Ongoing Irreparable Harm That Will Continue Absent Injunctive Relief Or A Stay Of The Final Rule ........ 2

2. The Balance Of Equities Favors Relief From The Final Rule's Enforcement ........ 6

3. The Opposition Provides No Basis For Relief That Leaves The Final Rule Partially Intact ........ 8

CERTIFICATE OF SERVICE ........ 12

## INTRODUCTION

Defendants' supplemental brief almost entirely ignores the evidence Plaintiffs submitted to demonstrate why they are entitled to preliminary relief from the Final Rule. Defendants' cynical and off-base legal arguments do not suffice to overcome Plaintiffs' showing.

It is worth starting by noting the Court's choice of remedies is not limited to injunctive relief: A stay of the Final Rule's application under 5 U.S.C. § 705 may be the better course, as just demonstrated in *Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2023 WL 5266026, at *28 (5th Cir. Aug. 16, 2023).[1] Plaintiffs in *Alliance* moved for a preliminary injunction, but the district court chose the "less drastic" remedy of staying the challenged FDA actions under § 705. *Id*. at *30 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). The Fifth Circuit affirmed: "[C]onsider the nature of a 'stay' under § 705. In the same way that a preliminary injunction is the temporary form of a permanent injunction, a stay is the temporary form of a vacatur." *Id*. at *30. It further explained that "[u]pon a successful APA claim, vacatur effectively rescinds the unlawful agency action. Keeping with the preliminary-permanent injunction analogy, a stay temporarily voids the challenged authority." *Id*. (citing *Data Mktg. P'ship, LP v. U.S. Dep't of Lab*., 45 F.4th 846, 859 (5th Cir. 2022)). Moreover, a stay of the regulation, like vacatur, would obviate the need to decide how broadly to extend the injunction, since a stay would operate against the rule itself and therefore eliminate the ATF's authority to enforce it at all. *See DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 n.7 (2020).

[1] Prior to filing the Notice of Supplemental Authority regarding the *Alliance* case, Plaintiffs' counsel advised Defendants that Plaintiffs would rely on *Alliance* in this reply, including a summary of Plaintiffs' planned treatment of the case. Defendants did not oppose the Notice and chose not to address the case in their opposition.

Regardless of the form of remedy, Plaintiffs have shown why the Final Rule should not be enforced during this litigation. *Alliance*, at *19 (preliminary injunction and § 705 standards align).

## ARGUMENT

### 1. Plaintiffs Have Suffered Significant, Ongoing Irreparable Harm That Will Continue Absent Injunctive Relief Or A Stay Of The Final Rule.

Plaintiffs established irreparable harm under two independent lines of authority. First, Maxim Defense has suffered, and will continue to suffer, "substantial financial injury" that "threatens the very existence of [its] business." *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021) (quoting *Texas v. EPA*, 829 F.3d 405, 433, 434 (5th Cir. 2016)). This harm is compounded because Defendants' sovereign immunity prevents Maxim Defense from recovering monetary damages for the Final Rule's devastating financial impact. *See id.* Plaintiffs Mock and Lewis have detailed the burden imposed by the Final Rule, including the sort of nonrecoverable compliance costs that "almost always" constitutes "irreparable harm" in this context. *Texas v. EPA*, 829 F.3d at 433 (citation omitted). And all three are representative of Firearms Policy Coalition's ("FPC") many members across the country.

***Maxim Defense.*** Defendants first characterize Maxim Defense's significant financial injury as a "past harm." Opp. at 3. But Maxim Defense has submitted multiple declarations substantiating the Final Rule's *continuing* impact on its business, and the company's experience is corroborated by other firearms industry members. Fourth Dahl Decl., ¶¶ 6–13; Clark Decl., ¶¶ 5–11; Irslinger Decl., ¶¶ 4–7; *cf. Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (equitable relief is appropriate if a plaintiff demonstrates "continuing harm"). This is even more significant given that Maxim Defense has continued to demonstrate this ongoing harm through the life of this case, dating back to February 2023. *Amici* have likewise shown the significant, ongoing impact on the stabilizing brace industry. ECF No. 73-1, Br. of Palmetto State

Armory, at 6–7. Defendants' suggestion that Maxim Defense's harm is only speculative (Opp. at 3–4) similarly cannot be squared with the evidence confirming the Final Rule's real and ongoing harm to the market for stabilizing braces and braced pistols. Defendants' authority merely confirms the general principle that a plaintiff must establish harm with sufficient detail and certainty to warrant a preliminary injunction.[2] Plaintiffs have provided such concrete evidence.

Defendants next argue that a preliminary injunction would be ineffectual because ATF stands behind its interpretation of the NFA and, the argument goes, consumers may still choose not to purchase stabilizing braces or braced pistols. Opp. at 4-5. Defendants' cases do not require Plaintiffs to show that an injunction will eliminate their harm entirely; rather, they stand for the general proposition that a plaintiff must show that an injunction will provide *some* relief from irreparable harm. *E.g.*, *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925 (N.D. Cal. 2019) ("[p]laintiffs must demonstrate that preliminary injunctive relief will prevent some irreparable injury that is likely to occur"); *Oakley v. Devos*, 2020 WL 3268661, at *16 (N.D. Cal. June 17, 2020) (similarly observing that a plaintiff "must show that the threatened harm would not occur if an injunction is granted"); *Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*, 284 F. Supp. 3d 985, 994 (D. Neb. 2018) (denying an injunction where plaintiff presented "no reason" that it "would address any [of plaintiff's claimed] injury"). Plaintiffs have met that burden.

---

[2] Defendants' citations provide a sharp contrast to this case. In *Mkt. Synergy Grp., Inc. v. United States Dep't of Lab.*, 2016 WL 6948061, at *30 (D. Kan. Nov. 28, 2016), the district court faulted plaintiffs for "assum[ing] that insurance companies will respond to . . . new regulations in a particular fashion." Here, Plaintiffs have documented how the regulated community has, *in fact*, responded to the Final Rule. In *Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008), the plaintiff's "conclusory affidavit" failed to provide evidence (such as sales information or market data) showing the financial harms it claimed. Plaintiffs have provided that data here. And in *Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d 38, 77–79 (D.D.C. 2013), a group of meat packers and processors "speculate[d]" about a labeling rule's impact but provided insufficient detail about the rule's "economic effect" on plaintiffs' "bottom line" and whether it would "threaten [their] very existence." Maxim Defense has provided that evidence here.

Defendants' claim that "there's no reason to think" an injunction will affect the market likewise ignores the unrefuted evidence. Opp. at 4. That evidence establishes that an injunction here would, in fact, provide relief to Maxim Defense and to its downstream customers impacted by the Final Rule. Maxim Defense detailed how a universal injunction would reopen the market for its products and confirms that its customers will resume ordering if the Final Rule is enjoined or stayed. Fourth Dahl Decl., ¶¶ 8–9, 14–17. This is corroborated by other retailers that work with Maxim Defense, who affirmed that they would resume carrying the company's products. Clark Decl., ¶¶ 10–11; Irslinger Decl., ¶ 8. And *Amici* have submitted multiple declarations verifying the Final Rule's impact on the marketplace and detailing why a universal injunction is necessary. Defendants have provided no contrary evidence. In short, the record provides more than enough "reason to think" that an injunction will address the harms caused by the Final Rule.

Finally, Defendants claim that Maxim Defense has not established irreparable harm because it has suffered "indirect harm" caused by consumer behavior rather than the Final Rule itself. Opp. at 5–6. But the nature of the Final Rule is that it imposes a direct burden not just upon manufacturers such as Maxim Defense, but also on the consumer marketplace for stabilizing braces and braced pistols: consumers become felons if they purchase or continue to possess braced pistols without registering them under the NFA. This Court has recognized that this sort of economic loss is irreparable. *See, e.g.*, *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, No. 4:22-CV-00691-O, 2023 WL 2347438, at *2, *5 (N.D. Tex. Mar. 2, 2023); *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 583–84 (N.D. Tex. 2022). Defendants' cases arose in very different settings—none involved similar rules that made consumers overnight felons for possessing or purchasing products—and repeat the general rule that *speculation* about market behavior does not suffice. *See, e.g.*, *Mkt. Synergy Grp.*, 2016 WL 6948061, at *30 ("[s]peculation about how third parties will

react to the new rule is insufficient"); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d at 80–81 ("predictions" about how retail consumers and customers "might react" to new meat labeling requirements insufficient); *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 37 (D.D.C. 2014) (safari outfitters could not show that ban on importing elephant trophies would actually cause customers to cancel trips, so it was not certain they would lose revenue). Here, there is no dispute about the Final Rule's direct and significant impact on Maxim Defense's business; to the extent that harm is attributable to third-party conduct, the evidence ties that consumer behavior to the Final Rule, such that an injunction would provide relief.

***Individual Plaintiffs.*** Plaintiffs Mock and Lewis established irreparable harm based on nonrecoverable costs of complying with the Final Rule, *Texas v. EPA*, 829 F.3d at 433–34, as well as their choice to comply with the regulation "or else." *VanDerStok v. Garland*, 633 F.Supp.3d 847, 857 (N.D. Tex. 2022). Their declarations established the Final Rule's burden on their activities and detailed the costs of compliance. *See* ECF No. 36-4, Mock Decl., ¶¶ 5–11; ECF No. 36-3, Lewis Decl., ¶¶ 5–10. Defendants' claim that Plaintiffs failed to sufficiently document their costs, Opp. at 6–7, is simply incorrect. The opposition cites two out-of-circuit cases to claim that "compliance costs are typically insufficient to constitute irreparable harm," Opp. at 6, but the Fifth Circuit has reiterated time and again that "nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023); *id.* at 597 & n.4 (collecting cases). And Defendants know better—this Court rejected a similar argument in *VanDerStok v. Garland*, 625 F. Supp. at 584, where it explained that "[t]he Fifth Circuit has settled these principles."

Finally, Defendants claim that the individuals' costs of compliance and potential criminal liability are actually imposed by Congress (through the NFA), so they can't blame the Final Rule

for their harm. Opp. at 6–7. This cannot be taken seriously: After all, it is the Final Rule's *redefinition* of short-barreled rifle that subjects the individual plaintiffs to NFA regulation.

***Firearms Policy Coalition.*** The opposition's only response to the showing of irreparable harm to Plaintiff FPC is a footnote claiming that it relies exclusively on harm to Mock and Lewis. As the Combs Declaration shows (ECF 36-1, ¶¶ 9–12), this is wrong. More, it ignores FPC's corporate members, and that several *Amici* in this case, and at the Fifth Circuit, are FPC members.

Each of the Plaintiffs has established irreparable harm justifying a preliminary injunction.

**2. The Balance Of Equities Favors Relief From The Final Rule's Enforcement.**

Defendants advance three arguments to claim that the third and fourth equitable factors weigh against a preliminary injunction. None is persuasive.

First, Defendants claim that a preliminary injunction would undermine regulatory clarity and consistency. This argument wrongly presumes the legality of the Final Rule in the first place. "[N]either [the government] nor the public has any interest in enforcing a regulation that violates federal law." *Alliance*, 2023 WL 5266026, at *28. Because this aspect of the interest-balancing analysis "collapses with the merits," "[i]t follows that [Defendants] and the public will not be injured by an order staying [the agency's] likely unlawful actions." *Id.* Indeed, the government's interest in providing "greater regulatory clarity and consistency" can be achieved by avoiding the piecemeal enforcement necessarily associated with a limited injunction. Supp. Br. 20–21; *see Feds for Med. Freedom v. Biden*, 63 F.4th 366, 388 (5th Cir. 2023) (en banc) ("piecemeal enforcement" would "undermine[] rather than support[] the Government's purported interest in" regulatory consistency). In fact, the panel here referred to the "need for consistent application of the law" in noting that a nationwide injunction may be appropriate here, since it is "uncertain how many persons are now subject to these injunctions [in other challenges] or how the ATF would enforce

the Final Rule against non-enjoined parties." *Mock v. Garland*, 75 F.4th 563, 587–88 (5th Cir. 2023). Defendants conspicuously fail to address the Fifth Circuit's concern on these points.

Second, Defendants argue that the Final Rule furthers general interests in public safety. Opp. at 8–9. This claim overlooks the fact that preliminary relief here would maintain the preexisting status quo—extending over a decade—where ATF maintained that stabilizing braces and braced pistols were not subject to regulation under the NFA. As this Court recognized in *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, 639 F. Supp. 3d 722, 730 (2022), "any injury to the Government's general interest in law enforcement and public safety is appreciably undermined by [a] preliminary determination that the Final Rule is likely unlawful." And "[j]ust as the Government has an interest in the law's enforcement, so too does the public have an equally compelling interest in enforcement of the laws that govern its governing authorities." *Id.* at 731. Defendants cannot avoid the consequences of violating the APA simply by appealing to general notions of public safety.

Finally, Defendants contend that a preliminary injunction "would impinge on ATF's ability to effectuate . . . regulations on short-barreled rifles that Congress imposed through the enactment of the NFA and the GCA." Opp. at 9. This, again, presumes the legality of the Final Rule and ignores the import of the Fifth Circuit's holding that Plaintiffs are likely to succeed on the merits of their APA challenge. "[T]here is generally no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (citation omitted). An injunction would not "interfere" with ATF's ability to carry out statutory directives but would instead serve the public interest by holding the agency to its statutory obligations. "It is of highest public importance that federal agencies follow the law," *R.J. Reynolds Vapor Co. v. Food & Drug Admin.*, 65 F.4th 182, 195 (5th Cir. 2023), and "[t]he public interest is served when administrative

agencies comply with their obligations under the APA." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009).

**3. The Opposition Provides No Basis For Relief That Leaves The Final Rule Partially Intact.**

The Fifth Circuit here acknowledged that "in certain circumstances, nationwide relief is appropriate and may be necessary for the benefit of all parties." *Mock*, 75 F.4th at 587. Plaintiffs' supplemental brief and evidence aligned with the factors the panel cited as appropriate reasons for nationwide relief: Maxim Defense's nationwide operation; the involvement of many third parties in the complex firearms distribution system; the confusion gripping customers and downstream business partners; and the nationwide scope of FPC's membership base. *See Mock*, 75 F.4th at 587. Defendants offer three arguments, none of which justify more limited relief.

**a.** Defendants first claim as a legal matter that Plaintiffs inappropriately "conflate this Court's equitable authority to issue a preliminary injunction with the authority granted under 5 U.S.C. § 706 to 'set aside agency action.'" Opp. at 12. As shown above, in *Alliance for Hippocratic Medicine*, 2023 WL 5266026, *supra*, the Fifth Circuit engaged in the very sort of reasoning that Defendants dismiss. The district court in *Alliance* granted the plaintiffs' motion for a preliminary injunction by issuing a stay of the challenged FDA actions under § 705. *Id*. at *6. The Fifth Circuit affirmed, noting that "a stay is the temporary form of a vacatur." *Id*. at *30.[3]

Defendants next argue that the preliminary injunction should be denied in any form—nationwide or otherwise—because it believes "the appropriate final remedy for an APA violation in this instance would be remand without vacatur." Opp. at 12. Defendants ignore that, in the Fifth

[3] The *Alliance* case also dispenses with Defendants' argument that a § 705 stay is off-limits since Plaintiffs did not "seek such relief" in their motion. Opp. at 12. Plaintiffs in *Alliance* likewise sought a preliminary injunction, but the district court exercised its authority to enter the "less drastic" relief of a stay. 2023 WL 2825871, *31–32 (N.D. Texas, April 7, 2023). Defendants are mistaken in any event, as Plaintiffs did rely on § 705 in their brief. *See, e.g.*, ECF No. 36 at 11, 41.

Circuit, "[t]he default rule is that vacatur is the appropriate remedy" for an APA violation. *Data Mktg.*, 45 F.4th at 859; *see also Cargill, v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) ("[V]acatur of an agency action is the default rule in this Circuit."). Defendants cite the statement in *Tex. Ass'n of Mfrs. v U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021), that a remand can be "appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." Here, however, there is no way for ATF to "substantiate its decision" when, as here, the Final Rule is not a "logical outgrowth" of the Proposed Rule. Indeed, the *Mock* panel observed that "[i]f the logical-outgrowth requirement is not satisfied, a court must set aside the agency action found to be 'without observance of procedure required by law.'" 75 F.4th at 583 (citing 5 U.S.C. § 706(2)(D)). The opportunity to "substantiate" a decision might be appropriate when, for example and in stark contrast to this case, the APA violation consists of a mere failure to provide an adequate explanation for a final rule, as in *Central and South West Services, Inc. v. U.S. E.P.A.*, 220 F.3d 683, 692 (5th Cir. 2000). There will be nothing for ATF to substantiate here.

**b.** As a factual matter, Defendants dispute that a universal injunction "is necessary to protect Maxim from *alleged* economic injuries stemming from current market demand" and claim again "there is no indication that a preliminary injunction of any scope would prevent the *alleged* harm to Maxim's business." Opp. at 12–13 (emphasis added). Maxim Defense no longer simply alleges that its business has suffered as a result of the Final Rule; it has *proven* that the Final Rule has devastated its business with evidence that Defendants cannot refute. Maxim Defense has likewise submitted evidence from its COO and major retailers in Illinois and Utah explaining, among other things, how the market for these products will not unlock until a court clarifies that the Final Rule cannot be enforced. *Amici* confirm this. Pretending that this evidence doesn't exist

is not a viable strategy for Defendants. Broad, nationwide relief, whether styled as a stay of the Final Rule or an injunction, is necessary to provide Maxim Defense with "complete relief." *Mock*, 75 F.4th at 587 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

**c.** Defendants argue that an injunction should extend only to FPC's members who are named plaintiffs in this case, and not to its membership as a whole. Opp. at 13. "Associations may assert the standing of their own members." *Texas Ass'n of Manufacturers v. United States Consumer Prod. Safety Comm'n*, 989 F.3d 368, 377 (5th Cir. 2021). And because "'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members," *United Food & Commercial Workers Union v Brown Group. Inc.*, 517 U.S. 544, 546 (1996) (citation omitted), courts properly issue preliminary injunctive relief that extends to an association's membership. *E.g.*, *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092, 1117 (W.D. Tex. 2021) (enjoining enforcement of state law against plaintiff organizations "and their members"); *accord Alliance*, 2023 WL 5266026, at *7 (organizations had standing to seek a preliminary injunction based on their members' injury). Finally, the *Mock* panel observed that "the en banc court [has] permitted a nationwide injunction because the organization's membership numbered thousands, and the members were scattered nationwide." *Mock*, 75 F.4th at 587 (citing *Feds for Medical Freedom*, 63 F.4th at 387–89).

The Court should order nationwide relief. If it does not, the Fifth Circuit's injunction should be maintained to prevent enforcement of the Final Rule against the Individual Plaintiffs and their family members; Maxim Defense and all of its downstream customers (including all direct consumer purchasers and all intermediary distributors, dealers, retailers, and OEM purchasers of Maxim Defense, as well as their customers); and all of FPC's members.

Dated: September 8, 2023

Respectfully submitted,

/s/ Bradley A. Benbrook
Bradley A. Benbrook* (CA Bar No. 177786)
Stephen M. Duvernay* (CA Bar No. 250957)
BENBROOK LAW GROUP, P.C.
701 University Avenue, Suite 106
Sacramento, California 95825
Telephone: (916) 447-4900
Telecopy: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

R. Brent Cooper (TX Bar No. 04783250)
Benjamin D. Passey (TX Bar No. 24125681)
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540
brent.cooper@cooperscully.com
ben.passey@cooperscully.com

Cody J. Wisniewski* (CO Bar No. 50415)
FPC ACTION FOUNDATION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (916) 378-5785
Telecopy: (916) 476-2392
cwi@fpchq.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2023, a true and correct copy of the foregoing document and all supporting documents filed concurrently therewith were served via the Court's CM/ECF system to all counsel of record.

/s/ Bradley A. Benbrook
Bradley A. Benbrook