# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| WILLIAM T. MOCK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 4:23-cv-00095-O |
| MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | |
| Defendants. | |

---

## BRIEF FOR *AMICI CURIAE* PALMETTO STATE ARMORY, LLC, FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., AND NST GLOBAL, LLC (D/B/A SB TACTICAL) IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

John Leslie (TX Bar. No. 12231400)
**JOHN LESLIE PLLC**
1805 West Park Row Drive, Suite C
Arlington, TX 76013-3584
Tel: 817.405.7700
Fax: 817.505.1292
arlingtonlaw@aol.com

*Local Counsel*

Stephen J. Obermeier* (DC Bar No. 979667)
Michael D. Faucette* (DC Bar No. 1046222)
Jeremy J. Broggi* (DC Bar No. 1029427)
Boyd Garriott* (DC Bar No. 1617468)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

*Counsel for Palmetto State Armory, Firearms Regulatory Accountability Coalition, and SB Tactical*

November 21, 2023

*\*Admitted pro hac vice*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTEREST OF *AMICI CURIAE* .....................................................................................1

INTRODUCTION AND SUMMARY ...............................................................................2

ARGUMENT .....................................................................................................................3

      I.       The Rule Exceeds ATF's Statutory Authority........................................................3

             A.      The Rule Misinterprets "Firearm" And "Short-Barreled Rifle." ............................................................................................................4

             B.      The Rule Misinterprets "Designed" and "Intended." ................................7

             C.      The Rule Violates Lenity. ........................................................................10

      II.     The Factors Adopted By The Rule Are Otherwise Unlawful..............................12

             A.      The Factors Are Holistically Arbitrary. ..................................................12

             B.      The Factors Are Individually Arbitrary. ..................................................15

             C.      ATF's Failure To Consider Costs And Reliance Interests Is Arbitrary. .................................................................................................21

             D.      ATF's Adjudications Confirm The Rule Is Arbitrary...............................23

      III.    Vacatur Is Required. .............................................................................................24

CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ANR Storage Co. v. FERC*,
 904 F.3d 1020 (D.C. Cir. 2018) ....................................................................17, 21

*Biden v. Nebraska*,
 143 S. Ct. 2355 (2023) ............................................................................................6

*Bittner v. United States*,
 143 S. Ct. 713 (2023) ............................................................................................12

*Cargill v. Garland*,
 57 F.4th 447 (5th Cir. 2023) ...........................................................10, 11, 12, 24

*Cohen v. California*,
 403 U.S. 15 (1971) ...............................................................................................20

*Constellation Mystic Power, LLC v. FERC*,
 45 F.4th 1028 (D.C. Cir. 2022) .....................................................................15, 17

*DHS v. Regents of the Univ. of Cal.*,
 140 S. Ct. 1891 (2020) .........................................................................................22

*Franciscan All., Inc. v. Becerra*,
 47 F.4th 368 (5th Cir. 2022) ...............................................................................24

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu*
 *Stainless USA, LLC*,
 140 S. Ct. 1637 (2020) ...........................................................................................5

*Griffin v. HM Florida-ORL*,
 601 U. S. ____ (2023) (slip op.) .........................................................................24

*Guedes v. ATF*,
 140 S. Ct. 789 (2020) ...........................................................................................11

*Hardin v. ATF*,
 65 F.4th 895 (6th Cir. 2023) ...................................................................10, 11, 12

*Henson v. Santander Consumer USA Inc.*,
 582 U.S. 79 (2017) .................................................................................................5

*Innovator Enterprises, Inc. v. Jones*,
 28 F. Supp. 3d 14 (D.D.C. 2014) ...............................................................9, 18, 19

*LeMoyne-Owen Coll. v. NLRB,*
    357 F.3d 55 (D.C. Cir. 2004) ...........................................................................................13, 14

*Lomont v. O'Neill,*
    285 F.3d 9 (D.C. Cir. 2002) .......................................................................................................4

*Mexican Gulf Fishing Co. v. United States Dep't of Com.,*
    60 F.4th 956 (5th Cir. 2023) ....................................................................................................21

*Michigan v. EPA,*
    576 U.S. 743 (2015)..................................................................................................................21

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) ............................................................................................ *passim*

*Mock v. Garland,*
    No. 4:23-CV-00095-O, 2023 WL 6457920 (N.D. Tex. Oct. 2, 2023) .......................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983)....................................................................................................................15

*Owner-Operator Indep. Drivers Ass'n v. FMCSA,*
    494 F.3d 188 (D.C. Cir. 2007) .................................................................................................21

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012)....................................................................................................................6

*Record Head Corp. v. Sachen,*
    682 F.2d 672 (7th Cir. 1982) .........................................................................................9, 10, 13

*Sekhar v. United States,*
    570 U.S. 729 (2013)..................................................................................................................11

*Spirit Airlines, Inc. v. FAA,*
    997 F.3d 1247 (D.C. Cir. 2021) ...............................................................................................17

*Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of Louisiana v. Treen,*
    681 F.2d 378 (5th Cir. 1982) ...................................................................................................10

*Tripoli Rocketry Association v. ATF,*
    437 F.3d 75 (D.C. Cir. 2006) ........................................................................................16, 18, 19

*U.S. Postal Serv. v. Postal Regul. Comm'n,*
    785 F.3d 740 (D.C. Cir. 2015) .................................................................................................13

*United States v. Biro,*
    143 F.3d 1421 (11th Cir. 1998) ...............................................................................................10

*United States v. Fix*,
  4 F. App'x 324 (9th Cir. 2001) ..................................................................5

*United States v. Lim*,
  444 F.3d 910 (7th Cir. 2006) ...................................................................16

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010)..........................................................................6

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)...................................................................................13

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992).............................................................................7, 8, 9

*VanDerStok v. Garland*,
  No. 23-10718, 2023 WL 7403413 (5th Cir. Nov. 9, 2023) ............................ *passim*

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982).............................................................................7, 8, 9

*W. Ref. SW., Inc. v. FERC*,
  636 F.3d 719 (5th Cir. 2011) .......................................................................6

*Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*,
  16 F.4th 1130 (5th Cir. 2021) ....................................................................23

*Ysleta Del Sur Pueblo v. Texas*,
  142 S. Ct. 1929 (2022)................................................................................6

**Statutes**

18 U.S.C. § 921..............................................................................................4, 7

18 U.S.C. § 926...............................................................................................21

26 U.S.C. § 5845.......................................................................................4, 5, 7

26 U.S.C. § 7805.............................................................................................21

**Executive Materials**

ATF, Commercially Available Firearms Equipped with a 'Stabilizing Brace' that
  are Short-Barreled Rifles, https://tinyurl.com/2p95jn8r ...........................14

ATF, Common Weapon Platforms With Attached 'Stabilizing Brace' Designs that
  are Short-Barreled Rifles, https://tinyurl.com/3ut7vm92 ..........................14

iv

Factoring Criteria for Firearms with Attached "Stabilizing Braces," Final Rule, 88 Fed. Reg. 6,478 (Jan. 31, 2023) ................................................................................ *passim*

Factoring Criteria for Firearms with Attached "Stabilizing Braces," Notice of Proposed Rulemaking, 86 Fed. Reg. 30,826 (June 10, 2021) ................................. 8, 11, 20, 23

Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis (Jan. 2023) https://tinyurl.com/3t3d3ewy ................................................................. 2, 22

Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298 (Apr. 8, 2021) ......................................................................................................... 2, 6

**Other Authorities**

Comments of Richard Cicero, Docket No. ATF 2021R-08 (filed Sep. 8, 2021), https://tinyurl.com/526myr8v ................................................................................. 21

Comments of SB Tactical and FRAC at 10-11, Docket No. ATF 2021R-08 (filed Sep. 8, 2021), https://tinyurl.com/ybarazdj ............................................................. 21

U.S. Patent No. 8,869,444 B2 (issued Oct. 28, 2014) ................................................. 8

United States Br. 5, *United States v. Miller*, 307 U.S. 174 (1939), 1939 WL 48353 .................... 4

## INTEREST OF *AMICI CURIAE*[1]

**Palmetto State Armory, LLC** ("PSA") designs and manufactures guns, parts, and accessories—including pistol stabilizing braces—for use by civilians and law enforcement.  PSA has an interest in the outcome of this litigation because the validity of the rule at issue may determine whether PSA can continue to sell stabilizing braces and related products.

**NST Global, LLC (d/b/a SB Tactical)** ("SB Tactical") invented the original pistol stabilizing brace with the goal of helping disabled combat veterans safely and accurately fire guns.  SB Tactical designs and manufactures stabilizing braces and has sold millions of braces—both directly to consumers and through its extensive network of retailers and other businesses.  SB Tactical has an interest in the outcome of this litigation because the validity of the rule may determine whether SB Tactical can stay in business.

**The Firearms Regulatory Accountability Coalition, Inc.** ("FRAC") is the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States.  An important part of FRAC's mission is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.

In addition to previously filing a brief as an *amicus* before this Court, ECF No. 73, FRAC is leading a coalition of twenty-five states, companies, and individuals who are challenging in another jurisdiction the same rule at issue in this case.  *See FRAC v. Garland*, No. 1:23-cv-0024-DLH-CRH (D. N.D. Feb. 9, 2023); *FRAC v. Garland*, No. 23-3220 (8th Cir. Oct. 6, 2023).  FRAC

---

[1]  Counsel for *amici curiae* state that no party's counsel authored this brief in whole or in part, and that no person other than *amici curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.  All parties have consented to the filing of this brief.

has an interest in the outcome of this case because the relief ordered here may determine whether FRAC's members can continue to sell stabilizing braces and brace-equipped pistols.

## INTRODUCTION AND SUMMARY

For more than a decade, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") authorized the public to use pistol stabilizing braces, a popular firearms accessory, without federal regulation.  ATF repeatedly issued letter rulings assuring manufacturers and the public that a stabilizing brace does not alter a gun's classification as a pistol under federal law. Relying on those assurances, millions of Americans have for years lawfully purchased stabilizing braces and pistols equipped with stabilizing braces from authorized manufacturers—all with ATF's full knowledge and express approval.

Then everything changed.  Frustrated with perceived congressional inaction, President Biden ordered ATF to abandon its longstanding practice and "to treat pistols modified with stabilizing braces" as "subject to the National Firearms Act."  Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298, at 3 (Apr. 8, 2021).  ATF complied by promulgating the Rule here, which purports to provide "factoring criteria" to "clarify" how ATF will determine whether a gun is subject to enhanced regulation.  Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule").

In actuality, the Rule guarantees ATF will reach the predetermined result: a vast new regulatory scheme that restricts braced pistols by recharacterizing them as short-barreled rifles. According to ATF's own estimates, the Rule will cover 99% of braced pistols (while offering no examples of braced pistols that will escape regulation), eliminate 750,000 firearms, cost private parties $5 billion, and shutter four-of-five brace manufacturers.  Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis, at 21, 56, 62-67, 76-77 (Jan. 2023) ("Regulatory

Analysis"), https://tinyurl.com/3t3d3ewy.  These predictions have proven to be accurate.  As this Court found, the market for braces "has evaporated," thereby subjecting commercial plaintiffs and *amici* to crushing economic damage and exposing the public to criminal liability for possessing one of the most common gun accessories in the United States.  *Mock v. Garland*, No. 4:23-CV-00095-O, 2023 WL 6457920, at *6-*16 (N.D. Tex. Oct. 2, 2023).

That these drastic consequences do not result from any legislative change should give the Court serious pause.  Already, the Fifth Circuit has held that the Rule "violates the [Administrative Procedure Act]," *Mock v. Garland*, 75 F.4th 563, 578 (5th Cir. 2023), which it certainly does.  The Rule also violates the National Firearms Act ("NFA") and the Gun Control Act ("GCA"), neither of which purports to authorize the actions ATF has taken.  This Court should grant Plaintiffs' motion for summary judgment and vacate the Rule.

## ARGUMENT

The Fifth Circuit has already correctly held that "the Final Rule was not a logical outgrowth of the Proposed Rule, and the monumental error was prejudicial."  *Mock*, 75 F.4th at 586.  For this reason alone, the Rule must be vacated.  But, as Plaintiffs explain, the Rule is unlawful for additional reasons, too.  *Amici* here build on several of those additional reasons.

### I.    The Rule Exceeds ATF's Statutory Authority

The Rule exceeds ATF's statutory authority because it misinterprets the definitions of (i) "firearm" in the NFA and "short-barreled rifle" in the GCA, and (ii) "rifle" in both statutes.  Pls.' Br. In Support of their Mot. for Summ. J. at 17-22, ECF No. 100 ("MSJ").  Because the Rule lacks "clear congressional authorization," it must be set aside.  *VanDerStok v. Garland*, No. 23-10718, 2023 WL 7403413, at *6 (5th Cir. Nov. 9, 2023).

A.    The Rule Misinterprets "Firearm" And "Short-Barreled Rifle."

The Rule violates the NFA and GCA because it wrongly subjects braced pistols to the stringent regulations that Congress reserved for short-barreled rifles.  Congress enacted the NFA to regulate specific firearms favored by prohibition-era "gangster[s]"—"i.e., sawed-off shotguns, sawed-off rifles, and machine guns."  United States Br. 5, *United States v. Miller*, 307 U.S. 174 (1939), 1939 WL 48353, at *5; *see Lomont v. O'Neill*, 285 F.3d 9, 11-12 (D.C. Cir. 2002).  But it left pistols untouched.  And when Congress enacted the GCA 30 years later to expand regulation of short-barreled rifles, that statute defined handguns but did not add any extra restrictions on them.

Two NFA subsections address short-barreled rifles.  Subsection 5845(a)(4) concerns the specific evil of sawed-off rifles, designating as an NFA "firearm" "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length."  26 U.S.C. § 5845(a)(4).  Because the NFA defines "ma[d]e" to exclude production by a "qualified" manufacturer, *id.* § 5845(i), subsection (a)(4) covers only rifles shortened after initial production.

Subsection (a)(3) reaches initial production.  It regulates "a rifle having a barrel or barrels of less than 16 inches in length."  *Id.* § 5845(a)(3).  Because subsection (a)(3) omits "made" or "modified"—terms present only in subsection (a)(4)—this provision applies to short-barreled rifles produced by a qualified manufacturer.  Subsection (a)(3) thus ensures the NFA treats commercially produced short-barreled rifles the same as subsection (a)(4) treats sawed-off rifles.[2]

---

[2]  These NFA distinctions are reinforced by the GCA, which similarly defines a "short-barreled rifle" as both "a rifle having one or more barrels less than sixteen inches in length" and as "any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches."  18 U.S.C. § 921(a)(8).

4

Neither subsection purports to regulate pistols, accessories, or stabilizing braces. Subsection (e) confirms the omission is intentional, expressly excluding "pistols" from the catch-all definition for an NFA "firearm."  26 U.S.C. § 5845(e); *see also Mock*, 75 F.4th at 570 ("the NFA specifically exempts 'a pistol or a revolver having a rifled bore' from its coverage").

The Rule imposes restraints that Congress deliberately did not.  ATF says a pistol becomes an NFA short-barreled rifle when a stabilizing brace is attached.  Rule, 88 Fed. Reg. at 6,480.  But that cannot be correct under subsection (a)(4) because that subsection addresses only "a weapon made from a rifle."  26 U.S.C. § 5845(a)(4).  The provision says nothing about a weapon made from a pistol, and "a matter not covered is to be treated as not covered."  *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020).

Nor can the Rule's interpretation be correct under subsection (a)(3).  Only subsection (a)(4) says "modified."  And only subsection (a)(4) says "made"—a term that expressly excludes "one qualified to engage in such business," 26 U.S.C. § 5845(i), and thus also refers only to modification.  Subsection (a)(3), by contrast, omits both terms.  As these "differences in language" must convey "differences in meaning," *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017), Congress's choice to omit "made" and "modified" from subsection (a)(3) must mean that the subsection does not address post-production additions of an accessory.  Rather, subsection (a)(3) covers only short-barreled rifles that are originally manufactured as such. *Cf. United States v. Fix*, 4 F. App'x 324, 326 (9th Cir. 2001) (holding 26 U.S.C. § 5845(e) "does not consider modifications of the weapon by the owner").

The Rule's failure to acknowledge the differences in language presents another related problem.  If ATF were correct that subsection (a)(3) regulates a weapon "made" or "modified" from a pistol or rifle even though that subsection omits these terms, subsection (a)(4) would be left

5

with no work to perform, its role subsumed by subsection (a)(3).  And because this interpretation would "violate the cardinal rule" that "effect shall be given to every clause and part of a statute," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up), it must be rejected, *see Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (rejecting interpretation that collapsed two statutory provisions).

The Rule also rejects the "purposes of the Act." *W. Ref. SW., Inc. v. FERC*, 636 F.3d 719, 727 (5th Cir. 2011); *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2378 (2023) (Barrett, J., concurring) ("Language takes meaning from its … historical and governmental contexts." (citation omitted)).  Congress believed that shortening a long gun "fosters its use in illicit activity" because it is more easily "concealed."  *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010); *accord* Rule, 88 Fed. Reg. at 6,499.  But the same is not true when a stabilizing brace is attached to a pistol because the gun becomes larger and thus harder to conceal.  Unlike a sawed-off rifle, which becomes *more* suitable for committing crimes than an unmodified rifle, a braced pistol becomes *less* suitable for committing crimes than an unmodified pistol.

In addition to being less concealable, a braced pistol is more accurate.  Rule, 88 Fed. Reg. at 6,557; *accord* Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298, at 3 ("pistols modified with stabilizing braces" are "a hell of a lot more accurate").  ATF views accuracy as more dangerous.  But the NFA's authors believed otherwise because a "sawed-off" weapon's "somewhat indiscriminate accuracy" made it "useful for only violence against another person."  *Marzzarella*, 614 F.3d at 95 (citation omitted).  The reverse is true of a braced pistol. "Rearward attachments, besides making a pistol less concealable, improve a pistol's stability, and thus a user's accuracy."  *Mock*, 75 F.4th at 588 (Willett, J., concurring).  "Accuracy, in turn,

promotes safety." *Ibid.* ATF's decision to regulate lengthened short guns is the opposite of Congress's decision to regulate shortened long guns.

B.   The Rule Misinterprets "Designed" and "Intended."

Under the NFA and GCA, a "rifle" is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). The Rule purports to clarify when a weapon is "designed" and "intended" for shoulder fire, but it commits fundamental errors with each term.

1.   *Designed*

The Rule misinterprets "designed" because it declines to consider evidence that a brace is designed to facilitate stabilizing support as opposed to shouldering. In ATF's estimation, "stabilizing support" for non-shoulder firing is "not relevant to determine whether a firearm is designed, made, and intended to be fired from the shoulder." Rule, 88 Fed. Reg. at 6,510; *see also id.* at 6,503 (asserting it is "incorrect to focus on whether a 'Stabilizing brace' can be used, in some circumstances, to support two-handed, non-shouldered fire.").

ATF is wrong. In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), the Supreme Court interpreted a statute prohibiting the sale of items "designed . . . for use with illegal cannabis or drugs." *Id.* at 491. The Court found it "plain" and "clear" that "designed" includes "an item that is principally used with illegal drugs" but not "items which are principally used for nondrug purposes." *Id.* at 501. Thus, the statute would cover a pipe "typically used to smoke marihuana" but not "ordinary pipes"; a "roach clip" but not "paper clips sold next to *Rolling Stone* magazine." *Id.* at 494, 501-02.

The Supreme Court has applied similar reasoning under the NFA. In *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992), the plurality explained that someone did not "make" a "firearm" by packaging components that could "be converted not only into a short-

7

barreled rifle, which is a regulated firearm, but also into a long-barreled rifle, which is not." *Id.* at 513. Because the "aggregation of parts" served a "useful purpose" other than "the assembly of a[n NFA] firearm," lenity required the conclusion that the parts had "not been 'made' into a short-barreled rifle for purposes of the NFA." *Id.* at 512-13, 517-18.

Applied here, both *Hoffman Estates* and *Thompson/Center Arms* stand for the same principle: ATF cannot read the term "designed" to exclude all evidence that a stabilizing brace is suitable for unregulated use as a brace. Just like Illinois could not overlook that a paperclip is "designed" for holding documents, ATF cannot criminalize braces by ignoring evidence they are "designed" for non-shouldered use. And just like ATF could not in *Thompson* overlook that the packaged parts could be assembled for an unregulated use, ATF cannot here willfully overlook evidence of design features that show a stabilizing brace likewise has an unregulated use.

ATF agreed in its 2021 Notice that "[s]tabilizing support is a vital characteristic because it provides evidence to evaluate the purported purpose of the attached device." Factoring Criteria for Firearms with Attached "Stabilizing Braces," Notice of Proposed Rulemaking, 86 Fed. Reg. 30,826, 30,832 (June 10, 2021). That interpretation was consistent with a decade of ATF rulings that assessed design by analyzing a device's effectiveness at "provid[ing] the shooter with additional support of a firearm." Rule, 88 Fed. Reg. at 6,479 (quoting 2012 classification). For example, ATF found probative "flaps" and a "strap" that "wrap[] around the shooter's forearm" because such "designs were clearly devised to secure the firearm to the shooter's forearm and were effective in doing so." Notice, 86 Fed. Reg. at 30,832; *accord* U.S. Patent No. 8,869,444 B2 (issued Oct. 28, 2014) (explaining intended design).

The absurd results that ATF's new interpretation would produce confirm it is wrong. Under the Rule, ATF will not even consider evidence that a stabilizing brace is effective at non-

shoulder firing.  Thus, if the objective design features established that an accessory was "the world's greatest" stabilizing brace—"100% effective at" stabilizing non-shoulder fire—ATF would ignore that evidence.  *See Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 25 (D.D.C. 2014) (rejecting similar ATF test for classifying silencers).  But that effectiveness is plainly "relevant."  *Contra* Rule, 88 Fed. Reg. at 6,510.  If a brace serves a "useful purpose," as an unshouldered brace, *Thompson/Ctr.*, 504 U.S. at 512-13, it suggests that the potential for shouldered fire is "incidental," Rule, 88 Fed. Reg. at 6,544, rather than a capability "designed by the manufacturer," *Hoffman*, 455 U.S. at 501.

By preemptively refusing to consider all evidence that a braced pistol is principally for unshouldered use, ATF misinterprets "designed."

## 2.   *Intended*

The Rule also misinterprets "intended."  The Rule requires ATF to determine a manufacturer's intent based on "marketing materials" produced by third parties, as well as other third-party "information demonstrating the likely use of the weapon by the general community." Rule, 88 Fed. Reg. at 6,544.  This *ad hoc* "analysis of third parties' actions," the Fifth Circuit explained, will wrongly "hold citizens criminally liable for the actions of others, who are likely unknown, unaffiliated, and uncontrollable by the person being regulated."  *Mock*, 75 F.4th at 586. That interpretation violates the statute because third-party intent is irrelevant to a manufacturer's intent.

Other courts of appeals agree.  In *Record Head Corp. v. Sachen*, 682 F.2d 672 (7th Cir. 1982), the Seventh Circuit interpreted a drug paraphernalia ordinance that, like the Rule, enumerated factors that supposedly would enable law enforcement to determine whether items for sale were "designed" and "intended" for unlawful use.  *Id.* at 677.  Invalidating the ordinance as unconstitutionally vague, the Seventh Circuit explained that factors requiring law enforcement to

examine third-party "advertising" and "opinion" had no "conceivable relevance to the intent of the seller" and thus compounded the constitutional problem. *Ibid.*; *see also, e.g.*, *United States v. Biro*, 143 F.3d 1421, 1428 (11th Cir. 1998) ("the customer's intended use" is irrelevant to "design"); *Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of Louisiana v. Treen*, 681 F.2d 378, 385 (5th Cir. 1982) ("We are persuaded that the 'designed for use' language of the Louisiana Act similarly applies only to manufacturers, for their own acts of design."). Because ATF's reading of the statute rests on this same flawed understanding of "intended," the Rule is invalid.

C.   The Rule Violates Lenity.

At the very least, the rule of lenity requires that the Rule be set aside. As the Fifth Circuit recently confirmed, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cargill v. Garland*, 57 F.4th 447, 469 (5th Cir. 2023) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)); *accord Hardin v. ATF*, 65 F.4th 895, 901 (6th Cir. 2023).

Here, the NFA's and GCA's text, structure, history, and purpose unambiguously foreclose their application to braced pistols. But if the Court disagrees, then the statutes are at least grievously ambiguous as applied to braces.

The Rule's preamble explains why. When ATF first considered the stabilizing braces at issue, it understood that their attachment to a pistol "d[oes] 'not convert that weapon to be fired from the shoulder'" and thus that "such a firearm *would not* be subject to NFA controls." Rule, 88 Fed. Reg. at 6,479 (quoting Letter from ATF #2013-0172 (Nov. 26, 2012) (emphasis in original letter)). ATF maintained this position for over a decade, issuing many interpretation letters reiterating it to the public. *Id.* at 6,502 n.84. The Department also "asserted in criminal prosecutions that 'ATF letters do correctly state that they consider a firearm with a pistol brace to not be a rifle under the NFA for purposes of the NFA.'" *Mock*, 75 F.4th at 572. Even the Notice

10

agreed, attempting to reconcile past decisions through a points system.  Notice, 86 Fed. Reg. at 30,829-32.

Then ATF reversed course.  Apparently "realizing" for the first time that pistols with stabilizing braces have always and unambiguously been covered by the NFA, ATF through the Rule decided to effectively render all brace-equipped pistols short-barreled rifles.  That "sounds absurd, because it is."  *Sekhar v. United States*, 570 U.S. 729, 738 (2013).  For ATF to upend its longstanding position shows at the very least that the NFA is grievously ambiguous as to whether it covers brace-equipped pistols.

The Fifth Circuit's en banc decision in *Cargill* shows why lenity requires the Rule to be set aside.  That case considered an ATF rulemaking that purported to restrict bump stocks under the federal prohibition on machineguns.  The lead opinion found that a bump stock is not a machinegun under "the statute's unambiguous language."  *Cargill*, 57 F.4th at 464.  Turning to the rule of lenity, thirteen of the sixteen judges held, assuming a "grievous" ambiguity standard, that even if the statute "does not unambiguously exclude non-mechanical bump stocks, its inclusion of [non-mechanical bump stocks] is at the very least ambiguous." *Id.* at 470.  Explaining that ATF had "construed the same statute in two, inconsistent ways at different points in time" the court found that the rule was at least ambiguous, and thus "the rule of lenity demand[ed]" that it be set aside.  *Id.* at 469–71; *see also Hardin*, 65, F.4th at 897–902 (explaining court was "bound to construe the statute in [the challenger]'s favor" where "ATF's own flip-flop in its position" revealed that NFA was "subject to more than one reasonable interpretation").

This case demands the same result.  Just like in *Cargill*, ATF is reversing its long-held position with respect to a popular and previously unregulated firearms accessory.  "The law hasn't changed, only [the] agency's interpretation of it."  *Guedes v. ATF*, 140 S. Ct. 789, 790 (2020)

(statement of Gorsuch, J.).  And here, just like in *Cargill*, the impact of ATF's sudden reversal is to place law-abiding citizens in criminal jeopardy.  Where the agency charged with administering the NFA maintained *for years* that pistols equipped with stabilizing braces are not subject to NFA or GCA controls, its "own flip-flop in its position" shows that "the statute is 'subject to more than one interpretation'" and thus "ambiguous."  *Hardin*, 65 F.4th at 898; *accord Bittner v. United States*, 143 S. Ct. 713, 722 (2023) ("[T]he government has repeatedly issued guidance to the public at odds with the interpretation it now asks us to adopt…. [S]urely that counts as one more reason yet to question whether its current position represents the best view of the law.").  Lenity thus demands that the Rule be set aside.

## II.    The Factors Adopted By The Rule Are Otherwise Unlawful.

ATF's Rule is also arbitrary and capricious.  MSJ at 22-24.  The Rule's factors taken together are arbitrary because they would impose criminal liability based on an infinitely malleable test that offers no meaningful guidance, contrary to the Rule's stated aim and the record before the agency.  The Rule likewise fails to explain how the individual factors will be applied and grounds those factors in faulty reasoning.  ATF also failed to consider the costs and reliance interests generated by the millions of braces sold in 2020, 2021, and 2022.  Finally, ATF's more-than 60 contemporaneous adjudications—which classify dozens of braced pistols as short-barreled rifles without even a sentence of explanation—confirm that the Rule is nothing more than a cloak for agency whim.

### A.    The Factors Are Holistically Arbitrary.

ATF's factors are arbitrary and capricious when considered together.  The Rule requires ATF to "consider" surface area and six other factors to determine "whether the weapon is designed, made, and intended to be fired from the shoulder."  Rule, 88 Fed. Reg. at 6,575.  But ATF does not say how it considers those factors, reserving the prerogative to make a judgment based on

"th'ol' 'totality of the circumstances' test"—that is, the test "most feared by [regulated parties] who want to know what to expect." *United States v. Mead Corp.*, 533 U.S. 218, 241 (2001) (Scalia, J., dissenting). Worse, in a dramatic understatement, ATF admits that it will use its self-conferred discretion to ensure that "a majority of the existing firearms equipped with a 'stabilizing brace'" face NFA regulations. Rule, 88 Fed. Reg. at 6,480; *see also* Regulatory Analysis at 21 (predicting Rule will cover 99% of braced pistols).

The Rule is arbitrary and capricious because it is infinitely malleable. When an agency intends to apply "a multi-factor test through case-by-case adjudication," some explanation is required to provide "predictability and intelligibility" to regulated parties. *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004) (Roberts, J.); *see U.S. Postal Serv. v. Postal Regul. Comm'n*, 785 F.3d 740, 753-54 (D.C. Cir. 2015). Otherwise, those seeking to conform their conduct to the regulation cannot know "which factors are significant and which less so, and why." *LeMoyne-Owen Coll.*, 357 F.3d at 61. Those guardrails are particularly important in this context, where "[f]ailure to comply" with the Rule "carries the potential for ten years' imprisonment," "fines," and "a lifetime ban on ownership of firearms." *Mock*, 75, F.4th at 570-71.

But here, the Rule's "factors, which are both general and unweighted, invite inquiry into areas of doubtful relevance rather than make the [regulated] conduct any clearer." *Rec. Head Corp.*, 682 F.2d at 677. ATF says its factors "objective[ly]" assess certain "design features common to rifles." Rule, 88 Fed. Reg. at 6,513; *see id.* at 6,478 ("this rule merely conveys more clearly to the public the objective design features"). Throughout the preamble, however, ATF undermines that description by stating that its articulated factors "are not themselves determinative," *id.* at 6,518, that ATF "may" elect not to use them in some cases, *id.* at 6,512,

6,531, 6,537, and that its determinations are made "on a case-by-case basis," *id.* at 6,495. In other words, classification as a short-barreled rifle is ultimately based on unbounded agency discretion.

The Fifth Circuit recognized this deficiency clearly. As that court explained, "the six-part test provides no meaningful clarity about what constitutes an impermissible stabilizing brace." *Mock*, 75 F.4th at 585. It is instead "nigh impossible for a regular citizen to determine what constitutes a braced pistol," such that "an owner may not be on notice that his firearm is subject to criminal penalties without registration." *Ibid.* The Fifth Circuit thus rejected "ATF's bald assertion" that the Rule provides "clear guidance"—noting that ATF provided "no examples of any designs" that are "not subject to the NFA." *Ibid.* (quotations omitted).

ATF confirms the error with its more-than "60 contemporaneous adjudications . . . classifying various configurations of firearms with stabilizing braces as rifles." *Mock*, 75 F.4th at 574. The adjudications find that 100% of examined items are "short-barreled rifles" under the Rule. *See* ATF, Common Weapon Platforms With Attached 'Stabilizing Brace' Designs that are Short-Barreled Rifles, https://tinyurl.com/3ut7vm92 ("Platforms Adjudications"); ATF, Commercially Available Firearms Equipped with a 'Stabilizing Brace' that are Short-Barreled Rifles, https://tinyurl.com/2p95jn8r ("Firearms Adjudications"). The adjudications consist solely of pictures, and no "explanations are included for how the ATF came to its conclusion as to each weapon and platform." *Mock*, 75 F.4th at 574-75, 585.

If ATF can reach whatever result it wants for any gun—feeling no need to even explain itself—then its "totality of the circumstances" test is "simply a cloak for agency whim." *LeMoyne-Owen Coll.*, 357 F.3d at 61. And that whim is apparently to reach the Administration's preordained political outcome—subjecting 99% of all braced pistols to heightened regulation. Regulatory Analysis at 21.

The Court should not condone ATF's "vague, indeterminate, multi-factor balancing test," which will use "uncertainty" as "a Sword of Damocles hanging over the heads of American gun owners." *VanDerStok*, 2023 WL 7403413, at [*]12 (Oldham, J., concurring).  That is not reasoned decisionmaking, but an invitation for regulatory abuse.

The Rule's standardless nature also reveals fundamental failures of explanation.  Given that misapplying the Rule carries severe criminal consequences, ATF recognized the need for "clear and unambiguous objective design features that can be readily assessed."  Rule, 88 Fed. Reg. at 6,513.  It thus purported to "allow members of the firearm industry and the public to evaluate whether a weapon incorporating a 'stabilizing brace' or other rearward attachment is, in fact, a short-barreled rifle subject to the NFA."  *Id.* at 6,551.  The resulting test that "provides no meaningful clarity about what constitutes an impermissible stabilizing brace," *Mock*, 75 F.4th at 585, betrays a "clear error of judgment."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  By announcing a readily assessable test and then failing to offer any meaningful clarity, the Rule is also "internally inconsistent," thereby "rendering its decision arbitrary and capricious."  *Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028, 1056-57 (D.C. Cir. 2022).

The Court should set aside the Rule because its factors, taken together, are arbitrary and capricious.

B.   <u>The Factors Are Individually Arbitrary.</u>

The factors are also arbitrary and capricious when considered individually.

1.   *Rear Surface Area*

The Rule establishes that the term "rifle" "shall include a weapon that is equipped with an accessory, component, or other rearward attachment . . . that provides surface area that allows the weapon to be fired from the shoulder."  Rule, 88 Fed. Reg. at 6,575.  Commenters asked the agency

to clarify the amount of surface area it deems sufficient. *Id.* at 6,521-22. But ATF rejected those pleas. *Id.* at 6,529. ATF acted arbitrarily and capriciously by failing to include a more specific surface-area criterion for three reasons.

*First*, ATF failed to explain why it could not offer a more precise factor. In *Tripoli Rocketry Association v. ATF*, 437 F.3d 75 (D.C. Cir. 2006), the D.C. Circuit held unlawful ATF's determination that hobby rocket fuel "deflagrates" because "the agency [had] never define[d] a range of velocities within which materials will be considered to deflagrate." *Id.* at 81. "[A]s a reviewing court," the D.C. Circuit explained, "we require *some* metric for classifying materials not specifically enumerated in the statute, especially when, as here, the agency has not claimed that it is impossible to be more precise in revealing the basis upon which it has made a scientific determination." *Ibid.*

The flaw the D.C. Circuit identified there is evident in the Rule, too. The preamble states, "ATF will not attempt to precisely measure or quantify the surface area or make the determination based on the existence of any minimum surface area," Rule, 88 Fed. Reg. at 6,529, but it does not say why it will not do so or claim that it would be impossible to provide "a concrete standard," *Tripoli Rocketry*, 437 F.3d at 77; *cf. United States v. Lim*, 444 F.3d 910, 916 (7th Cir. 2006) (holding NFA regulation of short-barreled shotgun not unconstitutionally vague because the statute "*supplies the specific measurements that will bring a shotgun within the proscribed zone*") (emphasis added). Therefore, the surface-area prerequisite is arbitrary.

*Second*, ATF's refusal to provide a metric contradicts the reasons the agency gave for abandoning its original proposal. According to the preamble, ATF abandoned its Worksheet 4999 proposal from the Notice because it was "open to subjective interpretation and application" and "did not provide a particular metric to quantify the rear surface area." Rule, 88 Fed. Reg. at 6,522.

It chose to instead proceed with "objective design features" that are "readily ascertainable." *Id.* at 6,552. But ATF's new test—enough surface area to "allow" shouldering—is still "open to subjective interpretation and application" and lacks a "metric." Thus, "[b]ecause [ATF's] decision is internally inconsistent, it is arbitrary and capricious." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. Cir. 2018); *see also Constellation Mystic Power*, 45 F.4th at 1056-57.

*Third*, in adopting the surface-area factor, ATF revealed that it failed to consider both an important aspect of the problem and a reasonable alternative. The record shows that commenters raised significant and unrebutted concerns that the agency's proposed surface-area criterion lacked "information regarding" how to apply the factor, was "subjective," and "would not assist the public or industry to determine if a firearm" is covered. Rule, 88 Fed. Reg. at 6521-22. These commenters explained that the problem stemmed from "no metric for quantifying the surface area" and thus requested "specific metrics." *Ibid.* ATF summarily asserted—without any explanation— that it was not "appropriate or necessary to specify" a metric. *Id.* at 6,529. "That falls well short of what is needed to demonstrate the agency grappled with an important aspect of the problem before it or considered another reasonable path forward." *Spirit Airlines, Inc. v. FAA*, 997 F.3d 1247, 1255 (D.C. Cir. 2021).

This factor is arbitrary.

### 2.   *Weight, Length, and Length of Pull.*

The Rule requires ATF to assess whether a weapon has a weight, length, or length of pull[3] "consistent with the weight or length of similarly designed rifles." Rule, 88 Fed. Reg. at 6,575. According to ATF, these factors "are quantifiable, easily measured metrics." *Id.* at 6,513

---

[3]  "Length of pull" refers to the length "from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment." Rule, 88 Fed. Reg. at 6,575.

("quantifiable and easily assessed").  As with rear surface area, however, the Rule fails to provide a metric that satisfies these factors or to otherwise meaningfully "articulate[ ] the standards that [will] guide[ ] [ATF's] analysis." *Tripoli Rocketry*, 437 F.3d at 81.

Consider the preamble.  ATF says that these factors will assess whether a braced pistol's weight, length, and length of pull are "consistent with" the metrics of "similarly designed rifles." Rule, 88 Fed. Reg. at 6,575.  But ATF's list of comparator rifles is its non-public database of "more than 12,000 firearms." *Id.* at 6,514 n.103.  Although the preamble includes a table that purports to provide "example" weights, lengths, and lengths of pull from the database, *id.* at 6,514-18, 6,535-37, these are not helpful because they are underinclusive by thousands of guns and encompass broad ranges from 2 pounds to 10 pounds (weight), 18-1/2 inches to 38-1/2 inches (length), *id.* at 6,514-19, and 11 inches to 19-1/2 inches (length of pull), *id.* at 6,535-37.

ATF confirms the Rule's unworkability in its discussion of how it will select comparators. ATF considers relevant only "similarly designed rifles."  *Id.* at 6,575; *see also id.* at 6,518 & n.104 (asserting ATF will compare braced pistols to rifle "variant," defined as a "similar" rifle).  But that begs the question of what rifle is "similar" enough to trigger comparison.  Indeed, the Rule offers zero guidance on what features it will even consider to determine whether a rifle is "similarly designed."  Further, ATF does not suggest that a pistol will be compared to one "similar" rifle, but an entire subset, e.g., "AK-type pistols." *Id.* at 6,518.  ATF also does not say how it will determine the comparator weight, length, or length of pull from the rifles in this subset.  Is it the average? The median?  The heaviest?  The lightest?  The Rule leaves the public "as well as other regulated parties, and reviewing courts[,] guessing." *Innovator Enterprises*, 28 F. Supp. 3d at 25.

And it is not just the comparator.  Even if a gun owner can determine the relevant weight(s), length(s), and length(s) of pull from the 12,000 rifles in ATF's non-public database, he then must

determine whether his braced gun is "consistent with" that baseline.  Rule, 88 Fed. Reg. at 6,575.  But again, the Rule offers no guidance on how to conduct that inquiry.  How different must the metrics be to avoid being "consistent with" the comparator?  Does it matter if the braced pistol is lighter (rather than heavier) or shorter (rather than longer) than the comparator?  Again, there are no answers.

Thus, as with the surface-area factor, ATF fails to offer a reason its weight, length, and length-of-pull factors cannot be more precise.  Worse still, these factors are patently inconsistent with ATF's claims of "readily ascertainable" criteria, and ATF failed to consider or explain why it rejected the alternative of providing more workable "minimum or maximum weight," length, and length-of-pull criteria, Rule 88 Fed. Reg. at 6,521.  Further, ATF's "consistent with" test imposes the same "unbounded relational definition" that the D.C. Circuit found to "not suffice" in *Tripoli Rocketry*.  437 F.3d at 81.

Finally, ATF fails to explain why having a similar weight, length, or length of pull to a rifle facilitates shouldering.  And simply having "characteristics in common with some category may not be very helpful in determining whether the object in question belongs in that category." *Innovator Enterprises*, 28 F. Supp. 3d at 25-26 ("Bud Light is not 'Single-Malt Scotch,' just because it is frequently served in a glass container, contains alcohol, and is available for purchase at a tavern."); *see also VanDerStok*, 2023 WL 7403413, at *25 (Oldham, J., concurring) ("One could make a cake that looks like a hamburger . . . . But that does not make the former taste like a Big Mac.").

The record confirms that ATF employed an arbitrary methodology by merely identifying superficial similarities between braced pistols and rifles without explaining why the similarities facilitate shouldering.  In the Notice, ATF explained that "AR-type pistol[s]" weigh

"approximately 5 to 7 pounds" and that a "traditional unloaded 1911-type pistol" weighs "just over 2 pounds."  Notice, 86 Fed. Reg. at 30,831.  Thus, guns that ATF concedes are not designed and intended for shouldering encompass nearly all of the example weight range asserted by the Rule (2 pounds to 10 pounds), confirming that a facile comparison of physical characteristics like "weight" does not distinguish design and intent for shoulder-firing.

These factors are arbitrary.

### 3.   *Marketing and Community Information*

The Rule permits ATF to assess "[t]he manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon" and "[i]nformation demonstrating the likely use of the weapon in the general community."  Rule, 88 Fed. Reg. at 6,575.  But the Rule does not explain how ATF will assess this information, permitting the agency to reach arbitrary and capricious results.

Once again, the preamble illustrates the problem.  Since its inception, *amicus* SB Tactical has published countless training and marketing materials instructing users how to properly use its stabilizing braces.  SB Tactical has *never* said that its braces should be used for shouldering. Despite that, ATF faults SB Tactical for a website banner displayed from 2017 to 2019 reading, "Stiff Arm the Establishment."  Rule, 88 Fed. Reg. at 6,544-45.  A "stiff arm" refers to "the one-handed precision stance" that ATF concedes it had deemed NFA-compliant before its recent reversals.  *Id.* at 6,479.  And if ATF cited an old SB Tactical slogan because it disliked the anti-establishment message, it goes without saying it is protected speech.  *See Cohen v. California*, 403 U.S. 15, 25 (1971).  The heavy weight ATF appears to place on a single, cherry-picked web banner displayed years ago shows that this factor is arbitrary and capricious.

Equally arbitrary is the agency's factor purporting to analyze information "in the general community."  Rule, 88 Fed. Reg. at 6,575.  Elsewhere, ATF contends "the method in which a

20

'stabilizing brace' may be used, in isolated circumstances or by a single individual," is not "relevant to examining whether a firearm is designed, made, and intended to be fired from the shoulder." *Id.* at 6,519. But under this factor, ATF tries to eat its cake too; it depicts in the preamble two individuals who appear to be misusing a stabilizing brace and cites these isolated examples as supposed evidence of "community information." *Id.* at 6,546. This "internal[ ] inconsisten[cy]"—which permits ATF to discount evidence establishing the brace's proper use as mere anecdote but then to count isolated evidence of improper use as community information—is "arbitrary and capricious." *ANR Storage Co.*, 904 F.3d at 1028.

Furthermore, ATF ignores record evidence that thousands of wounded warriors and other individuals have been trained or retrained to shoot by properly using a stabilizing brace. *See, e.g.*, Comments of SB Tactical and FRAC at 10-11, Docket No. ATF 2021R–08 (filed Sep. 8, 2021), https://tinyurl.com/ybarazdj; Comments of Richard Cicero, Docket No. ATF 2021R–08 (filed Sep. 8, 2021), https://tinyurl.com/526myr8v. Many of these individuals cannot fire a gun in any other way. Surely, these examples are relevant as "community information." ATF's decision to simply ignore this record evidence while purporting to consider a weapon's "likely use in the general community" is further evidence that this factor is arbitrary and capricious.

C.     ATF's Failure To Consider Costs And Reliance Interests Is Arbitrary.

ATF concedes it was required to consider costs, Rule, 88 Fed. Reg. at 6,571-74, consistent with the statutory requirements to determine whether the Rule was "needful" and "necessary." 26 U.S.C. § 7805(a); 18 U.S.C. § 926(a)); *see Michigan v. EPA*, 576 U.S. 743, 752 (2015). A deficient cost-benefit analysis renders a rule arbitrary and capricious. *See Owner-Operator Indep. Drivers Ass'n v. FMCSA*, 494 F.3d 188, 203-06 (D.C. Cir. 2007).

ATF must "consider[] the costs and benefits associated with the regulation." *Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956, 973 (5th Cir. 2023). But here, ATF

21

inexplicably failed to consider all costs associated with stabilizing braces sold in 2020, 2021, and 2022.  *See* Regulatory Analysis at 18.  That omission is striking because ATF acknowledges these are three of the six highest-production years.  Rule, 88 Fed. Reg. at 6,560 (reporting brace production "t[ook] off" in 2017).  Indeed, *amicus* SB Tactical alone sold more than *2.3 million braces* from 2020 until ATF published the Rule.  *See* Am. Br. Ex. D, ECF No. 73-5 ¶ 15.  Against ATF's assumption that there are approximately three-million braces in circulation,[4] Rule, 88 Fed. Reg. at 6,560, this oversight is significant and renders the Rule arbitrary and capricious.

Failing to consider the millions of affected individuals who purchased stabilizing braces since 2020 also caused ATF to overlook these Americans' reliance interests.  "When an agency changes course, as [ATF] did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account."  *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).  Such interests are particularly acute here because "law-abiding Americans (and the law-abiding gun companies that serve them) rely on longstanding regulatory certainty to avoid falling afoul of federal gun laws."  *VanDerStok*, 2023 WL 7403413, at *12 (Oldhamn, J., concurring).  Thus, the Rule is independently "arbitrary and capricious in violation of the APA" because ATF failed to consider the reliance interests of millions of law-abiding citizens.  *Regents*, 140 S. Ct. at 1913-15.

---

[4] Three-million braces is ATF's "primary" estimate in a possible range of "between 3 million and 7 million 'stabilizing brace' devices."  Regulatory Analysis at 18, 62.  All estimates are based on braces sold "between the years 2013 to 2020," *id.* at 18, and thus all estimates fail to consider the costs and reliance interests associated with every brace sold since 2020.

D.    ATF's Adjudications Confirm The Rule Is Arbitrary.

ATF's approximately 60 adjudications confirm a fundamental problem with the Rule that renders it arbitrary and capricious: the agency's "factoring criteria" are merely window dressing that allow ATF to reach whatever result it wants.

The adjudications' treatment of the "SB-Mini" (also called the "SBL-Mini") demonstrates this problem clearly.  Before the Rule, ATF issued a preliminary decision opining that a pistol affixed with the SB-Mini stabilizing brace is *not* a short-barreled rifle.  Rule, 88 Fed. Reg. at 6,492 (citing preliminary classification letter issued in 2020).  And in the Notice, the SB-Mini again passed muster as a braced handgun, not a short-barreled rifle.  Notice, 86 Fed. Reg. at 30,834-37. But when ATF issued the Adjudications, it took the opposite position and purported to classify an "AR-type" pistol with an SB-Mini attached as a "Short-barreled Rifle."  Platforms Adjudication at 8.  The Adjudications offer no analysis and no explanation for this change.  Indeed, as the Fifth Circuit explained, "it is wholly unclear why the AR-type firearm with an SB-Mini accessory, adjudicated as an approved braced handgun in the [Notice], is not adjudicated the same way under the Final Rule."  *Mock*, 75 F.4th at 585 (citation omitted).

If the Rule is so nebulous that ATF can come to a classification decision that contradicts two prior analyses—without so much as a sentence of explanation—then the Rule plainly is neither "reasonable" nor "reasonably explained." *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1136 (5th Cir. 2021).  The Rule instead allows ATF to reach its predetermined outcome of outlawing 99% of all braces in circulation, Regulatory Analysis at 21, on the apparent bet that "law-abiding Americans will abandon [their braces] rather than risk the ruinous felony prosecutions that come with violating the new, nebulous, impossible-to-predict Final Rule."  *VanDerStok*, 2023 WL 7403413, at *12 (Oldham, J., concurring).

### III.     Vacatur Is Required.

Because the Rule is unlawful, it must be set aside.  To remedy an APA violation, "vacatur of an agency action is the default rule in this circuit."  *Cargill*, 57 F.4th at 472 (citations omitted); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation.").  That is because the APA expressly authorizes a reviewing court "to 'strike down' an agency's work, [such that] the disapproved agency action is treated as though it had never happened."  *Griffin v. HM Florida-ORL*, 601 U. S. ____ n.1 (2023) (slip op. at 3 n.1) (statement of Kavanaugh, J.) (quoting J. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012–13 (2018)).  Therefore, this Court should vacate the Rule.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that this Court grant Plaintiffs' motion for summary judgment and vacate the Rule accordingly.

Dated: November 21, 2023

/s/ *Stephen J. Obermeier*
Stephen J. Obermeier* (DC Bar No. 979667)
Michael D. Faucette* (DC Bar No. 1046222)
Jeremy J. Broggi* (DC Bar No. 1029427)
Boyd Garriott* (DC Bar No. 1617468)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

*Counsel for Palmetto State Armory, Firearms Regulatory Accountability Coalition, and SB Tactical*

*Admitted pro hac vice*

John Leslie (TX Bar. No. 12231400)
**JOHN LESLIE PLLC**
1805 West Park Row Drive, Suite C
Arlington, TX 76013-3584
Tel: 817.405.7700
Fax: 817.505.1292
arlingtonlaw@aol.com

*Local Counsel*

**CERTIFICATE OF SERVICE**

I certify that on November 21, 2023, I electronically submitted the foregoing document to the clerk of court of the U.S. District Court, Northern District of Texas, using the electronic case filing ("ECF") system of the Court.  I hereby certify that I have served the counsel of record for Plaintiffs and Defendants electronically through the Court's ECF system.


Dated: November 21, 2023                          /s/ *Stephen J. Obermeier*
                                                  Stephen J. Obermeier