# Exhibit A

*In the Matter of*
Factoring Criteria for Firearms with Attached "Stabilizing Braces"
ATF 2021R-08

September 8, 2021

On behalf of Firearms Policy Coalition, Inc. ("FPC") and its members and supporters, the undersigned respectfully submit these comments regarding Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Proposed Rule no. ATF 2021R-08 (the "Proposed Rule").

FPC is a nonprofit organization whose purposes include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. As such, FPC, along with its members and supporters, have a vested interest in ATF's Proposed Rule, which seeks to, *inter alia*, (1) amend the definition of "rifle" in 27 CFR §§ 478.11 and 479.11, respectively, by adding a sentence at the end of each definition to clarify that the term "rifle" includes any weapon with a rifled barrel and equipped with an attached "stabilizing brace" that has "objective" design features and characteristics that indicate that the firearm is designed to be fired from the shoulder, and (2) set forth a worksheet "Factoring Criteria for Rifled Barrel Weapons with Accessories commonly referred to as 'Stabilizing Braces,'" ATF Worksheet 4999, to aid the firearms industry and public in understanding the criteria that ATF considers when evaluating firearm samples that are submitted with an attached "stabilizing brace" or similar component or accessory.

The National Firearms Act of 1934 ("NFA") identified and regulated several classes of arms which were in common use for lawful purposes at the time (and to this day). In its original drafts, the NFA sought to impose "near-prohibitory controls on … handguns."[1] Towards that end, the Act regulated short or cut-down rifles and shotguns in an attempt to prevent an end-run around the tax applied to handguns,

---

[1] Carter, Gregg Lee. *Guns in American Society: An Encyclopedia of History, Politics, Culture, and the Law* 545 (2002).

which were proposed to be subject to the NFA and associated tax. Prior to passage, pistols and revolvers were eventually removed from the NFA, but the anti-circumvention regulations on other short firearms irrationally remained, even though there was nothing left to circumvent.

Since then, of course, the Supreme Court has recognized the individual right to keep and bear handguns—the shortest, most concealable firearms of all—in part due to the commonality of their ownership for lawful purposes.[2] Arguments based on the concealability of a weapon thus ring particularly hollow post-*Heller*. Now ATF, in an attempt regulate handguns through a new regulatory scheme, is attempting to treat handguns as regulable "firearms" or "Short-Barreled Rifles" ("SBR"s) subject to the NFA contrary to Congress' decision to exclude handguns from such regulation under the statutes. The Proposed Rule, however, exceeds ATF's statutory and constitutional authority. It should be withdrawn and not enacted in any final rule.

## I.   THE PROPOSED RULE EXCEEDS ATF'S STATUTORY AUTHORITY.

The NFA and the Gun Control Act of 1968 ("GCA"), in pertinent parts, regulate SBRs.[3] Handguns are excluded from classification as firearms or SBRs because Congress specifically defined those separate weapons in mutually exclusive terms. A "rifle" is defined as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger."[4] A rifle is excluded from the definition of a "firearm" regulated by the NFA and is generally lawful to own under federal law. But a rifle that has a barrel less than 16 inches in length would constitute a regulable firearm under the NFA. Similarly, under the GCA, a "short-barreled rifle" is defined to mean "a rifle having one or more barrels less than sixteen inches in

---

[2] *See District of Columbia v. Heller*, 554 U.S. 570, 628 (2008) ("The handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose").

[3] 26 U.S.C. § 5845; 18 U.S.C. § 921.

[4] 18 U.S.C. § 921(a)(7) and (29). Perhaps most ironic is that Congress had already considered the ability of a person to stabilize a handgun to be fired by one hand when it defined the term to mean, *inter alia*, "a firearm which has a *short stock*…" *Id*. (emphasis added). *See, e.g.*, Henry's Mare's Leg (https://www.henryusa.com/rifles/mares-leg/).

length and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches."[5] SBRs are regulated firearms under the GCA and require an individual to submit to several additional steps—including the payment of a $200 tax—in order to lawfully own under federal law.

The Proposed Rule expands the definition of "rifle" in both the NFA and GCA to include "any weapon with a rifled barrel equipped with an accessory or component purported to assist the shooter stabilize the weapon while shooting with one hand, commonly referred to as a 'stabilizing brace,' that has objective design features and characteristics that facilitate shoulder fire, as indicated on Factoring Criteria for Rifled Barrel Weapons with Accessories commonly referred to as 'Stabilizing Braces,' ATF Worksheet 4999…"[6] The referenced worksheet then includes a host of subjective or indeterminate factors by which ATF will purport to score different handguns with, or capable of accepting, stabilizing braces to determine whether they are designed, made, and intended to be fired from the shoulder.

Yet, when one examines the proposed Worksheet and criteria (discussed *infra*), it becomes clear that ATF's Proposed Rule would allow it to look beyond the firearm itself to reach a seemingly foregone conclusion that virtually any handgun with or capable of accepting a stabilizing brace is now a "rifle"—specifically a "short-barreled rifle"—and thus falls within the ambit (and criminal law restrictions) of the NFA and the GCA.

Some of the malleable factors included on the Worksheet include the "accessory design," rear surface area, adjustability, and stabilizing support. Apart from being highly subjective, they are incompatible with the statute itself in that they go beyond the design and manufacture of the weapon and seek to divine some heretofore unknowable intent, standing seemingly alone, to fire from the shoulder based on the presence of virtually any stabilizing accessory or brace, notwithstanding that the definition of a handgun allows for a "short stock".

---

[5] 18 U.S.C. § 921(a)(8). *See also* 26 U.S.C. § 5845(a) defining "firearm" to include "a rifle having a barrel or barrels of less than 16 inches in length" and "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or barrel or barrels of less than 16 inches in length."

[6] 86 Fed. Reg. 30851.

II.  **THE PROPOSED RULE RAISES SERIOUS LEGAL AND CONSTITUTIONAL CONCERNS.**

A.  <u>The Proposed Test is Indefinite and Gives ATF Unconstitutional Discretion to Redefine Crimes</u>

Apart from the many flaws in the substance of ATF's Proposed Rule regarding what factors it deems relevant to the intended use of a handgun, an over-reaching problem is ATF's attempt to preserve *ad hoc* discretion to expand the scope of the rule however it sees fit. Thus, in the "NOTE" at the top of proposed worksheet 4999, ATF "reserves the right to preclude classification as a pistol … for any firearm that achieves an apparent qualifying score but is an attempt to make a 'short-barreled rifle' and circumvent the GCA or NFA." That global discretion to ignore its own supposed criteria when they lead to a conclusion ATF does not like is unconstitutional, particularly in the context of laws defining potentially criminal conduct.

First, such open-ended discretion renders the proposed criteria/factors meaningless because ATF can ignore the criteria/factors it is proposing and find that a handgun is a short-barreled rifle, regardless of its regulatory score. By incorporating such ambiguity and unpredictable discretion into a supposedly clarifying regulation, ATF would force ordinary citizens to guess whether a handgun would be reclassified as a short-barreled rifle and hence whether their possession of that weapon violates the law—even if it meets ATF's own proposed criteria for a handgun. Such vague and empty rules for defining criminal conduct, and free-ranging discretion to categorize facially lawful behavior as a crime, violate both due process and the rule of lenity.

The void-for-vagueness doctrine is well-known to ATF. That ATF has given itself un-check-able discretion with no meaningful objective criteria against which to measure its conduct suggests that its disregard of constitutional principle was hardly unintentional. Similarly, the rule of lenity is likewise well-known to ATF and is a constitutional and pre-constitutional principle of statutory interpretation, requiring both courts and agencies to apply any unclear or ambiguous laws in a manner most favorable to a defendant. The basic principle is that, if the People are to be subject to severe consequences for crossing a line, it is the job of the government to draw a clear line and one that can indisputably be traced back to the statutory choices made and language used by the legislature. That ATF has not merely adopted the broader reading of any potentially ambiguous provisions, but

added still further ambiguities to expand the scope of putatively criminal conduct again suggests an intentional power grab, not an incidental error. To make the line between lawful and felonious conduct depend on a "worksheet" laden with incomprehensible criteria is incompatible with the rule of lenity.[7]

Second, the unconstitutional expansion of any ambiguous terms in the statute can further be seen by ATF's declaration that "any maker or manufacturer who has received a classification prior to the effective date of the rule is encouraged to resubmit the firearm with the attached 'stabilizing brace' to ensure that the prior classification is consistent with this new rule and to avoid any possible criminal or tax penalties for the continued manufacture, transfer, or possession of a NFA firearm."[8] But the very fact that a particular weapon has already received a favorable ruling from the ATF illustrates the unavoidable application of the rule of lenity—a narrower reading of the statute not only can be applied, but in fact has been applied in the past, and ATF is now claiming authority to impose a broader reading of the statute.

Third, ATF's effort to criminalize any "attempt" to "circumvent" the supposed purpose of the Proposed Rule is further evidence of improper and misguided regulatory discretion to redefine crimes. Having set forth specific criteria for evaluating the legality of a weapon, ATF cannot criminalize successful compliance with such criteria, no matter how close to the line such compliance comes. Indeed, the very concept of attacking attempts to "circumvent" a rule is itself problematic. To "circumvent" is to "find a way around (an obstacle)."[9] "Violate," on the other hand, is to "break or fail to comply with (a rule or formal agreement)."[10] In common parlance, then, to "circumvent" a law is more similar in concept to "narrow compliance" than a violation. Narrow compliance, of course, is just following the law—or, in essence, the difference between tax *avoidance* and tax *evasion* under the Internal Revenue Code (the former being lawful, and the latter being unlawful).

---

[7] This basic principle predates the existence of our nation. *See Ex parte Davis*, 7 F. Cas. 45, 49 (N.D.N.Y. 1851) ("This excellent principle our law has adopted, in the construction of penal statutes; for whenever any ambiguity arises in a statute, introducing a new penalty or punishment, the decision shall be on the side of lenity and mercy; or in favor of natural right and liberty").

[8] 86 Fed. Reg. 30829.

[9] Oxford Languages, "circumvent".

[10] Oxford Languages, "violate".

Efforts to avoid the newly invented regulatory categories of illegal weapons here by carefully attending to ATF's own worksheet purporting to draw a line between legal and illegal weapons constitute *compliance* with the statutory definitions of legal firearms, not somehow-illegal "circumvention." But by claiming discretion to convert *successful* efforts at compliance with the strict terms of the law into *illegal* circumvention of that law, ATF once again assumes unconstitutional authority that it has no right to exercise.

B. <u>The Criteria are Themselves Arbitrary, Contradictory, and an Abuse of the Disabled</u>

In addition to the excess vagueness, breadth, and discretion created by the Proposed Rule, the substance of the various criteria is also problematic. First, ATF's combination of length and weight cutoffs for categorization as a handgun rather than a rifle under the Proposed Rule is nonsensical: Braces are useful for a variety of handguns, not merely those with a minimum weight of 64 ounces and a minimum length (with accessories removed) of 12 inches. The notion that firearms under 4 pounds or shorter than 12 inches are "too easy" to fire one-handed, and hence do not need a stabilizing brace has nothing to do with whether such a handgun is a rifle, imposes arbitrary and frivolous lines between indistinguishable weapons, and once again suggests an arbitrary application of discretion in the criminal context that is unacceptable.

An example of the arbitrariness of these criteria can be seen in the case of a 64-ounce, 12-inch handgun, which is is heavy enough, in the eyes of the agency, to justify the utility of a pistol brace. But ATF would exclude a 70-ounce, 11.75-inch handgun as involving an attempt to circumvent the NFA or GCA the moment a user decides they might benefit from the use of a pistol brace. That line-drawing makes no sense and is merely a trap for the unwary.

Furthermore, the ATF's arbitrary weight and length criteria ignores the variable needs of the disabled community, who do not match a one-size-fits-all vision of when a stabilizing brace is properly needed to fire a handgun. ATF itself recognizes the original impetus for the pistol brace was to assist in disabled shooters' use of handguns.[11] Yet, it arbitrarily now claims that a handgun of a limited particular weight *necessarily* does not "need" a stabilizing brace and hence any such brace would evidence intent to manufacture a rifle. How ATF can make

---

[11] 86 Fed. Reg. 30827.

such a determination for the wide variety of disabled persons is certainly nowhere reflected in the record, and blinks the reality of the diverse disabled community.[12] The oft-cited notion of disabled veterans aside, there are many hundreds of thousands of Americans with diminished physical strength as a result of physical or developmental disabilities.[13] We have failed to unearth any part of the NFA or GCA that limits the assisted use of handguns to individuals with only the extremely rare 4-pound, 12 inch-specific class of physical disability, but excludes those whose disabilities might require stabilization even of smaller handguns. Purporting to serve the disabled in only this inexplicably specific circumstance would be extremely unfair to the neigh-on million Americans suffering from cerebral palsy, muscular dystrophy, and traumatic orthopedic injuries who wish to fire a gun one-handed.

Similarly devoid of any relation to the real world and actual or potential needs of the disabled community are the Worksheet's manner of attachment and length of pull categories. Those once again ignore that individuals come in all shapes and sizes (such as different length forearms). Thus, for a brace to sit comfortably on one individual versus another who may have a smaller or larger stature, a "one size fits all approach" is far from realistic and as a result, a penalty is awarded for the attempted accommodation.

The proposed worksheet takes into consideration a host of other entirely nonsensical and inexplicable factors, such as whether a brace is "based on a known shoulder stock design"[14] and whether material is "added" to the brace to "facilitate

---

[12] As ATF has failed to support this contention with any scientific or medical evidence, this rulemaking must be withdrawn.

[13] Muscular dystrophies as a whole are estimated to affect 250,000 individuals in the United States. National Organization for Rare Disorders, *Duchenne Muscular Dystrophy*, https://rarediseases.org/rare-diseases/duchenne-muscular-dystrophy/. It is estimated that some 500,000 children and adults in the United States manifest one or more of the symptoms of cerebral palsy, with 8,000 infants diagnosed with the condition each year. Texas Adoption Resource Exchange, *A Closer Look at Cerebral Palsy*, https://bit.ly/3xejV2R.

[14] ATF fails to address numerous issues related to its factor of "based on a known shoulder stock design." What is a "shoulder stock design"? Known by whom? When? What if it is not a known shoulder stock design at the time, but in 5 years, it becomes a known shoulder stock design? Does everyone who owns one become a criminal?

shouldering."[15, 16] Such subjective considerations once again empower the discretion of an ATF agent and sow vagueness and uncertainty.

C. <u>ATF's Requirement that Individuals Include their Name and Address to Comment Violates their First Amendment Rights and Chills Public Participation</u>

In addition to the substantive defects of the Proposed Rule, the process by which it is being introduced and potentially adopted also is flawed. The APA requires government agencies to allow the public to submit "written data, views, or arguments" regarding a proposed rule. Here, though, ATF has placed, among other things, strict self-identification requirements on public comments to the NPRM, which severely limit both the degree and amount of public participation.

The Supreme Court has long recognized that the right to anonymous speech is protected by the First Amendment.[17] Courts have consistently held that restrictions on anonymous speech are subject to "exacting scrutiny" under the First Amendment, where the government must show a "substantial relation" between the disclosure requirement and a "sufficiently important" government interest justifying the ban on anonymous speech.[18]

Unlike those instances where the government's interest was held to be sufficient to prohibit anonymous speech, ATF cannot here meet that burden. Many

---

[15] 86 Fed. Reg. 30829.

[16] However, see ATF's acknowledgement that "a large amount of surface area on the rear of the stabilizing brace…may also be the result of incorporating substantial stabilizing support that envelopes the shooter's arm…allowing one-handed firing of a large pistol." 86 Fed. Reg. 30829.

[17] *See, e.g.*, *Talley v. California*, 362 U.S. 60 (1960) (striking down ban on anonymous handbills); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) (striking down ban on anonymous campaign literature).

[18] *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1 (1976) (interest in deterring corruption and avoiding appearance of corruption sufficient to uphold disclosure of campaign contributors); *Doe v. Reed*, 561 U.S. 186 (2010) (interest in integrity of electoral process sufficient to uphold disclosure of signatories to state referendum).

government agencies accept anonymous comments in identical circumstances.[19] Further, the APA does not require that agencies authenticate comments. Indeed, the focus of agency review of public comments under the APA is on the substance of comments.[20] The identity of the commenters has nothing to do with the concerns raised in comments, and thus ATF has no important interest in obtaining it.

Compounding this problem, ATF is doubtlessly aware of the tumultuous relationship between itself and American gun owners. It is not controversial to observe that American gun owners have a perfectly rational fear of retaliation by ATF for innocent acts or omissions. In light of this, it seems ATF's requirement that the public provide a full name and address in order to submit a comment is predictably likely to chill the gun owning public from weighing in and exercising their right to participate. This requirement will sharply discourage members of the public who may be uncertain of how the new regulations would apply to them, and hence have the most relevant comments concerning proper line-drawing and the like, from commenting.

Because ATF, in this NPRM, discouraged the submission of anonymous comments, we have no way of knowing what information would have been presented absent the speech restriction. Thus, ATF should re-open the comment period, making it clear that anonymous comments will be accepted and considered in developing any final rule.

## III.   **CONCLUSION.**

For all the reasons discussed above, ATF's Proposed Rule is procedurally and substantively flawed, unconstitutional, and arbitrary and capricious. It should be withdrawn.

---

[19] *See* U.S. Gov't Accountability Office, Selected Agencies Should Clearly Communicate Practices Associated with Identity Information in the Public Comment Process, at 18-19. (GAO-19-483, June 2019).

[20] *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("An agency must consider and respond to significant comments received during the period for public comment").

Respectfully submitted by:

MATTHEW LAROSIERE
ADAM KRAUT
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
mla@fpclaw.org
akraut@fpclaw.org

ERIK S. JAFFE
SCHAERR | JAFFE LLP
1717 K Street, NW, Suite 900
Washington, D.C. 20006
(202) 415-7412
ejaffe@schaerr-jaffe.com
*Of Counsel*

JOSHUA PRINCE
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416
joshua@civilrightsdefensefirm.com
*Of Counsel*

September 8, 2021