# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

WILLIAM T. MOCK, *et al.*,

      *Plaintiffs*,

    v.

MERRICK B. GARLAND, *et al.*,

      *Defendants.*

Civil Action No. 4:23-cv-95-O

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.      The Tax Anti-Injunction Act bars Plaintiffs' claims insofar as they seek relief that
        would obstruct the assessment or collection of the NFA's tax. ............................. 1

II.     The Rule properly interprets the statutory definition of "rifle." ............................. 4

III.    The Rule is not arbitrary or capricious. ................................................................. 7

IV.     The Court may properly consider Defendants' logical outgrowth arguments. ................. 10

V.      The NFA's taxation and registration requirements on dangerous and unusual
        weapons like short-barreled rifles do not violate the Second Amendment. ...................... 12

        A.      Like other firearms accessories, stabilizing braces are not bearable arms. ............ 12

        B.      Short-barreled rifles are dangerous and unusual weapons outside the
                protections of the Second Amendment. ................................................................ 13

        C.      The NFA's tax and registration provisions do not implicate the Second
                Amendment. ....................................................................................................... 15

        D.      The NFA is sufficiently similar to historical taxation and registration
                regulations to satisfy *Bruen*. ............................................................................ 15

VI.     The Rule is not void-for-vagueness. ........................................................................ 17

VII.    The Rule does not violate the Constitution's structural protections. ....................... 19

VIII.   In all events, any relief should be narrowly tailored to redress Plaintiffs' injuries. ............ 20

        A.      Universal vacatur of the Rule is unwarranted. ................................................... 20

        B.      Plaintiffs are not entitled to their proposed injunction. ...................................... 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. Biden,*
  40 F.4th 375 (6th Cir. 2022)........................................................................................22

*Bezet v. U.S.,*
  714 F. App'x 336 (5th Cir. 2017) ...............................................................................15

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
  781 F.3d 1271 (11th Cir. 2015)...................................................................................21

*Bond v. U.S.,*
  564 U.S. 211 (2011)....................................................................................................19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022)........................................................................................ 15, 16

*Cargill v. Garland,*
  57 F.4th 447 (5th Cir. 2023)...........................................................................21, 22, 23

*Central S.W. Servs. v. EPA,*
  220 F.3d 683 (5th Cir. 2000).......................................................................................23

*Chamber of Commerce of U.S. v. SEC,*
  88 F.4th 1115 (5th Cir. 2023)................................................................................22, 23

*CIC Services, LLC v. IRS,*
  593 U.S. 209 (2021).................................................................................................. 2, 3

*Citizens for Resp. & Ethics in Wash. v. Trump,*
  302 F. Supp. 3d 127 (D.D.C. 2018) ............................................................................20

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021)................................................................................................19

*DHS v. Regents of the Univ of Cal.,*
  140 S. Ct. 1891 (2020)............................................................................................ 8, 10

*Direct Marketing Ass'n v. Brohl,*
  575 U.S. 1 (2015) ..................................................................................................... 2, 4

*Duncan v. Bonta,*
  2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) ...........................................................12

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006).....................................................................................................25

*Enochs v. Williams Packing & Navigation Co.,*
    370 U.S. 1 (1962) ...................................................................................4, 8, 12, 17

*Feds for Med. Freedom v. Biden,*
    63 F.4th 366 (5th Cir. 2023) ...................................................................................21

*Franciscan Alliance, Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) ...................................................................................21

*Franklin v. U.S.,*
    49 F.4th 429 (5th Cir. 2022) .....................................................................................3

*Georgia v. President of the U.S.,*
    46 F.4th 1283 (11th Cir. 2022) ...............................................................................22

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ............................................................................................20

*Guedes v. ATF,*
    45 F.4th 306 (D.C. Cir. 2022) .................................................................................10

*Hanson v. D.C.,*
    2023 WL 3019777 (D.D.C. Apr. 20, 2023) ............................................................12

*Hollis v. Lynch,*
    827 F.3d 436 (5th Cir. 2016) ...................................................................................14

*Hotze v. Burwell,*
    784 F.3d 984 (5th Cir. 2015) .....................................................................................1

*In re Entringer Bakeries, Inc.,*
    548 F.3d 344 (5th Cir. 2008) ...................................................................................23

*In re Wright,*
    2004 WL 569517 (W.D. Tex. Mar. 8, 2004) ..........................................................12

*Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................................................25

*Kemlon Prods. & Dev. Co. v. U.S.,*
    638 F.2d 1315 (5th Cir. 1981) ...................................................................................4

*Kolbe v. Hogan,*
    849 F.3d 114 (4th Cir. 2017) ...................................................................................14

*Lane v. Holder,*
    703 F.3d 668 (4th Cir. 2012) ...................................................................................15

*Las Ams. Immigrant Advocacy Ctr. v. Biden,*
   571 F. Supp. 3d 1173 (D. Or. 2021) .................................................................19

*Lewis v. Casey,*
   518 U.S. 343 (1996) ........................................................................................24

*Lewis v. U.S. & U.S. Army Corps of Engr's,*
   2019 WL 13115362 (E.D. La. Mar. 28, 2019) ...............................................11

*Linn v. Chivatero,*
   714 F.2d 1278 (5th Cir. 1983) ........................................................................ 1, 2

*Louisiana v. Becerra,*
   20 F.4th 260 (5th Cir. 2021) .......................................................................21, 22

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ........................................................................................20

*MediNatura, Inc. v. FDA,*
   998 F.3d 931 (D.C. Cir. 2021) .......................................................................10

*Mock v. Garland,*
   2023 WL 2711630 (N.D. Tex. Mar. 30, 2023) .............................. 6, 7, 11, 15, 19

*Mock v. Garland,*
   75 F.4th 563 (5th Cir. 2023) ...........................................................................11

*Mock v. Garland,*
   2023 WL 6457920 (N.D. Tex. Oct. 2, 2023) ..............................................13, 25

*Monsanto Co. v. Geerston Seed Farms,*
   561 U.S. 139 (2010) ........................................................................................24

*Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Automobile Ins. Co.,*
   463 U.S. 29 (1983) ..........................................................................................7

*People for Ethical Treatment of Animals v. Hinckley,*
   526 F. Supp. 3d 218 (S.D. Tex. 2021) ...........................................................19

*Second Amendment Found., Inc. v. ATF,*
   2023 WL 7490149 (N.D. Tex. Nov. 13, 2023).......................................*passim*

*Sherley v. Sebelius,*
   689 F.3d 776 (D.C. Cir. 2012) ...................................................................10, 11

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,*
   989 F.3d 368 (5th Cir. 2021) ..........................................................................23

*Texas v. U.S.,*
  50 F.4th 498 (5th Cir. 2022) .................................................................................................23

*U.S. v. Bradley,*
  2023 WL 2621352 (S.D. W. Va. Mar. 23, 2023) ..................................................................16

*U.S. v. Cox,*
  906 F.3d 1170 (10th Cir. 2018)..............................................................................................2

*U.S. v. Dangleben,*
  2023 WL 6441977 (D.V.I. Oct. 3, 2023)..............................................................................17

*U.S. v. Dixson,*
  2023 WL 7416327 (E.D. Mo. Aug. 30, 2023) ......................................................................17

*U.S. v. Golding,*
  332 F.3d 838 (5th Cir. 2003).................................................................................................14

*U.S. v. Gonzales,*
  2011 WL 5288727 (D. Utah Nov. 2, 2011) ..........................................................................13

*U.S. v. Gresham,*
  118 F.3d 258 (5th Cir. 1997)...................................................................................................2

*U.S. v. Holton,*
  639 F. Supp. 3d 704 (N.D. Tex. 2022) ........................................................................... 16, 17

*U.S. v. Matthews,*
  312 F.3d 652 (5th Cir. 2002)........................................................................................... 10, 11

*U.S. v. Miller,*
  2023 WL 6300581 (N.D. Tex. Sept. 27, 2023).....................................................................18

*U.S. v. Padgett,*
  2023 WL 3483929 (D. Alaska Jan. 4, 2023).........................................................................17

*U.S. v. Shepherd,*
  2024 WL 71724 (S.D. Miss. Jan. 5, 2024) ...........................................................................15

*U.S. v. Sredl,*
  2023 WL 3597715 (N.D. Ind. May 23, 2023)......................................................................16

*U.S. v. Texas,*
  599 U.S. 670 (2023).....................................................................................................20, 21, 22

*U.S. v. Trujillo,*
  2023 WL 3114387 (D.N.M. Apr. 26, 2023)................................................................... 16, 17

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) .................................................................................................................. 10

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) .................................................................................................................. 18

*Wash. St. Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ............................................................................................................ 15, 19

**Statutes**

5 U.S.C. § 706 ................................................................................................................................ 11

26 U.S.C. § 5841 ........................................................................................................................... 18

26 U.S.C. § 5845(a) ........................................................................................................................ 3

26 U.S.C. § 5845(a)(3) .................................................................................................................... 2

26 U.S.C. § 5845(c) .................................................................................................................. 5, 25

26 U.S.C. § 6511 ............................................................................................................................. 4

26 U.S.C. § 7421(a) .................................................................................................................... 1, 2

**Legislative Materials**

H.R. Rep. No. 83-1337 (1954) ...................................................................................................... 6

Pub. L. 591 (H.R. 3800) (1954) .................................................................................................... 6

**Regulations**

27 C.F.R. § 478.11 ........................................................................................................................ 25

*Factoring Criteria for Firearms With Attached "Stabilizing Braces,"*
88 Fed. Reg. 6478 (Jan. 31, 2023) ...................................................................................... *passim*

**Other Authorities**

IRS,
Rev. Rul. 61–45, 1961-1 C.B. 663, 1961 WL 12798 (Jan. 1, 1961) ..................................... 6

*NFA Handbook* § 7.2.4.1,
https://perma.cc/P3NL-G35G ................................................................................................ 9

## INTRODUCTION

Over the last decade, firearm manufacturers and sellers have marketed short-barreled rifles equipped with so-called "stabilizing braces." In doing so, they maintained to consumers that brace-equipped weapons are not subject to longstanding regulations on short-barreled rifles under the National Firearms Act ("NFA"), despite the fact that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") never interpreted the NFA to provide such assurances. In response to the resulting widespread evasion of federal law, ATF issued a rule that explains when a brace-equipped weapon is a short-barreled rifle under the NFA. *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023) ("Rule"). As explained in Defendants' summary-judgment motion, ECF No. 107 ("Defs.' Br."), this Rule is consistent with the NFA, reasonably explained, procedurally compliant, and constitutionally sound. In their reply, ECF No. 108 ("Pls.' Reply"), Plaintiffs offer no persuasive response to Defendants' jurisdictional or merits arguments, and thus have failed to carry their burden in challenging the Rule's validity. This Court should therefore grant summary judgment in Defendants' favor on all of Plaintiffs' claims.

## ARGUMENT

### I.    The Tax Anti-Injunction Act bars Plaintiffs' claims insofar as they seek relief that would obstruct the assessment or collection of the NFA's tax.

The Tax Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), bars Plaintiffs' claims to the extent they seek relief that would restrain the NFA's enforcement against any brace-equipped pistols. As explained, *see* Defs.' Br. 11–13, the AIA generally prohibits lawsuits, like this one, that would "obstruct the collection of taxes," *Hotze v. Burwell*, 784 F.3d 984, 996 (5th Cir. 2015) (citation omitted), including suits to restrain "activities which are intended to or may culminate in the assessment or collection of taxes," *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983) (citation omitted). Accordingly, the AIA bars Plaintiffs' claims not only insofar as they seek to directly restrain enforcement of the NFA's tax against any brace-equipped pistols, but also to the extent they seek to enjoin enforcement of other

1

requirements that operate as part of the NFA's taxing scheme. *See* Defs.' Br. 12–13.

In arguing otherwise, Plaintiffs try to distance the relief they request in this lawsuit from the NFA's tax in two ways. *First*, they suggest that their proposed injunction would "not stop" assessment or collection of the NFA's tax—which they concede the AIA would prohibit. Pls.' Reply 4 (quoting *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 14 (2015)). But that is exactly what their proposed injunction would do. Plaintiffs ask the Court to enjoin Defendants from "implementing, enforcing, or otherwise applying the NFA's definition of 'rifle'" with regard to any of Plaintiffs' "braced pistols." Pls.' Reply 3. In other words, Plaintiffs seek to prevent enforcement of the NFA's taxing scheme against them, even if they make or transfer short-barreled rifles subject to the NFA's tax. *See* 26 U.S.C. § 5845(a)(3), (4). Plaintiffs' proposed injunction would thus directly "restrain[] the assessment [and] collection of [the NFA's] tax" against any brace-equipped short-barreled rifles that Plaintiffs sell or purchase in the future—relief that is barred under the AIA's plain text. *See* 26 U.S.C. § 7421(a).

*Second*, Plaintiffs suggest that the AIA at least does not prevent them from seeking to enjoin enforcement of the NFA's registration requirement. Pls.' Reply 4. But as explained, *see* Defs.' Br. 12–13, the NFA's registration requirement functions as part of the NFA's integrated "taxing scheme," *U.S. v. Cox*, 906 F.3d 1170, 1179 (10th Cir. 2018), and is aimed at "facilitat[ing] enforcement" of the taxes themselves, *U.S. v. Gresham*, 118 F.3d 258, 261 (5th Cir. 1997). An injunction prohibiting enforcement of the NFA's registration requirement would thus indisputably "restrain" the "collection of information that would aid in the assessment of taxes"—precisely the type of relief that the Fifth Circuit has long recognized is barred by the AIA. *See Linn*, 714 F.2d at 1282.

And contrary to what Plaintiffs contend, *see* Pls.' Reply 4–5, the Supreme Court's decision in *CIC Services, LLC v. IRS*, 593 U.S. 209 (2021), does not support the opposite conclusion. There, the Supreme Court held that the AIA did not bar a lawsuit challenging a "standalone reporting requirement, whose violation" could result in a tax penalty. *Id.* at 226. In other words, the challenged

reporting requirement operated *independently* of any tax, which served only as a penalty for noncompliance. *Id.* So while the lawsuit, if successful, would have restrained the collection of tax penalties for any violation of the challenged reporting requirement, the Court explained that the reporting requirement and the tax were "several steps removed from each other." *Id.* at 220–21. And the Court further explained that, because the tax in question constituted a penalty for violating the reporting requirement (which was also backed by criminal sanctions), applying the AIA's prohibition would have meant that a party could not bring a challenge unless it first violated the reporting requirement and subjected itself to criminal punishment. *Id.* at 221–22.

Here, by contrast, the NFA's registration requirement is not "several steps removed" from the statute's tax. Rather, it is a critical part of the NFA's integrated taxing scheme, as it is *necessary* to enable ATF to assess and collect the statute's tax. Indeed, unlike in *CIC*, where the plaintiff "st[ood] nowhere near the cusp of tax liability," *id.* at 221, the NFA's tax liability attaches immediately if a Plaintiff transfers or makes a brace-equipped weapon that is a "firearm" under 26 U.S.C. § 5845(a), and that weapon's registration is necessary to allow ATF to assess and collect the applicable tax. That is markedly different than the situation addressed in *CIC*. The NFA's tax also is not a penalty for noncompliance with an independent reporting requirement; it is an excise tax assessed upon a party's compliance with the NFA's registration requirement. And moreover, unlike in *CIC*, no Plaintiff needs to subject itself to potential criminal sanctions to challenge the NFA's application to a particular weapon. Rather, Plaintiffs can register any brace-equipped short-barreled rifles they make, transfer, or purchase, pay the requisite taxes, and then sue for refunds, at which time they can litigate the legality of applying the NFA's taxing scheme to their weapons. *See* Defs.' Br. 12. That they have instead filed this lawsuit to prevent prospective enforcement of that taxing scheme cannot justify setting the AIA's jurisdictional bar aside, lest it be stripped of all meaning. *See Franklin v. U.S.*, 49 F.4th 429, 434 (5th

Cir. 2022) (instructing courts to "zealously guard[]" the pay-first-sue-later rule required by the AIA).[1]

Nor, as Plaintiffs contend, does the exception to the AIA recognized in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), apply. Under that narrow exception, claims seeking to restrain the assessment or collection of taxes may proceed only if (i) the plaintiff demonstrates "irreparable injury and inadequacy of legal remedy," and (ii) it is "clear that under no circumstances could the government ultimately prevail," even "under the most liberal view of the law and the facts." *Kemlon Prods. & Dev. Co. v. U.S.*, 638 F.2d 1315, 1321 (5th Cir.) (citation omitted), *modified on other grounds*, 646 F.3d 223 (5th Cir. 1981). But Plaintiffs cannot show that they would suffer irreparable injury without an adequate remedy by complying with the AIA's pay-first-sue-later rule, because, as explained, *see* Defs.' Br. 12, they have a statutorily prescribed mechanism for seeking a tax refund and can challenge application of the NFA's taxing scheme to any brace-equipped weapon through that process, including by eventually bringing suit in federal district court. *See* 26 U.S.C. §§ 6511, 7422. And at any rate, even setting aside Defendants' positions on the merits of Plaintiffs' claims, *see infra*, it is far from "clear" that Defendants cannot *ultimately* prevail in this lawsuit "under the most liberal view of the law and the facts," *see Kemlon Prods.*, 638 F.2d at 1321, as arguments virtually identical to theirs have been rejected by numerous courts, *see* Defs.' Br. 10–11.

## II.   The Rule properly interprets the statutory definition of "rifle."

Plaintiffs challenge the Rule's interpretation of the NFA's definition of "rifle," arguing that *no* "braced pistol" can satisfy that definition. Pls.' Reply 9–10. But absent from their briefing is any serious

---

[1] *Direct Marketing* does not support Plaintiffs' position, either. There, the Supreme Court held that the Tax Injunction Act ("TIA"), a state-tax equivalent of the AIA, did not bar a challenge to a state law requiring retailers to notify customers of, and to report to the state, certain information about sales on which the retailers had not collected sales-or-use taxes. 575 U.S. at 4. The Court explained that the TIA was not concerned with "*all* activities" that may simply "*improve* a State's ability to assess and collect taxes," but rather prohibits "relief [that] *to some degree* stops" assessment or collection, *id.* at 11, 14 (emphasis added). Plaintiffs' claims fall in the latter category, as they seek to enjoin enforcement of a registration requirement that is *necessary* to enable ATF to assess and collect the NFA's tax. Moreover, like in *CIC* but unlike here, the challenged notice and reporting requirements in *Direct Marketing* were numerous steps apart from the state's assessment of taxes. *Id.* at 11.

interpretive analysis to back up that claim. And while Defendants explained how the statute's text, purpose, and prior judicial constructions all support the Rule's conclusion that a brace-equipped pistol can be a rifle, and thus a short-barreled rifle, under the NFA, Defs.' Br. 13–18, Plaintiffs have simply ignored most of Defendants' arguments, and don't cogently respond to the rest. Although their reply largely repeats the same misplaced assertions from their opening brief, a few points warrant a response.

*First*, though the task of interpreting a statute begins with its text, Plaintiffs have no argument based on the relevant statutory language. Unlike the Rule, nowhere do Plaintiffs attempt to explain what it means for "a weapon" to be "designed," "made," and "intended to be fired from the shoulder," or how to determine whether a weapon satisfies those conditions. *See* 26 U.S.C. § 5845(c). Instead, Plaintiffs simply assert that brace-equipped pistols cannot be rifles under the NFA because they are categorically not designed and intended to be fired from the shoulder—without providing *any* explanation how they reach that conclusion. But that is not statutory interpretation. And as a factual matter, it is an assertion belied by a decade's worth of evidence. *See* Defs.' Br. 4–7.

Similarly, Plaintiffs maintain that a pistol is a rifle when equipped with a "stock" but can never be a rifle when equipped with a "brace" because a "brace is not a stock." Pls.' Reply 9. Putting aside the fact that many stabilizing braces replicate common buttstocks in both form and function, *see* Defs.' Br. 4, whether there is any distinction is not relevant under the statute. Contrary to what Plaintiffs suggest, whether a weapon is a rifle does not turn on whether it is configured with what is commonly referred to as a "stock." Rather, as the Rule recognizes, a weapon configured with a buttstock, stabilizing brace, or any other component part is a rifle under the NFA if it is "designed," "made," and "intended to be fired from the shoulder." *See* 26 U.S.C. § 5845(c).

*Second*, the legislative history that Plaintiffs cite also is irrelevant to the statutory question in this case. Citing a couple committee reports from 1934, Plaintiffs suggest that the NFA was not intended to apply to "pistols and revolvers." Pls.' Reply 9–10. But Plaintiffs fail to explain how that

observation undermines the Rule's conclusion that a brace-equipped weapon designed and intended to be fired from the shoulder is a rifle under the NFA. And even assuming that conclusion is not clearly dictated by the statute's plain language, it's hard to see how legislative history from 1934 can help elucidate the meaning of the definition of "rifle," which was added to the NFA two decades later in 1954. *See* Pub. L. 591 (H.R. 3800), at 726 (1954).[2]

*Third*, in arguing that *all* "braced pistols" are designed for one-handed fire, Plaintiffs have relied exclusively on descriptions of the original stabilizing brace prototype while ignoring mountains of countervailing evidence regarding other brace-equipped pistols, especially those actually offered in the marketplace. Pls.' Br. 6, 19. In response, Defendants explained that evidence pertaining to a *single* brace cannot support Plaintiffs' categorical claim regarding the design of *all* brace-equipped pistols; and at any rate, a pistol equipped with the original prototype likely would not be classified as a short-barreled rifle under the Rule's framework. *See* Defs.' Br. 16. Plaintiffs criticize that response for not giving a definitive conclusion whether the original "prototype is covered" by the Rule. Pls.' Reply 10 n.4. But Plaintiffs apparently misunderstand how the Rule works. The Rule (and the NFA, for that matter) does not "cover" any type of stabilizing brace. It explains how ATF determines whether a particular brace-equipped weapon is designed and intended to be fired from the shoulder, and is thus a rifle. To make that determination, ATF must examine the weapon *as configured*—not in the abstract. *See* 88 Fed. Reg. at 6521, 6532. And that's because the statute requires a fact-intensive inquiry to determine the "design" and "intended" use of a particular weapon—a reality the Rule and this Court have both recognized, but Plaintiffs' categorical arguments fail to appreciate. *Mock v. Garland*, 2023 WL 2711630,

---

[2] When Congress enacted the definition of "rifle" in 1954, a House committee report confirmed that the definition was intended to replace reliance on "ordinarily accepted definitions" in determining whether a weapon is a "rifle" under the NFA. H.R. Rep. No. 83-1337, at A395. The NFA's definition of "rifle" was thus not intended to apply only to the archetypal rifle, but any weapon satisfying the criteria listed in the statute. Contemporaneous guidance from ATF reflects that same understanding. *See, e.g.*, IRS, Rev. Rul. 61–45, 1961-1 C.B. 663, 1961 WL 12798 (Jan. 1, 1961) (modified pistol met the definition of "rifle").

at *4 (N.D. Tex. Mar. 30, 2023) ("The statutory definition of 'rifle' uses terms" like "designed" and "intended" "that necessarily require" ATF "to evaluate objective weapon characteristics . . . to decide whether a particular firearm is subject to the NFA."), *rev'd on other grounds*, 75 F.4th 563 (5th Cir. 2023).

*Finally*, as this Court previously determined, Plaintiffs' arguments invoking the rule of lenity are "unpersuasive." *Id.* at *6. In their reply, Plaintiffs try to create a "grievous[]" ambiguity where there is none by claiming that the Rule "radically reinterprets" the NFA to conclude that brace-equipped pistols can be rifles. Pls.' Reply 11. But Plaintiffs point to no instance since the advent of the stabilizing brace where ATF interpreted the statutory definition of "rifle" to categorically exclude brace-equipped weapons—because it never has. In short, Plaintiffs' repeated claim throughout this litigation that ATF made an about-face in the Rule on that basic statutory question is a fiction.

## III.    The Rule is not arbitrary or capricious.

Plaintiffs' contentions that the Rule is arbitrary and capricious are similarly unavailing.

As Defendants' opening brief explains, ATF did not "entirely fail[] to consider" any important issue, *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983)—all the APA requires—much less the Rule's impact on disabled individuals or Second Amendment rights. *See* Defs.' Br. 18–19. The Rule adequately addresses both these issues and is accordingly not arbitrary on this score. *See* 88 Fed. Reg. at 6508–09, 6548.

Plaintiffs also continue to mischaracterize ATF's "change in position." As Defendants have explained repeatedly: ATF never interpreted the NFA to categorically exempt brace-equipped firearms, and prior to the Rule, ATF classified numerous brace-equipped firearms as short-barreled rifles. *Id.* at 6484; AR 18–25, 54–57, 70–91. It misrepresents the factual record to state otherwise, as the Rule itself and the administrative record both include classification letters determining that certain braced weapons were short-barreled rifles. And the 98-page Rule thoroughly takes stock of ATF's

past classifications and sets forth ATF's rationale for the Rule's adoption and approach, an effort that can hardly be considered "wholly conclusory." *See* Pls.' Reply 13.

Next, Plaintiffs criticize a purported failure to address various reliance interests—articulating those interests for the first time in reply—to no avail. ATF appropriately considered whether and to what extent the Rule affects potential reliance interests. *See* 88 Fed. Reg. at 6507–08. Where an agency changes course, it must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of the Univ of Cal.*, 140 S. Ct. 1891, 1915 (2020). The mere existence of reliance interests does not bar the agency from changing its position: it must simply provide a "reasoned explanation" for doing so. *Id.* at 1916.

Plaintiffs contend that ATF simply ignored the "millions of Americans who owned braced pistols" without knowing they were subject to the NFA. Pls.' Reply 13. But Plaintiffs inflate the reliance interests at stake by incorrectly assuming that those people possessed braced weapons only because ATF purportedly declared them NFA-exempt. As Defendants have explained, that's just not the case, as ATF has never provided the "regulatory certainty" to which Plaintiffs refer. *See id.*; *see also* 88 Fed. Reg. at 6507 ("ATF never declared that the marketing of a device as a 'stabilizing brace' when equipped on a firearm removes that firearm from the ambit of the NFA.").

Contrary to Plaintiffs' assertions, the Rule expressly acknowledges, but properly contextualizes, potential reliance interests. Specifically, it explains that ATF's prior classification letters were always "limited to the particular firearm configured with the particular device" submitted, and "its analysis was based on the objective design features of that device or firearm." *Id.* at 6507. Thus, individuals who relied "on a classification for another person's device or firearm" did so improperly from the start. *Id.* And for individuals who correctly relied on the classification of their particular weapon, ATF's NFA guidance has long instructed that "classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in law or regulations." *Id.* (quoting

*NFA Handbook* § 7.2.4.1, https://perma.cc/P3NL-G35G). In other words, their reliance was *always* conditioned on the possibility that ATF would revisit and correct erroneous classifications, as it has done here, and in promulgating the Rule, ATF considered evidence demonstrating that the regulated public understood that to be the case.[3] Further, in recent years, ATF's classification analysis has considered whether a weapon's objective design features indicate that it was designed, made, and intended to be fired from the shoulder—just like the Rule—and the Rule does not reflect as dramatic a change as Plaintiffs contend. The Rule thus explains that ATF reasonably concluded that any potential reliance interests are significantly reduced. 88 Fed. Reg. at 6508.

The Rule nonetheless accounts for any disruption to current possessors' reliance interests. The upshot of the Rule is merely to inform these individuals that they must register their brace-equipped short-barreled rifles pursuant to the NFA, a minimal burden that *preserves* their interest in continued possession. *Id.* at 6507–08. Plaintiffs don't dispute this. Instead, Plaintiffs attempt to show that the Rule imposes criminal liability and affects Second Amendment rights just to distract from the fact the Rule provides multiple compliance options allowing for continued possession. Indeed, the Rule adopted these options, in part, to accommodate individuals' interests in continued possession, *id.* at 6508, belying Plaintiffs' suggestion that ATF ignored such interests, *see* Pls.' Reply 14.

At any rate, ATF provided a reasonable explanation for the Rule's adoption even in light of potential reliance interests. As the Rule explains, the agency determined that these interests did not "outweigh the effective enforcement" of NFA and GCA requirements "pursuant to the best interpretation of" the relevant statutory provisions. 88 Fed. Reg. at 6508. Because Congress imposed

---

[3] *E.g.,* AR Video, ARPistolBraceComparison_2019OCT22 at 4:15-4:38 (describing ATF's classifications and explaining, "It's gray area, it's murky. You guys need to do your own research and … realize it could change next week and [ATF] could say no more pistol braces and now we're all out of a bunch of luck and have to go get your tax stamps and register your SBRs."); AR Video, ATFCompliantSigSB15StabilizingBraceGetOneTactiholics _2014NOV19 at 6:19-6:34 ("Could the ATF change their mind and come back and say hey we're going to pull these things from the market, it does change the classification? Absolutely.").

specific controls on short-barreled rifles, ATF seeks to prevent circumvention of those controls by curbing the proliferation of unregistered brace-equipped short-barreled rifles, regardless of whether any individual has an alleged interest in continuing to possess such a weapon. *Id.*; *see also Regents*, 140 S. Ct. at 1914 (explaining that an agency could have properly found that "reliance interests in benefits that it views as unlawful are entitled to no or diminished weight"). The Rule also benefits possessors and manufacturers by providing clear guidance they can rely upon going forward. Therefore, the Rule shows that ATF was "cognizant" of any reliance interests that the Rule affects and provides "'good reasons' for concluding that" such interests "were insufficient to hold off" on the Rule. *See MediNatura, Inc. v. FDA*, 998 F.3d 931, 943 (D.C. Cir. 2021) (citation omitted). The APA requires nothing more.

Finally, as explained, *see* Defs.' Br. 20–21, 39–42; *infra* 17–18, the Rule's straightforward approach is not "[i]mpossibly [v]ague," Pls.' Reply 14. The Rule is thus neither arbitrary nor capricious.

## IV.   The Court may properly consider Defendants' logical outgrowth arguments.

Plaintiffs argue that, under the law-of-the-case doctrine, the Fifth Circuit's decision on their prior appeal completely forecloses the Court from considering Defendants' logical outgrowth summary judgment arguments. Pls.' Reply 7–8. That doctrine, however, does not bind the Court here.

"[L]aw of the case is not a jurisdictional rule, but a discretionary practice," and is neither a "limit" on the Court's power nor "inviolate." *U.S. v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *Guedes v. ATF*, 45 F.4th 306, 312 (D.C. Cir. 2022) ("The doctrine is a discretionary prudential doctrine, not a jurisdictional bar."). Moreover, "the decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute law of the case for the purpose of further proceedings and does not limit or preclude the parties from litigating the merits." *Sherley v. Sebelius*, 689 F.3d 776, 781 (D.C. Cir. 2012); *Univ. of Texas v. Camenisch*, 451 U.S. 390. 395 (1981) ("A party thus is not required to prove his case in full at a preliminary-injunction hearing . . . and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits.").

Additionally, the doctrine has established exceptions, including when "there has been an intervening change of law by controlling authority," and "the earlier decision is clearly erroneous and would work a manifest injustice." *Matthews*, 312 F.3d at 657.

These exceptions and the particular circumstances of this case counsel against the application of the law-of-the-case doctrine to preclude consideration of Defendants' arguments. To begin, the Fifth Circuit's decision reviewed this Court's denial of a preliminary injunction. *See Mock*, 75 F.4th at 567. Although the preliminary-injunction exception to the law-of-the-case doctrine may not apply "where the earlier ruling . . . was established in a fully considered legal decision based on a fully developed factual record and decisionmaking process that included full briefing and argument without unusual time constraints," *Sherley*, 689 F.3d at 782, that was not the case here. The Fifth Circuit did not review a full factual record, as the administrative record supporting the Rule was not before it. *Lewis v. U.S. & U.S. Army Corps of Engr's*, 2019 WL 13115362, at *2 (E.D. La. Mar. 28, 2019) ("Courts reviewing an agency's action under the APA must review 'the whole [administrative] record or those parts of it cited by a party.'" (quoting 5 U.S.C. § 706)). Further, the Fifth Circuit had virtually no briefing regarding the legislative-interpretive rule distinction, and did not focus on that distinction or logical outgrowth at oral argument. *See Mock*, 75 F.4th at 590 (Higginson, J., dissenting) ("[P]laintiffs' briefing on the matter is a half-page discussion consisting entirely of legal error.").

Moreover, despite its preliminary-injunction posture, *Mock* created a new legal test for determining whether a rule is legislative and therefore subject to notice-and-comment requirements. *See id.* at 579–80 (noting that the Circuit had "not laid out a clear test appropriate to resolve the question" and adopting a five-factor test). Defendants maintain that test is clearly erroneous insofar as it conflicts with prior Fifth Circuit precedent, and preserve their arguments to that effect for purposes of further review. *See* Defs.' Br. 23–24. However, even if the Court concludes that it is bound by that legal test, the Court should still consider Defendants' arguments as to its application. As that

11

test did not previously exist, Defendants were not given the opportunity to brief, and the Fifth Circuit therefore had no briefing before it, addressing its application. Accordingly, it is appropriate for this Court to consider Defendants' application arguments in their full presentation of the merits. *See In re Wright*, 2004 WL 569517, at *5 n.27 (W.D. Tex. Mar. 8, 2004) ("But if the issues were not briefed, the law of the case doctrine does not bar this Court from addressing them now."). The additional exceptions to the law-of-the-case doctrine support this result: the *Mock* decision itself represents an intervening change in law, as it adopts a completely new legal test, and to invalidate the Rule based on a legal test Defendants never had the opportunity to brief would work a manifest injustice.

## V.   The NFA's taxation and registration requirements on dangerous and unusual weapons like short-barreled rifles do not violate the Second Amendment.

Plaintiffs also facially challenge the Rule under the Second Amendment. In their reply, they contend that stabilizing braces are bearable arms under the Second Amendment, Pls.' Reply 15–17, that the Second Amendment protects the right to keep and bear braced-equipped weapons, including brace-equipped weapons that are short-barreled rifles under the NFA, *id.* at 17–19, and that the Rule (or, alternatively, the NFA) violates the Second Amendment by subjecting those weapons to registration and taxation requirements, *id.* at 19–22. Their claim fails on each score.

### A.   Like other firearm accessories, stabilizing braces are not bearable arms.

Plaintiffs dispute that stabilizing brace are accessories not protected by the Second Amendment, likening braces to high-capacity magazines. *Id.* at 15. But unlike the magazines at issue in *Hanson v. D.C.*, 2023 WL 3019777, at*6 (D.D.C. Apr. 20, 2023), and *Duncan v. Bonta*, 2023 WL 6180472, at *7–9 (S.D. Cal. Sept. 22, 2023), stabilizing braces do not "render a firearm operable." And Plaintiffs do not attempt to distinguish braces from silencers, which similarly "cannot cause harm on [their] own" and are not "of any use 'independent of [their] attachment to a firearm,'" *Second Amendment Found., Inc. v. ATF* (*SAF*), 2023 WL 7490149, at *13 (N.D. Tex. Nov. 13, 2023) (collecting cases holding silencers are not bearable arms), arguing instead for a broad right to possess any component

that "affects the way a firearm is used," Pls.' Reply 16. Here, "[n]othing in record evidence indicates that braces are necessary for the actual use of a firearm." *SAF*, 2023 WL 7490149, at *13. Therefore, braces are not bearable arms independently protected by the Second Amendment.

### B. Short-barreled rifles are dangerous and unusual weapons outside the protections of the Second Amendment.

Plaintiffs cannot seriously dispute that at least some brace-equipped weapons are designed and intended to be fired from the shoulder, and thus can be short-barreled rifles under the NFA. Indeed, many brace-equipped weapons have been marketed, sold, and used as such, as evidenced in the Rule. *See* Defs.' Br. 4. Nor do Plaintiffs dispute that the Second Amendment does not protect dangerous and unusual weapons. Instead, Plaintiffs argue that braced weapons—and short-barreled rifles more broadly—are not dangerous and unusual weapons.[4,5] Pls.' Reply 17.

But every court to consider whether short-barreled rifles are dangerous and unusual weapons, both before and after *Bruen*, has reached the opposite conclusion. *See*, *e.g.*, *U.S. v. Gonzales*, 2011 WL 5288727, at *3–4 (D. Utah Nov. 2, 2011); Defs.' Br. 31 n.9 (collecting cases). To hold otherwise could cast doubt on criminal indictments, convictions, and sentences across the country, even in cases where as-applied challenges under the Second Amendment have been rejected. That a short-barreled rifle is made from a stabilizing brace rather than a shoulder stock is immaterial to this analysis. The resulting weapons, each meeting the NFA's definition of a short-barreled rifle, share the same characteristics that led Congress to regulate them in the first place: namely, their ability to "be easily concealed like a handgun" with the "firepower and accuracy of a rifle." 88 Fed. Reg. at 6498.

---

[4] The proper inquiry for Plaintiffs' facial challenge is whether short-barreled rifles as defined by the NFA are dangerous and unusual weapons, not whether semi-automatic pistols are commonly used for self-defense, as the Court previously considered. *See Mock v. Garland*, 2023 WL 6457920, at *9 (N.D. Tex. Oct. 2, 2023). Plaintiffs do not base their arguments on the number of semi-automatic pistols.

[5] In granting Plaintiffs' preliminary-injunction motion, the Court based its finding of irreparable harm, in part, on a right of personal gunsmithing incorporated in the Second Amendment, as well as a right to make "safety-improving modifications" to weapons. *Id.* at *10–11. But Plaintiffs have not relied on either alleged right in support their motion for summary judgment, thus waiving any such arguments.

The Court should also reject Plaintiffs' argument that brace-equipped short-barreled rifles—the weapons to which the Rule applies—are in "common use." *See* Pls.' Reply 17. Assuming an estimated 3 million brace-equipped weapons in circulation, they still represent less than 1% of all firearms in the United States. *Compare* 88 Fed. Reg. at 6560 (estimating 3 million brace-equipped firearms in circulation), *with Kolbe v. Hogan*, 849 F.3d 114, 126 (4th Cir. 2017) (more than 300 million guns in circulation in the United States in 2017).[6] As explained, *see* Defs.' Br. 32, these numbers fall short of the exemplary numbers in *Hollis v. Lynch*, 827 F.3d 436, 449–50 (5th Cir. 2016).

At base, the number of brace-equipped short-barreled rifles in circulation does not change their dangerous and unusual characteristics: increased lethality and concealability. And Plaintiffs do not dispute that unlawful possession of a short-barreled rifle is a crime of violence for purposes of a sentence enhancement, underscoring their dangerous character. *See U.S. v. Golding*, 332 F.3d 838 (5th Cir. 2003). Indeed, "[a]s the regulatory history reveals, the very point of promulgating the Final Rule was the agency's discovery that there was an emerging evasion of the NFA through evolving models of braces and brace-equipped pistols." *SAF*, 2023 WL 7490149, at *14. "The fact that over this same period, brace-equipped pistols that effectively operated as SBRs have been used by criminal gunmen to successfully execute mass shootings of innocent people lends additional support to the conclusion that brace-equipped firearms deemed SBRs under the Final Rule are 'dangerous and unusual.'" *Id.*

As the court in *SAF* succinctly stated: "[N]o court has held that [short-barreled rifles] are no

---

[6] The record does not support Plaintiffs' suggestion that 40 million brace-equipped weapons are currently in circulation. *See* Pls.' Reply 17. Plaintiffs take that figure from a Congressional Research Service Report estimating there could be as many as 10–40 million braces (not brace-equipped short-barreled rifles) in circulation. *Id.* But that Report concedes that its estimate is not authoritative or based on any "available statistics," but instead relies upon undisclosed "unofficial estimates." https://crsreports.congress.gov/product/pdf/IF/IF11763 at 2. These figures thus lack a proper foundation. And in any event, the Rule addressed comments citing these materials and declined to adjust its estimate of 3 million brace-equipped short-barreled rifles. 88 Fed. Reg. 6560. Given ATF's reasoning, the 3 million estimate is more likely accurate than Plaintiffs' inflated estimate and should be utilized for purposes of this analysis.

longer unusually dangerous, associated with criminal activity, or otherwise contrary to Congress's stated position during the passing of the NFA." 2023 WL 7490149, at *14. Thus, the Court should not "take the tremendous step of finding otherwise as to traditional SBRs and brace-equipped firearms equivalent to SBRs." *Id.* Because at least some braced weapons are short-barreled rifles, and short-barreled rifles are dangerous and unusual weapons, Plaintiffs cannot show that there is "no set of circumstances exists under which" the Rule would be constitutionally valid, and their facial challenge thus fails. *Wash. St. Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quotations omitted).

### C. The NFA's tax and registration provisions do not implicate the Second Amendment.

Even if the Court determines that short-barreled rifles are not dangerous and unusual and are instead in common use, Plaintiffs' Second Amendment claims still fail because "[t]he NFA does not bar [] possession of these firearms. It simply requires their registration[]" and the payment of a tax. *U.S. v. Shepherd*, 2024 WL 71724, at *1 (S.D. Miss. Jan. 5, 2024) (holding that the charge of possessing an unregistered short-barreled shotgun did not violate defendant's Second Amendment rights). Plaintiffs fail to support their conclusory argument of "onerous and ongoing compliance requirements" with any particular citations or evidence. Instead, they challenge the "NFA's regulation[s]" only in broad strokes. To be clear, no court has ever broadly struck down the NFA's requirements as unconstitutional. Plaintiffs have not shown that any of the NFA's requirements— which include "minor inconveniences," *Lane v. Holder*, 703 F.3d 668, 673 (4th Cir. 2012), "that all citizens bear as ancillary to living under a government," *Bezet v. U.S.*, 714 F. App'x 336, 340 (5th Cir. 2017)—fall outside the variety of permissible gun regulations under the Second Amendment, as this Court previously recognized. *Mock*, 2023 WL 2711630, at *7 (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022); *Bezet*, 714 F. App'x at 340).

15

**D.      The NFA is sufficiently similar to historical taxation and registration regulations to satisfy *Bruen*.**

Plaintiffs do not dispute the existence of colonial era taxation, registration, and inspection regulations. Instead, they argue that Defendants' proffered historical analogues fail *Bruen*'s "'how' and 'why' metrics" and are otherwise untimely or too dissimilar to support the NFA's regulation of short-barreled rifles. Pls.' Reply 19. But their attempts to parse the historical records reflect an improper attempt to require Defendants to identify a historical twin for the NFA. *Bruen*, 142 S. Ct. at 2132–33. Because the NFA's taxation and registration requirements are consistent with the Nation's historical tradition of firearm regulation, they "pass constitutional muster" under *Bruen*. *Cf. U.S. v. Holton*, 639 F. Supp. 3d 704, 711 (N.D. Tex. 2022) (Boyle, J.) (holding that the GCA's serial number provisions are sufficiently analogous to Founding-era registration and taxation regulations); *see also U.S. v. Trujillo*, 2023 WL 3114387, at *6 (D.N.M. Apr. 26, 2023) (same).

First, Plaintiffs have not shown that the "how" of the historical analogues Defendants cite was materially different or less burdensome than the requirements of the NFA. These historical regulations often applied to a broader class of weapons and included individualized, door-to-door inspections. *See* Defs.' Br. 35. The challenged portions of the NFA, by comparison, only apply to a subset of dangerous weapons, and the registration requirements can often be completed using an electronic form. *U.S. v. Sredl*, 2023 WL 3597715, at *4 (N.D. Ind. May 23, 2023) ("It bears repeating that [the NFA] doesn't prohibit unregistered possession of all firearms—it regulates unregistered possession of firearms as defined under § 5845."). Far from standing alone, these registration, taxation, and inspection regulations existed in nearly half of the colonies around the time of the ratification of the Second Amendment. *See* Defs.' Br. 35; *U.S. v. Bradley*, 2023 WL 2621352, at *5 (S.D. W. Va. Mar. 23, 2023) ("Early legislatures and Founders did not shy away from regulating the trade and movement of firearms."). Thus, the record and weight of authority reflects that the NFA's registration and taxation requirements place a lesser, or at least comparable, burden on the right to possession of a

firearm for self-defense as these historical analogues. *Cf. Holton*, 639 F. Supp. 3d at 711; *see also Trujillo*, 2023 WL 3114387, at *6. Plaintiffs fail to identify any case holding to the contrary.

The "why" of these historical regulations is also sufficiently similar to the NFA to satisfy *Bruen*. Like their historical analogues, the NFA's short-barreled rifle taxation and registration requirements do not "disarm" anyone. *See* Pls.' Reply 19. Rather, they facilitate firearms tracing and otherwise help ensure dangerous individuals do not obtain firearms, policy goals reflected in these historical analogues. *Cf. Holton*, 639 F. Supp. 3d at 712; *Trujillo*, 2023 WL 3114387, at *14; *see also U.S. v. Padgett*, 2023 WL 3483929, at *9 (D. Alaska Jan. 4, 2023) ("There was significant regulation of firearms in colonial America" like "registration and safety requirements," "designed to ensure responsible and safe gun ownership."); *U.S. v. Dangleben*, 2023 WL 6441977, at *8 (D.V.I. Oct. 3, 2023) ("These muster and registration laws, in addition to taxes on personally held firearms, allowed the government to roughly account for and track the location of the firearms in colonial America."); *U.S. v. Dixson*, 2023 WL 7416327, at *6 (E.D. Mo. Aug. 30, 2023) (collecting cases holding that the GCA's serial number requirements are consistent with the Nation's historical tradition of firearms regulation).

## VI.    The Rule is not void-for-vagueness.

Plaintiffs continue to assert that the Rule "provides no meaningful clarity to the public on what constitutes an impermissible stabilizing brace," Pls.' Reply 23, while simultaneously acknowledging that the Rule will classify or reclassify 99% of brace-equipped weapons as NFA-regulated short-barreled rifles, Pls.' Br. 1; *see also* AR 48839. And, tellingly, Plaintiffs have still failed to identify even a single weapon-brace combination where the Rule's approach would render the classification of that weapon unclear. That's because, in most or all cases (like the individual Plaintiffs'), the Rule's application is clear for reasons Defendants have explained. *See* Defs.' Br. 39–42.[7] But it's

---

[7] Contrary to Plaintiffs' contentions, Pls.' Reply 23 n.12, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, merely underscores that vagueness standards should not "be mechanically applied," and the "degree

also worth noting that while some braces may assist individuals with disabilities, the need for the Rule stems from the fact that manufacturers were specifically designing and marketing most stabilizing braces not only to facilitate shoulder-firing but also to circumvent NFA requirements. *See* 88 Fed. Reg. at 6497. Thus, the application of the Rule's balancing test to the majority of current brace-equipped firearm designs will be clear—and will classify them as short-barreled rifles—and Plaintiffs cannot seriously contend that the Rule provides no meaningful clarity.

Additionally, Plaintiffs' attempts to subject the Rule to heightened vagueness scrutiny are unpersuasive. Plaintiffs assert that heightened scrutiny is warranted because the Rule threatens to inhibit constitutionally protected conduct, but for all the reasons set forth previously, the Rule does not infringe or even implicate Second Amendment rights. *See* Defs.' Br. 30–39; *supra* 12–17. Plaintiffs also contend that heightened scrutiny is warranted because the Rule "attaches criminal consequences." Pls.' Reply 23. But the NFA, not the Rule, attaches criminal penalties. *See* 26 U.S.C. §§ 5841, 5861(d), 5871. Indeed, if an individual were prosecuted for the possession of an unregistered brace-equipped short-barreled rifle, that prosecution would be pursuant to the NFA, and the court presiding over such an action would determine whether or not the weapon was a short-barreled rifle under the statute, not the Rule. *See, e.g., U.S. v. Miller*, 2023 WL 6300581 (N.D. Tex. Sept. 27, 2023). Thus, neither argument provides any basis to subject the Rule to heightened scrutiny.

Finally, Plaintiffs argue that they need not show the Rule is vague in all its applications in order to mount a facial challenge. Pls.' Reply 24. That's incorrect, but under any formulation, Plaintiffs have fallen short of carrying their burden, as they have not even attempted to demonstrate the Rule is vague

---

of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." 455 U.S. 489, 498 (1982). In describing which aspects of an enactment a court might consider, the Court noted that economic regulations may be subject to a less strict test. *Id.* But it also listed other considerations, like the one Defendants cited—whether the "regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry"—as well as whether the regulation imposes civil penalties or includes a scienter requirement. *Id.* Plaintiffs' reading of *Hoffman Estates* is thus unnecessarily cramped, and not supported by the context of the Court's analysis.

in *any* application. *See People for Ethical Treatment of Animals v. Hinckley*, 526 F. Supp. 3d 218, 226 (S.D. Tex. 2021) ("A facial challenge . . . means a claim that the law is invalid *in toto*—and therefore incapable of any valid application." (citations omitted)). Facial vagueness challenges are "disfavored for several reasons," including because they "often rest on speculation." *Wash. State Grange*, 552 U.S. at 450 (explaining facial vagueness challenges also run contrary to principles of judicial restraint and short circuit the democratic process). Plaintiffs' vagueness claim does just that: Plaintiffs ask the Court to invalidate the Rule based on imagined applications, even though the individual Plaintiffs' declarations support that the Rule's test can be applied without issue in at least some cases. *See* Defs.' Br. 40; *see also SAF*, 2023 WL 7490149, at *11. To the extent an actual design presents a close case, an as-applied challenge may be appropriate; however, Plaintiffs' hypothetical uncertainty regarding unspecified designs provides no basis to invalidate the Rule on its face as void for vagueness, or for this Court to reconsider its prior holding. *See Mock*, 2023 WL 2711630, at *7.

## VII.   The Rule does not violate the Constitution's structural protections.

Plaintiffs maintain that the Rule violates the Take Care Clause and "related structural protections," while abandoning several cases on which they previously relied, Pls.' Br. 37 n.26. Now, they cite for the first time *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and *Bond v. U.S.*, 564 U.S. 211 (2011). But neither case involved challenges to the Executive's exercise of delegated rulemaking authority. And importantly, Plaintiffs fail to engage whatsoever with the intelligible-principle standard that governs delegations of power to the Executive Branch. *See* Defs.' Br. 43. Also, the two Take Care Clause cases that Plaintiffs cite declined to find either a Take Care Clause violation or a private right of action. *See Las Ams. Immigrant Advocacy Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1181 (D. Or. 2021); *Citizens for Resp. & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 130 (D.D.C. 2018). In sum, these "constitutional structure" claims remain nothing more than Plaintiffs' statutory objections repackaged under broad separation-of-powers principles, and thus fail for the same reasons. *See* Defs.' Br. 13–17.

**VIII.   In all events, any relief should be narrowly tailored to redress Plaintiffs' injuries.**

    **A.   Universal vacatur of the Rule would be improper.**

Plaintiffs insist that this Court should vacate the Rule "in its entirety." Pls.' Br. 40. But across two briefs, they have not tried to justify that far-reaching remedy or explained how, in this case, it would comport with fundamental constraints on the Court's remedial authority. Instead, the upshot of their argument is simple: Because the Fifth Circuit has, at times, described vacatur as the "default" remedy in APA cases, this Court must reflexively vacate the Rule universally, without paying mind to the consequences of such a sweeping remedy or whether it is necessary to provide Plaintiffs complete relief. But that would be misguided. As explained, *see* Defs.' Br. 45–48, universal vacatur of the Rule is neither required, necessary, or justifiable, and Plaintiffs' contrary arguments are unpersuasive.

*First*, Plaintiffs suggest that this Court must universally vacate the Rule regardless of whether that relief is necessary to redress their asserted injuries. Pls.' Reply 30. But it is this Court's constitutional obligation to ensure that any remedy it enters is narrowly "tailored to redress" Plaintiffs' "particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018)—an obligation reinforced by the equitable principle that a remedy be no broader "than necessary" to provide a plaintiff "complete relief," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *accord U.S. v. Texas*, 599 U.S. 670, 702 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment) ("*Any remedy* . . . must not be more burdensome to the defendant than necessary to redress the complaining parties." (cleaned up with emphasis added)). Plaintiffs do not contend that the APA uprooted or modified those constitutional or equitable limits on this Court's remedial authority. Nor do they dispute that vacatur, like all equitable remedies, is subject to them.[8] *See, e.g., Cargill v. Garland*, 57 F.4th

---

[8] *See, e.g., Texas*, 599 U.S. at 702 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment) (explaining that, if there is a power to vacate agency action under § 706, it is an "equitable power"); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) ("Undeniably, vacatur [of agency action] is 'equitable relief.'" (citation omitted)).

447, 472 (5th Cir. 2023) (explaining that any remedy in an APA case must be narrowly tailored). And so whether vacatur has been described as a "default" remedy or not, it is still Plaintiffs' burden to show that, in *this* case, universal vacatur would be consistent with both constitutional and equitable remedial principles. *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 389 (5th Cir. 2023) ("[At the merits stage], the plaintiffs will have to *prove* that whatever [relief] they request is broad enough to protect against their proven injuries and no broader.").[9] But Plaintiffs offer no argument or evidence on that score. Thus, there is nothing in this record on which the Court can conclude that universal vacatur is necessary—or that a party-specific remedy would be inadequate—to provide Plaintiffs complete relief.

*Second*, although several courts—including another court within this District—have determined that other plaintiffs challenging the Rule are likely not entitled to relief, Plaintiffs encourage this Court to brush that consideration aside and universally vacate the Rule anyways. Pls.' Reply 31. Indeed, Plaintiffs go so far as to ascribe to the Fifth Circuit the proposition "that it is appropriate for 'one district court [to] make a binding judgment for the entire country,'" irrespective of whether other courts are considering the same issues. *Id.* (alteration in original). The problem is, the Fifth Circuit never said that. The language that Plaintiffs modified from *Louisiana v. Becerra*, 20 F.4th 260 (5th Cir. 2021),[10] says: "The question posed is *whether* one district court *should* make a binding judgment for the entire country." *Id.* at 263 (emphasis added). The Fifth Circuit answered that question in the *negative* in that case, principally because "[o]ther courts" were simultaneously "considering the[] same issues," the "ultimate resolution" of which would "benefit from the airing of competing views" among sister courts. *Id.* at 263–64. So too here. And that this case is now at the merits stage does not

---

[9] Plaintiffs shrug off *Feds for Medical Freedom*, claiming that it is "not even an APA case." Pls.' Reply 30. First of all, that's incorrect. *See* 63 F.4th at 375 ("Plaintiffs are challenging (under the Constitution, *the APA*, and the DJA) the President's executive orders . . . ."). But either way, the case stands for the proposition— applicable in APA and non-APA cases alike—that a plaintiff must prove that whatever relief it requests is no broader than necessary to redress its asserted injuries, consistent with well-established remedial principles.

[10] Not only do Plaintiffs misquote *Louisiana*, they miscite *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), as the source of this language. *See* Pls.' Reply 31.

mean this Court should toss aside basic principles of judicial comity and restraint in determining a proper remedy, as Plaintiffs contend. *See* Pls.' Reply 31. In fact, the exact opposite is true. *See Texas*, 599 U.S. at 703 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment) ("At a minimum, . . . district courts must carefully consider" the effects of vacatur "before doling [it] out," including that "vacatur can stymie the orderly [judicial] review of important questions."); *Louisiana*, 20 F.4th at 264 ("[This] is an issue of great significance currently being litigated throughout the country. Its *ultimate* resolution will benefit from the airing of competing views in our sister circuits." (cleaned up with emphasis added)); *cf. Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) ("[Universal remedies] short-circuit the decisionmaking benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top."); *accord Georgia v. President of the U.S.*, 46 F.4th 1283, 1305 (11th Cir. 2022).

*Finally*, Plaintiffs at least concede that universal vacatur is not *required* to remedy an APA violation, as they argued in their opening brief. *See* Pls.' Br. 42. In backpedaling, however, they suggest that the *only* alternative to universal vacatur is an equitable remedy that the Fifth Circuit has described as "remand without vacatur." Pls.' Reply 29–30. But that's incorrect. As the Fifth Circuit explained in *Cargill*, there are several remedies "more limited" than vacatur (*i.e.*, "injunctive, declarative, or otherwise") that may be "appropriate" to redress an APA violation. *See* 57 F.4th at 472. So contrary to what Plaintiffs contend, if this Court were to find that the Rule violates the APA, it is not stuck choosing between universally vacating the Rule or remanding the matter to ATF without vacatur.

In arguing otherwise, Plaintiffs hang their hat on *Chamber of Commerce of U.S. v. SEC*, 88 F.4th 1115 (5th Cir. 2023). But that case simply applied well-settled Fifth Circuit precedent regarding when the remedy of remand without vacatur is appropriate. *See id.* at 1118.[11] Nowhere did it purport to strip

---

[11] The test that *Chamber of Commerce* applied to determine the propriety of remand without vacatur has been applied in the Fifth Circuit for decades. *See Central S.W. Servs. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000).

courts of authority to enter (for example) party-specific injunctive relief in lieu of vacatur to redress an APA violation—authority that the Fifth Circuit expressly recognized in *Cargill*, *see* 57 F.4th at 472, and that permits a court to tailor a remedy consistent with constitutional and equitable principles.[12]

At any rate, Plaintiffs have hardly rebutted Defendants' argument that the remedy of remand without vacatur would be the proper remedy if this Court were to find, *e.g.*, that the Rule violates the logical-outgrowth doctrine or that ATF did not adequately explain its actions in the Rule. Defs.' Br. 48–49. As explained, *id.*, such relief is "generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so" and where vacatur would be "disruptive." *Texas v. U.S.*, 50 F.4th 498, 529 (5th Cir. 2022). But in opposing remand without vacatur, Plaintiffs simply assert the *ipse dixit* that any flaws in the Rule "cannot be remedied by further consideration" by ATF. Pls.' Reply 29–30. But why not? If the flaw is that the Rule violates the logical-outgrowth doctrine, the Fifth Circuit has already found that such an error can be remedied on remand without resorting to vacatur. *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 383, 389–90 (5th Cir. 2021). And if the flaw is that ATF did not consider an issue or adequately explain its actions, that too is easily fixable on remand and would not justify vacating the Rule. *E.g.*, *id.* at 389–90 (remanding without vacatur to allow consideration of an issue that the agency failed to address); *Central & S.W. Servs.*, 220 F.3d at 692, 702 (remanding without vacatur to allow the agency to explain its actions, and holding that "failure to explain [an action] does not require vacatur").

As for its disruptive consequences, vacatur would not only countermand the decisions of sister courts in other challenges to the Rule, but as explained, it also would risk sowing confusion within the regulated community by returning it to a regime without generally applicable guidelines. *See* Defs.' Br. 48–49. Plaintiffs' only response is that "there was no confusion" before the Rule "given ATF's

---

[12] Surely, *Chamber of Commerce* cannot be read to overrule *Cargill*. *See In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348–49 (5th Cir. 2008) ("[A] panel cannot overrule a prior panel's decision" absent "an intervening contrary or superseding decision" by the Fifth Circuit "sitting *en banc* or by the United States Supreme Court.").

23

longstanding position that braced pistols were not subject to the NFA." Pls.' Reply 30. But that argument is divorced from reality. *See, e.g.*, AR 18–21, 22–25 (2014 determinations that two brace-equipped pistols were a short-barreled rifles subject to the NFA); AR 54–57 (same determination for another brace-equipped pistol in 2015); AR 70–91 (same determination for another brace-equipped pistol in 2016); AR 195 (noting same determination for another brace-equipped pistol in 2017); AR 285–293 (same determination for another brace-equipped pistol in 2019); AR 387–413, 466–488 (same determinations for two other brace-equipped pistols in 2020); *see also* Defs.' Br. 5–7.[13]

\*     \*     \*

In sum, Plaintiffs have offered no cogent reason why this Court should vacate the Rule in its entirety. The Court should therefore, at a minimum, decline to enter universal vacatur.

### B.   Plaintiffs are not entitled to their proposed injunction.

Plaintiffs have also requested a permanent injunction preventing Defendants from enforcing or otherwise applying ATF's interpretation of the NFA's definition of "rifle" with regard to any of Plaintiffs' "braced pistols." But as already explained, *see* Defs.' Br. 49–50, Plaintiffs have not proven that ATF' interpretation is invalid as applied to *all* "braced pistols," no matter their design or intended use. Nor have they attempted to satisfy *any* of the prerequisites to permanent injunctive relief. Either failure precludes issuance of Plaintiffs' proposed injunction. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must . . . be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.").

---

[13] As a final matter, Plaintiffs continue to maintain that *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), stands for the proposition "that injunctive relief is" categorically *more* drastic than vacatur." Pls.' Reply 31 n.17. But that is not an "interpretation" of *Monsanto*, *id.*, it's an inexplicable misreading. As explained, *see* Defs.' Br. 48, vacatur of the action challenged in *Monsanto* was "a less drastic remedy" *in that case*, because the additional nationwide permanent injunction that the district court entered was unnecessary to remedy the plaintiffs' injuries and ran against actions the legality of which were not challenged, 561 U.S. at 165–66.

24

In response, Plaintiffs make no effort to justify their requested relief. Rather, they insist that they are entitled to their proposed injunction based purely on the fact that this Court issued a preliminary injunction. But that's a non sequitur. This Court's preliminary injunction prevents Defendants, for the duration of this lawsuit, from implementing or enforcing against Plaintiffs the provisions in 27 C.F.R. §§ 478.11, 479.11 that the Rule amended and that the Fifth Circuit determined in *Mock* were likely unlawful. *See Mock*, 2023 WL 6457920, at *18. But the permanent injunction that Plaintiffs request is *far* more drastic. It would prevent Defendants (*i.e.*, the entire U.S. Department of Justice), in perpetuity, from enforcing or otherwise applying their understanding of the NFA's definition of "rifle" with regard to *any* of Plaintiffs' so-called "braced pistols," even if a particular weapon is designed, made, and intended to be fired from the shoulder, and thus a rifle under the statute's plain terms. *See* 26 U.S.C. § 5845(c). Setting aside that Plaintiffs have not proven that ATF's interpretation is invalid as applied to *all* "braced pistols," they have not even attempted to show that such a sweeping injunction is necessary to redress their asserted injuries, let alone that it would be in the public interest to insulate *all* weapons that Plaintiffs consider to be "braced pistols"—regardless of design or intended use—from regulations imposed by Congress. And given that the term "braced pistol" has no definitive meaning, *see* Defs.' Br. 50, and if the history of stabilizing braces provides any lesson, one can only guess how broadly Plaintiffs' proposed injunction could be interpreted.

## CONCLUSION

The Court should grant summary judgment in Defendants' favor on all of Plaintiffs' claims.

Dated: February 7, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN (MT Bar No. 55816869)

25

TAYLOR PITZ (CA Bar No. 332080)
FAITH E. LOWRY (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On February 7, 2024, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice